**LEVI & KORSINSKY, LLP**
Adam M. Apton
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Scott Greenbaum and*
*Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEJANDRO PIERONI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HUMANIGEN, INC., CAMERON DURRANT, and TIMOTHY MORRIS, <br><br> Defendants. | Case No. 2:22-cv-05258-WJM-AME <br><br> **MOVANT SCOTT GREENBAUM'S OPPOSITION TO COMPETING MOTIONS FOR LEAD PLAINTIFF** <br><br> **MOTION DATE: November 21, 2022** |
| SCOTT GREENBAUM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HUMANIGEN, INC., CAMERON DURRANT, TIMOTHY MORRIS, and DAVE CHAPPELL, <br><br> Defendants. | Case No. 2:22-cv-06118-WJM-AME |

# **TABLE OF CONTENTS**

I.   INTRODUCTION................................................................................................1

II.  ARGUMENT ....................................................................................................4

    A.   The Private Securities Litigation Reform Act Requires the Court to Appoint a Lead Plaintiff and Lead Counsel. ........................................5

    B.   Joshua Mailey Will Subject the Class to "Unique Defenses" Because He Purchased Nearly All of His Humanigen Securities After the September 9 Corrective Disclosure.......................................................7

    C.   Dr. Greenbaum Is Supremely Qualified to Serve as the Lead Plaintiff in this Action. ...............................................................................12

III. CONCLUSION................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Vitamin Shoppe, Inc.*,
  No. 2:17-cv-6454-KM-MAH, 2018 U.S. Dist. LEXIS 69968 (D.N.J. Apr. 25,
  2018) ........................................................................................................................6

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) .............................................................................................10

*In re Bank One Shareholders Class Action*,
  96 F. Supp. 2d 780 (N.D. Ill. 2000)......................................................................14

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988) ........................................................................................ 3, 10

*Beck v. Maximus, Inc.*,
  457 F.3d 291 (3d Cir. 2006) ...............................................................................3, 6

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ......................................................................... 4, 6, 15

*In re Countrywide Fin. Corp. Sec. Litig.*,
  273 F.R.D. 586 (C.D. Cal. 2009)...........................................................................11

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005) ..............................................................................................10

*Erickson v. Snap*,
  No. 2:17-cv-03679-SVW-AGR, 2017 U.S. Dist. LEXIS 221050 (C.D. Cal. Sep.
  18, 2017) ......................................................................................................... 10, 11

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95, 102 (S.D.N.Y. 2005)......................................................................12

*Faris v. Longtop Fin. Techs. Ltd.*,
  No. 11-cv-3658 (SAS), 2011 U.S. Dist. LEXIS 112970
  (S.D.N.Y. Oct. 4, 2011)........................................................................... 10, 12

*GAMCO Investors v. Vivendi, S.A.*,
   917 F. Supp. 2d 246 (S.D.N.Y. 2013) ..................................................................10

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   903 F.2d 176 (2d Cir. 1990) ..............................................................................3, 7

*George v. China Auto. Sys., Inc.*,
   No. 11 Civ. 7553 (KBF), 2013 U.S. Dist. LEXIS 93698
   (S.D.N.Y. July 3, 2013) ......................................................................................11

*Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus.*,
   529 F. Supp. 3d 385 (E.D. Pa. 2021).............................................................. 6, 15

*In re HEXO Corp. Sec. Litig.*,
   No. 19-cv-10965 (NRB), 2020 U.S. Dist. LEXIS 166312 (S.D.N.Y. Sep. 11,
   2020) ....................................................................................................................13

*Karp v. Diebold Nixdorf, Inc.*,
   Nos. 19 Civ. 6180(LAP), 2019 U.S. Dist. LEXIS 188670 (S.D.N.Y. Oct. 30,
   2019) ....................................................................................................................13

*In re Microstrategy Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) ..................................................................14

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015) .................................................................11

*Perez v. HEXO Corp.,*
   Nos. 19 Civ. 10965 (NRB); 20 Civ. 00196 (NRB), 2020 U.S. Dist. LEXIS 32381
   (S.D.N.Y. Feb. 25, 2020).....................................................................................12

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004).........................................................................15

