POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Counsel for Movant Joshua Mailey and
Proposed Lead Counsel for the Class*

[Additional counsel on signature page.]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEJANDRO PIERONI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HUMANIGEN, INC., CAMERON DURRANT, and TIMOTHY MORRIS,<br><br>Defendants. | Case No. 2:22-cv-05258-WJM-AME<br><br>MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF JOSHUA MAILEY FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS<br><br>Motion Date: November 21, 2022 |
| SCOTT GREENBAUM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HUMANIGEN, INC., CAMERON DURRANT, TIMOTHY MORRIS, and DALE CHAPPELL,<br><br>Defendants. | Case No. 2:22-cv-06118-WJM-AME |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT ........................................................................................................5

    I.       Mailey Should Be Appointed Lead Plaintiff........................................5

          A.     Mailey Has the Largest Financial Interest in the Relief
                 Sought by the Class................................................................5

          B.     Mailey Satisfies the Requirements of Rule 23 ..........................6

    II.     The Competing Motions of Greenbaum and Motwani Must Be
            Denied....................................................................................9

CONCLUSION ...................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) ...........................................................................2, 6

*Dodge v. Cambrex Corp.*,
   No. 03-cv-4896 (PGS)., 2007 U.S. Dist. LEXIS 12592
   (D.N.J. Feb. 23, 2007) ...................................................................................3, 7

*Hoxworth v. Blinder, Robinson & Co.*,
   980 F.2d 912, 923 (3d Cir.1992) .......................................................................7

*In re Diagnostic Ventures, Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008)....................................................................3, 7

*In re JPMorgan Chase & Co. Secs. Litig.*,
   2015 U.S. Dist. LEXIS 132181 (S.D.N.Y. Sept. 29, 2015) .................................7

*In re Loewen Group, Inc. Sec. Litig.*,
   233 F.R.D. 154 (E.D. Pa. 2005)....................................................................3, 7

*In re Merck & Co., Sec. Derivative & ERISA Litig.*,
   2013 U.S. Dist. LEXIS 13511 (D.N.J. Jan. 30, 2013)....................................3, 7

*In re Vonage Initial Pub. Offering Secs. Litig.*,
   No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258
   (D.N.J. Sept. 6, 2007) ...................................................................................2, 6

*Pirnik v. Fiat Chrysler Autos., N.V.*,
   327 F.R.D. 38 (S.D.N.Y. 2018).........................................................................7

*Rubenstahl v. Philip Morris Int'l, Inc.*,
   No. 17-13504 (ES) (MAH), 2019 U.S. Dist. LEXIS 23309
   (D.N.J. Feb. 13, 2019) ......................................................................................1

*Sklar v. Amarin Corp. PLC*,
   Nos. 13-cv-06663 (FLW) (TJB) *et al.*, 2014 U.S. Dist. LEXIS
   103051 (D.N.J. July 29, 2014)......................................................................5, 6

ii

*Smith v. Antares Pharma, Inc.*,
 No. 17-8945 (MAS) (DEA), 2018 U.S. Dist. LEXIS 126964
 (D.N.J. July 27, 2018)..................................................................................2

**Statutes**

15 U.S.C. § 78u-4..........................................................................................1, 5

Private Securities Litigation Reform Act of 1995 .............................................1, 3, 5

**Rules**

Fed. R. Civ. P. 23 ....................................................................................*passim*

Movant Mailey[1] respectfully submits this memorandum of law in support of his motion for consolidation, appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 9); and in opposition to the competing motions of: (i) Scott Greenbaum ("Greenbaum") (Dkt. No. 7); and (ii) Meena Motwani ("Motwani") (Dkt. No. 8).

## PRELIMINARY STATEMENT

The Related Actions are putative securities class action lawsuits on behalf of investors in Humanigen securities. As with all federal class action securities lawsuits, a lead plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the action; and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is Mailey, who incurred a loss of approximately *$4,992,028* in connection with his Class Period purchases of Humanigen securities. *See, e.g., Rubenstahl v. Philip Morris Int'l, Inc.*, No. 17-13504 (ES) (MAH), 2019 U.S. Dist. LEXIS 23309, at *5 (D.N.J. Feb. 13, 2019) (assessing financial interest in terms of

---

[1] All capitalized terms herein are defined in Mailey's moving brief, unless otherwise indicated. *See* Dkt. No. 9-2.