*cf. Roofers' Pension Fund v. Papa*,
   No. 16-cv-2805, 2017 U.S. Dist. LEXIS 64264 (D.N.J. Apr. 27, 2017) ..............7

**Statutes**
15 U.S.C. § 78u-4.................................................................................... 1, 5, 7

**Rules**

F. R. Civ. P. 23 ................................................................................................5

## I.    INTRODUCTION

Dr. Scott Greenbaum and his counsel, Levi & Korsinsky, LLP, should be appointed as the lead plaintiff and lead counsel in this securities fraud class action litigation. The Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("PSLRA"), which governs the lead plaintiff appointment process, directs courts to appoint the movant with the "largest financial interest" that also meets the "typicality" and "adequacy" requirements under Federal Rule of Civil Procedure 23. Dr. Greenbaum is that movant. Further, as a trained medical doctor with litigation experience, he is by far the "most adequate plaintiff" to serve as the lead plaintiff in this lawsuit. *See* 15 U.S.C. § 78u-4(a)(3)(B).

Dr. Greenbaum began investing in Humanigen, Inc. in May 2020 at the start of the Class Period. His initial investment decision was driven in large part by Defendants' misrepresentations and omissions about how Humanigen's lead drug candidate (lenzilumab) interfered with the positive effects of the cytokine known as GM-CSF on patient lungs. As an experienced physician, Dr. Greenbaum, like most physicians, understood these statements to mean lenzilumab prevented inflammation caused by GM-CSF without negatively affecting alveoli (*i.e.*, tiny air sacs in the lungs that oxygenate the blood). Thus, on September 9, 2021, when Humanigen announced that the U.S. Food and Drug Administration ("FDA") had rejected its Emergency Use Application ("EUA") because it appeared that

lenzilumab's risks outweighed its benefits, Dr. Greenbaum was shocked as Humanigen's revelation prompted a mass sell-off and caused the stock price to plummet by more than 47% (or $7.14 per share). In total, Dr. Greenbaum lost nearly $815,000. By any measure, this loss equates to a "financial interest" that is more than sufficient to ensure his commitment towards obtaining the best recovery possible for himself and the class.

Only one other movant, Joshua Mailey, claims a "larger financial interest" than Dr. Greenbaum. However, the vast amount of Mr. Mailey's trading losses come from purchases made ***after*** the September 9, 2021 revelation discussed above. In fact, over 95% of Mr. Mailey's investment consists of stock purchases made ***after*** Humanigen announced that the FDA had rejected the EUA for lenzilumab. This shows that Mr. Mailey largely purchased his Humanigen securities only ***after*** learning that Defendants' Class Period statements were untrue and potentially fraudulent. This fact is fatal to Mr. Mailey's motion for lead plaintiff under the case law, which states that a shareholder is "an inappropriate class representative" where he is subject to "unique defenses including [his] continued purchases . . . despite having notice of, and having investigated, the alleged fraud." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179 (2d Cir. 1990).

The fact that Mr. Mailey largely invested only *after* the September 9 disclosure—which is, by far, the most significant qualitative and quantitative corrective disclosure alleged—means that Defendants will undoubtedly challenge his "typicality" relative to the class at large and argue that he cannot avail himself of the essential "fraud on the market" presumption when it comes to proving the element of "reliance" under Section 10(b) of the Securities Exchange Act of 1934. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 243 (1988). Defendants will argue that Mr. Mailey's decision to purchase Humanigen stock after September 9 shows he was aware of the alleged fraud and, therefore, did not rely on and was not misled by Defendants' alleged fraudulent statements. These arguments qualify as "unique defenses" that prevent Mr. Mailey from serving as the lead plaintiff in this action. *See Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006) ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation.").

Mr. Mailey's background also supports the conclusion that he did not rely on Defendants' statements. In his motion papers, he describes his current occupation by stating he "work[s] in technology application support of a technology company in banking." Mr. Mailey's wording is certainly vague, and intentionally so if a more transparent description would have suggested he routinely employs atypical investment trading strategies in his day-to-day work, *e.g.*, algorithmic trading. In

3

any event, Mr. Mailey's lack of transparency along with the fact that he has no legal experience or justification for retaining two different firms to represent him (Pomerantz LLP and the Schall Law Firm) all suggest that he is ill-equipped to serve as the lead plaintiff in this lawsuit.