1

monetary loss); *Smith v. Antares Pharma, Inc.*, No. 17-8945 (MAS) (DEA), 2018 U.S. Dist. LEXIS 126964, at *4-*5 (D.N.J. July 27, 2018) (same).

The table below sets for the respective losses of the competing movants:

| Movant | Loss |
| --- | --- |
| Mailey | $4,992,028 |
| Greenbaum | $814,701 |
| Motwani | $146,660 |

As the table reflects, Mailey incurred a loss of approximately ***$4.99 million***, more than six times the size of the $814,701 loss claimed by Greenbaum, the movant claiming the next-largest financial interest.  As such, it cannot reasonably be disputed that Mailey has alleged the largest financial interest in this litigation.

In addition to his significant financial interest, Mailey also satisfies the typicality and adequacy requirements of Rule 23.  Mailey, like all members of the Class, purchased Humanigen securities at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon disclosure of those misrepresentations or omissions.  *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006).  Mailey is aware of no conflict between his interests and those of the Class, his losses incurred as a result of the Defendants' alleged malfeasance give him a sufficient stake in the outcome of this action to ensure vigorous advocacy, and in Pomerantz, Mailey has retained qualified and experienced counsel.  *See, e.g., In re Vonage Initial Pub. Offering Secs. Litig.*, No. 07-177 (FLW), 2007 U.S. Dist. LEXIS 66258, at *19 (D.N.J. Sept. 6, 2007).  Further demonstrating his adequacy,

2

Mailey has submitted a detailed Declaration providing the Court with biographical information about himself and attesting to, *inter alia*, his understanding of the significance of his motion, the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class. *See generally* Dkt. No. 9-3 at *31-*34.

Contrary to Greenbaum's assertions in his opposition brief (Dkt. No. 14), Mailey respectfully submits that the timing of his Class Period transactions in Humanigen securities, which included purchases of securities after the first alleged corrective disclosure of the Defendants' malfeasance on September 9, 2021 (*see* Dkt. No. 1 ¶¶ 6, 33), has no bearing on his adequacy or typicality, nor otherwise disqualifies him from appointing as Lead Plaintiff. Courts routinely appoint investors who purchased the relevant securities after a partial disclosure of the issuer's malfeasance to serve as lead plaintiffs in PSLRA actions, finding that "proposed class representatives who purchased shares mid-stream, *i.e.*, during the course of a series of disclosures may satisfy the typicality test" of Rule 23. *Dodge v. Cambrex Corp.*, No. 03-cv-4896 (PGS)., 2007 U.S. Dist. LEXIS 12592, at *21 (D.N.J. Feb. 23, 2007). *See also In re Loewen Group, Inc. Sec. Litig.*, 233 F.R.D. 154, 163 (E.D. Pa. 2005); *In re Merck & Co., Sec. Derivative & ERISA Litig.*, 2013 U.S. Dist. LEXIS 13511, at *43-46 (D.N.J. Jan. 30, 2013); *In re Diagnostic Ventures, Inc. Sec. Litig.*, 249 F.R.D. 196, 203-204 (E.D. Pa. 2008). Here, the

3

corrective disclosure of September 9, 2021 concerned the FDA's rejection of the Company's lenzilumab EUA based on the agency's risk-benefit assessment (*see* Dkt. No. 1 ¶¶ 6, 33), whereas the second and final corrective disclosure of July 13, 2022—more than ten months later—related to issues with the drug's statistical significance in a certain clinical trial (*see* Dkt. No. 1 ¶¶ 8, 50).  The Complaints in the Related Actions—including the Complaint ***filed by Greenbaum himself***—expressly allege that even after the corrective disclosure of September 9, 2021, "[d]espite [the resulting] decline in the Company's stock price, ***Humanigen securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding lenzilumab's clinical and commercial prospects***." *Greenbaum v. Humanigen, Inc. et al.*, 2:22-cv-06118, Dkt. No. 1 ¶ 38 (emphasis added).  Mailey's purchases of Humanigen securities after September 9, 2021 thus provides no basis to disqualify him from appointment as Lead Plaintiff in this litigation, and Greenbaum's arguments to the contrary are at odds with the allegations in Greenbaum's own complaint.