Dr. Greenbaum faces none of the "unique defenses" discussed above. His involvement in this lawsuit will not prejudice the class or otherwise "side-track" the litigation; instead, it will only improve the representation provided to the class given Dr. Greenbaum's particular subject-matter knowledge about the drug at issue in this lawsuit. His experience with litigation will also help ensure that this case is entrusted to a shareholder who will serve as an active agent for the class, as Congress intended when it enacted the PSLRA in the first place. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001).

For the reasons set forth below, Dr. Greenbaum respectfully requests that the Court grant his motion in its entirety and appoint him and his counsel as lead plaintiff and lead counsel, respectively.

## II.    ARGUMENT

4

**A.     The Private Securities Litigation Reform Act Requires the Court to Appoint a Lead Plaintiff and Lead Counsel.**

The Securities Exchange Act of 1934, as modified by the PSLRA, governs all securities fraud class action lawsuits. Importantly, the statute requires the appointment of a lead plaintiff and lead counsel at the outset of the case. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) (" . . . the court shall consider any motion made by a purported class member . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . . ").

By statute, the appointment process is conducted in two steps with a "presumption" of lead plaintiff belonging to the movant with the "largest financial interest" in the case that also meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Once the Court identifies the movant entitled to the "presumption" of lead plaintiff, it must then determine whether competing movants can rebut that presumption with evidence of inadequacy, atypicality, or otherwise showing that the movant is subject to a "unique defense." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumptive lead plaintiff is subject to a unique defense, then the movant with the ***next*** largest financial interest in the case that also meets the Rule 23 requirements should be appointed as the lead plaintiff. *See Cendant*, 264 F.3d at 268 ("If the presumption

5

has been rebutted, the court must begin the process anew (i.e., identifying which of the remaining movants has the highest financial interest in the class's recovery, assessing whether that movant satisfies the threshold typicality and adequacy requirements, and determining whether the presumption has been rebutted) until a lead plaintiff is selected.").

As is relevant here, the "presumption" of lead plaintiff can be "rebutted" if it appears that a movant will likely face "unique defenses" concerning reliance, standing, or loss causation. *See Beck*, 457 F.3d at 301 ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation."); *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharm. Indus.*, 529 F. Supp. 3d 385, 407 (E.D. Pa. 2021) (severing pension fund from investor group because if faced "unique defense" concerning standing). "[T]he proof required to rebut the presumption at this early stage of litigation 'need not definitively establish' the allegedly unique defense; 'Rather, the competing plaintiff must show simply that there is **some degree of probability** that the defense might 'become a major focus' in the case.'" *Aguilar v. Vitamin Shoppe, Inc.*, No. 2:17-cv-6454-KM-MAH, 2018 U.S. Dist. LEXIS 69968, at *13-14 (D.N.J. Apr. 25, 2018) (emphasis added); *cf. Roofers' Pension Fund v. Papa*, No. 16-cv-2805, 2017 U.S. Dist. LEXIS 64264, at *10-11 (D.N.J. Apr. 27, 2017) (explaining that movants seeking to rebut the

6

presumption "do[] not have to prove the defense, but [t]he[y] must provide enough evidence to show that it is not speculative or meritless").

**B.    Joshua Mailey Will Subject the Class to "Unique Defenses" Because He Purchased Nearly All of His Humanigen Securities After the September 9 Corrective Disclosure.**

Mr. Mailey's trading history in Humanigen securities gives rise to a "unique defense" concerning his "reliance" on the alleged fraud, a necessary element of the Section 10(b) and Rule 10b-5 claims asserted against Defendants. Specifically, Mr. Mailey purchased nearly all (<95%) of his Humanigen securities *after* the September 9, 2021 corrective disclosure—the most qualitatively and quantitatively impactful corrective disclosure—and after securities class action law firms publicly announced that they were investigating Humanigen for securities fraud. Mr. Mailey's post-disclosure purchases of Humanigen securities subject him to unique defenses "that render [Mr. Mailey] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb); *Gary Plastic Packaging Corp.*, 903 F.2d at 179 (concluding that a plaintiff "was an inappropriate class representative since its claim is subject to several unique defenses including its continued purchases . . . despite having notice of, and having investigated, the alleged fraud").