For the foregoing reasons, Mailey respectfully requests that the Court grant his motion in its entirety and deny the competing motions.

## ARGUMENT

### I.     Mailey Should Be Appointed Lead Plaintiff

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has the largest financial interest must make "only a preliminary showing of both typicality and adequacy".  *Sklar v. Amarin Corp. PLC*, Nos. 13-cv-06663 (FLW) (TJB) *et al.*, 2014 U.S. Dist. LEXIS 103051, at *20 (D.N.J. July 29, 2014).  Once this presumption is triggered, it may be rebutted upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, the most adequate plaintiff is Mailey.

### A.     Mailey Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA requires the court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  As the chart at p. 2 reflects, Mailey incurred losses of approximately ***$4.99 million*** as a result of the malfeasance alleged in this Action.  Mailey's loss is thus not only larger than that incurred other movant, it is larger than the losses of both competing

movants combined.  Mailey has plainly alleged the largest financial interest in this litigation.

**B.      Mailey Satisfies the Requirements of Rule 23**

Mailey has also made the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23.  *See Amarin*, 2014 U.S. Dist. LEXIS 103051, at *20.  First, Mailey's claims satisfy the typicality requirement of Rule 23(a)(3) because his claims against Humanigen and the other Defendants are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See, e.g., Beck*, 457 F.3d at 295-96.  Second, Mailey satisfies the adequacy requirement of Rule 23(a)(4) because he has no conflict with other members of the Class, he has retained qualified and experienced counsel, and his losses of over $4.99 million give him a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.  *See, e.g., Vonage*, 2007 U.S. Dist. LEXIS 66258, at *19.

Mailey respectfully submits that the timing of his Class Period transactions in Humanigen stock—which included purchasing securities between the first corrective disclosure of the Defendants' alleged fraud on September 9, 2021 and the second corrective disclosure on July 13, 2022—has no bearing on his adequacy or typicality, nor otherwise provides a basis for denial of his motion.  Courts routinely appoint as lead plaintiffs movants who purchased securities of the defendant issuer

6

even after a partial disclosure of the alleged fraud, finding that "proposed class representatives who purchased shares mid-stream, *i.e.*, during the course of a series of disclosures may satisfy the typicality test" of Rule 23.  *Dodge v. Cambrex Corp.*, No. 03-cv-4896 (PGS)., 2007 U.S. Dist. LEXIS 12592, at *21 (D.N.J. Feb. 23, 2007).  *See also Loewen*, 233 F.R.D. at 163 (rejecting the argument that class representatives who purchased all of their shares after a partial curative disclosure were subject to unique defenses); *Merck*, 2013 U.S. Dist. LEXIS 13511, at *43-46 ("the post-disclosure purchases by [plaintiffs] have 'no bearing on whether or not [they] relied on the integrity of the market during the class period.'") (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir.1992)); *Diagnostic Ventures*, 249 F.R.D. at 203-04 (finding that "post-disclosure purchases will not prevent an investor from relying on the integrity of the market for pre-disclosure purchases").[2]

Here, as his trading history reflects, Mailey began purchasing Humanigen securities in July 2021.  *See generally* Dkt. No. 9-3 at *21-*29.  Roughly two months

---

[2] *See also Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 43 n.2 (S.D.N.Y. 2018) (objection that plaintiff was atypical because he purchased additional shares after a partial corrective disclosure was "without merit because [the plaintiff's] purchase was before the final corrective disclosure"); *In re JPMorgan Chase & Co. Secs. Litig.*, 2015 U.S. Dist. LEXIS 132181, at *13 (S.D.N.Y. Sept. 29, 2015) ("Defendants do not cite a single case—nor is this Court aware of one—holding that a lead plaintiff seeking class certification in a securities fraud suit fails to establish adequacy or typicality where that plaintiff made securities purchases after an alleged partial corrective disclosure but before the final corrective disclosure.").