The complaint in this action alleges that the Defendants made materially false and misleading statements and failed to disclose that Humanigen's lead drug

7

candidate, lenzilumab, was less effective in treating COVID-19 than represented and that, in turn, the FDA was unlikely to approve lenzilumab's emergency use application. Complaint, ¶5.[1] On September 9, 2021, Humanigen announced that the FDA had rejected lenzilumab's emergency use application because it was "unable to conclude that the known and potential benefits of lenzilumab outweigh[ed] the known and potential risks of its use as a treatment." *Id.* at ¶6. This announcement was a pled corrective disclosure in the complaint and caused Humanigen's stock price to fall $7.14 per share, or 47.25%, to close at $7.97 per share on September 9, 2021. *Id.* at ¶¶7, 37-38. The $7.14 per share stock drop accompanying the September 9, 2021 corrective disclosure dwarfed the subsequent declines in Humanigen's stock price caused by the latter corrective disclosures, namely the announcements on December 28, 2021 and July 13, 2022 concerning the unsuccessful clinical trial results which amounted to an overall drop of $2.38 per share. *See id.* at ¶¶8-10, 45, 57-58.

As evidenced by Mr. Mailey's certification and loss chart, Mr. Mailey purchased approximately 95% of his Humanigen securities ***after*** the September 9 press release announcing that the FDA had rejected lenzilumab's EUA. *See* Mailey

---

[1] Citations to the "Complaint" refer to the complaint filed by Dr. Greenbaum in the *Greenbaum* Action, Case No. 22-cv-06118, Dkt. No. 1.

Loss Chart (Highlighted), Exhibit A.[2] Moreover, of that 95%, upwards of 80% were purchased *after* the December 28, 2021 disclosure concerning Kiniksa Pharmaceuticals' unsuccessful clinical trial (which was testing a drug candidate that operated substantially similar to lenzilumab). *Id*. Thus, the vast majority of Mr. Mailey's purchases were made *after* the critical corrective disclosures emerged and, in fact, *after* law firms began publicly announcing investigations into securities fraud violations. *See* Securities Class Action Press Releases, Exhibits B & C.[3] Indeed, Mr. Mailey proceeded to purchase 1,088,826 shares of Humanigen stock (or roughly 95% of his overall investment) after the September 9, 2021 disclosure, which amounted to an increase of nearly *2,000%* in the number of shares owned by Mr. Mailey.

Because of Mr. Mailey's atypical trading history, Defendants will argue that his post-disclosure purchases "suggest that [he] invested in [Humanigen] notwithstanding notice of [D]efendants' misstatements and omission," thus undermining his ability to "assert the fraud-on-the-market presumption of reliance,

---

[2] Exhibit A is attached to the accompanying Supplemental Declaration of Adam M. Apton. The exhibit identifies (in highlight) each trade made by Mr. Mailey after the September 9 corrective disclosure. It shows that the vast majority (approx. 95%) of Mr. Mailey's investments post-date the September 9 corrective disclosure.

[3] Exhibits B and C are also attached to the Supplemental Declaration of Adam M. Apton. The exhibits contain copies of press releases issued by firms after the September 9 corrective disclosure, including one of Mr. Mailey's current law firms, Pomerantz LLP.

thereby rendering them inadequate class representatives." *Faris v. Longtop Fin. Techs. Ltd.*, No. 11-cv-3658 (SAS), 2011 U.S. Dist. LEXIS 112970, at *28 (S.D.N.Y. Oct. 4, 2011). The fraud-on-the-market presumption of reliance is the bedrock of securities class action certification.[4] "[W]ithout the benefit of the presumption of reliance, requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would [prevent plaintiffs] from proceeding with a class action, since individual issues then would have overwhelmed the common ones." *Erickson v. Snap*, No. 2:17-cv-03679-SVW-AGR, 2017 U.S. Dist. LEXIS 221050, at *8 (C.D. Cal. Sep. 18, 2017) (citation omitted). Thus, "post-disclosure purchases can defeat the typicality requirement for class certification when plaintiffs made a disproportionally large percentage of their purchases post-disclosure." *Id.* (quoting *GAMCO Investors v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 261 (S.D.N.Y. 2013)); *see also Faris*, 2011 U.S. Dist. LEXIS 112970, at *28 (finding a lead plaintiff movant subject to a unique defense when it had suffered 87% of its losses on securities purchased after a corrective disclosure).[5]