later, on September 9, 2021, Humanigen disclosed that the FDA had rejected the Company's lenzilumab NDA, advising investors that, "[i]n its letter, [the] FDA stated that it was unable to conclude that the known and potential benefits of lenzilumab outweigh the known and potential risks of its use as a treatment for COVID-19." *See* Dkt. No. 1 ¶¶ 6, 33.  On this news, Humanigen's stock price fell $7.14 per share, or 47.25%, to close at $7.97 per share on September 9, 2021.  *Id.* ¶¶ 7, 34.  Following that disclosure, Mailey purchased additional shares of Humanigen stock.  Then, roughly ten months later, on July 13, 2022, Humanigen disclosed that lenzilumab had failed to show statistical significance on the primary endpoint of the ACTIV-5/BET-B study.  *Id.* ¶¶ 8, 50.  On this news, Humanigen's stock price fell $2.38 per share, or 79.6%, to close at $0.61 per share on July 13, 2022.  *Id.* ¶¶ 9, 51.

Each of the two disclosures regarding Humanigen's lenzilumab product related to a different issue.  The first disclosure of September 2021 concerned the drug's risk-benefit profile, whereas the second disclosure of July 2022 related to the drug's statistical significance in a certain study.  The September 2021 disclosure contained no information that would have alerted an investor to any issues regarding statistical significance on the primary endpoint of the ACTIV-5/BET-B study.

Significantly, both Complaints in the Related Actions—including **Greenbaum's own Complaint**—expressly allege that even after the corrective disclosure of September 9, 2021, "[d]espite [the resulting] decline in the Company's

stock price, ***Humanigen securities continued trading at artificially inflated prices throughout the remainder of the Class Period because of Defendants' continued misstatements and omissions regarding lenzilumab's clinical and commercial prospects***." *Greenbaum*, Dkt. No. 1 ¶ 38 (emphasis added). Mailey respectfully submits that the allegations in Greenbaum's Complaint make his attacks on Mailey's adequacy and typicality difficult to credit. If Greenbaum truly believed that investors, like Mailey, who purchased Humanigen securities after the disclosure of September 9, 2021 are atypical class members, it is unclear why he would have filed a putative class action Complaint that expressly included such investors in its Class definition. The fact that Mailey purchased securities after the September 9, 2021 disclosure thus has no bearing on his adequacy or typicality, nor otherwise warrants denial of his motion.

For all of the foregoing reasons, Mailey strongly satisfies the typicality and adequacy requirements of Rule 23 and is entitled to the PSLRA's strong presumption of being the Lead Plaintiff.

## II.     The Competing Motions of Greenbaum and Motwani Must Be Denied

Neither Greenbaum nor Motwani may be appointed as Lead Plaintiff because neither possesses the largest financial interest in this litigation, and thus neither of the competing movants satisfies the first of the statutory criteria to be entitled to the "most adequate plaintiff" presumption. Here, as discussed above, Mailey clearly

9

possesses the largest financial interest in the Related Actions.  It is thus self-evident that neither Greenbaum nor Motwani possesses the largest financial interest.  This fact alone suffices to mandate denial of their motions.

**CONCLUSION**

For the foregoing reasons, Mailey respectfully requests that the Court issue an Order granting his motion in all respects and denying the competing motions.

Dated:  November 7, 2022                    Respectfully submitted,

POMERANTZ LLP

*/s/ Thomas H. Przybylowski*
Thomas H. Przybylowski
Jeremy A. Lieberman
(admitted *pro hac vice*)
J. Alexander Hood II
(admitted *pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Movant Joshua Mailey and*
*Proposed Lead Counsel for the Class*

THE SCHALL LAW FIRM
Brian Schall
(*pro hac vice* application forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

10

*Additional Counsel for Movant Joshua Mailey*