---

[4] Under Section 10(b) of the Exchange Act, reliance must be proven. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005); *Basic, Inc.*, 485 U.S. at 243. Plaintiffs may use the fraud-on-the-market theory, which entitles them to a rebuttable presumption of reliance. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 461 (2013).

[5] *See also*, *e.g.*, *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015) (rejecting movant because its post-corrective disclosure "transactions raise serious questions regarding [the movant's] reliance on the alleged misrepresentations and

Under analogous circumstances, the court in *Erickson* denied one movant's motion for lead plaintiff appointment because it had purchased approximately 60% of its shares after news broke regarding the very information the complaint alleged to be fraudulent. *Erickson*, 2017 U.S. Dist. LEXIS 221050, at *8-10. The court noted that there was "[t]here is no reason to subject the class to these unique defenses when a non-conflicted candidate for Lead Plaintiff is also before the Court." *Id*. at *10.[6] The situation here is considerably worse, as Mr. Mailey's post-disclosure purchases in fact represent approximately 95% of his overall investment and thereby certainly qualify as a "disproportionally large percentage." *Id*. at *8.

Under these circumstances, appointing Mr. Mailey as the lead plaintiff would place the interests of the entire class at unreasonable risk. This risk is entirely unnecessary here, given that Dr. Greenbaum possesses a financial interest in the

omissions"); *George v. China Auto. Sys., Inc.*, No. 11 Civ. 7553 (KBF), 2013 U.S. Dist. LEXIS 93698, at *18 (S.D.N.Y. July 3, 2013) (denying class certification where proposed class representatives bought shares post-disclosure, stating that "this will require that each of the named plaintiffs expend considerable time on unique defenses—precisely the situation the case law does not condone"); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 603 (C.D. Cal. 2009) ("Of course, unusual post-disclosure trading patterns present typicality problems." (emphasis in original)).

[6] The court in *Erickson* also referred to the competing movants' pre-disclosure losses, noting that they were "fairly close." *Id*. Here, too, the movants' pre-disclosure purchases are close with Dr. Greenbaum in fact purchasing 58,973 shares prior to September 9, 2021 compared to Mr. Mailey's purchase of 58,000 shares. *Compare* Greenbaum Loss Chart, Dkt. No. 7-4 *with* Mailey Loss Chart, Dkt. No. 9-3 at pp. 4-15.

outcome of the litigation that is significant enough to ensure his utmost attention to the claims at hand, and does not suffer from the same debilitating trading issues. *See Faris*, 2011 U.S. Dist. LEXIS 112970, at *28 (finding "no reason to subject the class to this potential defense where there is another movant" that does not suffer from the same potential unique defenses arising from post-disclosure trading).

## C.    Dr. Greenbaum Is Supremely Qualified to Serve as the Lead Plaintiff in this Action.

An investor "seeking to be appointed lead plaintiff—though he need only make a preliminary showing that he satisfies the requirements of Rule 23, [ ] 'nonetheless needs to provide enough information to make that preliminary showing.'" *Perez v. HEXO Corp.,* Nos. 19 Civ. 10965 (NRB); 20 Civ. 00196 (NRB), 2020 U.S. Dist. LEXIS 32381, at *5-6 (S.D.N.Y. Feb. 25, 2020) (*citing In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)). Thus, a movant for lead plaintiff must provide information that allows the parties and the court to adequately assess his or her adequacy as well as whether he "will meaningfully oversee and control the prosecution of this consolidated class action." *In re HEXO Corp. Sec. Litig.*, No. 19-cv-10965 (NRB), 2020 U.S. Dist. LEXIS 166312, at *4-6 (S.D.N.Y. Sep. 11, 2020) ("dearth of information not only precluded the necessary inquiry into whether Wong had any conflicts with other class members, but also caused the Court to question whether Wong would meaningfully oversee the litigation"); *see also*

12

*Karp v. Diebold Nixdorf, Inc.*, Nos. 19 Civ. 6180(LAP), 2019 U.S. Dist. LEXIS 188670, at *16 (S.D.N.Y. Oct. 30, 2019) ("While the Aroras contend that they need not 'provide adequate information about themselves' on top of the requirements of the PSLRA, . . . they nonetheless need to provide enough information to make a preliminary showing of adequacy under Rule 23.").

In line with this requirement, Dr. Greenbaum submitted a declaration in support of his motion for lead plaintiff describing his educational and professional background. *See* Dkt. No. 7-6. In pertinent part, Dr. Greenbaum attested to the fact that he resides and works in the Tri-State area. *Id.* at ¶2. He is a licensed medical physician who operates a private practice with offices in Manhattan and Queens. *Id.* Further, he is experienced with litigation insofar as he serves as an expert witness in legal matters in addition to overseeing attorneys for various business matters involving his medical practice. *Id.* These facts, along with his action to retain counsel and independently file an additional complaint, show that Dr. Greenbaum is uniquely qualified to pursue a securities fraud claim that will inherently involve technical and sophisticated medical information concerning Humanigen's statements about lenzilumab.

While Mr. Mailey also submitted a declaration, it contained largely boilerplate statements concerning his willingness to serve as a class representative. Indeed, when describing his educational and professional background, the declaration

13

simply states: "I have a Bachelor's degree in information technology and I work in technology application support of a technology company in banking." Dkt. No. 9-3 at p. 31, ¶2. Although his occupation description is nebulous, it appears that Mr. Mailey works closely with technology in the banking sector which, if true, could explain why he engaged in an atypical trading strategy when trading in Humanigen securities. Specifically, this would explain why Mr. Mailey invested so heavily in Humanigen stock after the partial corrective disclosures in this case, which provides further reason for disqualifying him as a lead plaintiff. *See*, *e.g.*, *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) (institutional investor was "atypical" because it "engage[d] in transactions far beyond the scope of what a typical investor contemplate[d]"); *In re Bank One Shareholders Class Action*, 96 F. Supp. 2d 780, 783-84 (N.D. Ill. 2000) (rejecting a hedge fund as a lead plaintiff).

Mr. Mailey also fails to claim any experience with lawyers yet at the same time retained two different firms to represent him in this action. *See* No. 9-3 at p. 31, ¶1 ("In addition to Pomerantz, I am also represented by the Schall Law Firm in this action."). This is problematic given the PSLRA's legislative intent. "[T]he goal of the [PSLRA's] lead plaintiff provision is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class . . . ." *Cendant*, 264 F.3d at 266. Thus, the "size, available resources, or even experience of a candidate are . . .

14

relevant to reaching a determination as to whether a candidate will be capable of adequately protecting the interests of the class." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 417-18 (S.D.N.Y. 2004). Mr. Mailey has no such experience to draw from. Collectively, Mr. Mailey's lack of experience along with his decision to retain two law firms to represent him suggests that he will not be able to "function as an active agent for the class." *See Cendant*, 264 F.3d at 266; *Halman Aldubi Provident & Pension Funds Ltd.*, 529 F. Supp. 3d at 401-04 (denying motion where movant had retained more than one law firm to represent interests in class action).

## III.   CONCLUSION

Mr. Mailey is subject to a "unique defense" that precludes him from serving as the lead plaintiff in this action. Dr. Greenbaum is the movant with the next "largest finanical interest" in the action that otherwise satisfies the Rule 23 adequacy and typicality requirements. Accordingly, the Court should appoint Dr. Greenbaum as the lead plaintiff and his counsel, Levi & Korsinsky, as lead counsel.

Dated: November 7, 2022                Respectfully Submitted,


**LEVI & KORSINSKY, LLP**


By: */s/ Adam M. Apton*
Adam M. Apton
55 Broadway, 10th Floor

15

New York, New York 10006
Tel.: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Attorneys for Scott Greenbaum and*
*Proposed Lead Counsel for the Class*

16