# EXHIBIT "A"

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Adam S. Levy et al.

    v.                               Civil No. 14-cv-00443-JL

Thomas Gutierrez et al.


**SUMMARY ORDER**

In this putative class action under the Securities Act of 1933, 15 U.S.C. § 77a et seq., and the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., as amended by the Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737 ("PSLRA"), the plaintiffs allege that the defendants made materially false and misleading statements in connection with the offer and sale of securities issued by GT Advanced Technologies, Inc. ("GTAT").[1]  "[T]o increase the chances that securities fraud cases are brought by investors who have substantial and genuine interests in the litigation," the PSLRA "sets forth detailed procedures for bringing and maintaining securities class actions." Local No. 8 IBEW Ret. Plan v. Vertex Pharm., Inc., No. 14-cv-12296-FDS, 2014 WL 5151143, at *2 (D. Mass. Oct. 8, 2014).  As is pertinent here, the plaintiff in such

---

[1]This case was originally filed as thirteen separate related class actions; pursuant to this court's Order of February 4, 2015, those cases were consolidated for all purposes.  While the parties have not yet filed a consolidated complaint, the thirteen complaints all allege similar violations of the securities laws.

an action must, within 20 days of filing the complaint, publish notice of the pendency of the action "in a widely circulated national business-oriented publication or wire service." 15 U.S.C. §§ 77z-1(a)(3)(A)(I); 78u-4(a)(3)(A)(I). Within 60 days of publication, "any member of the purported class may move the court to serve as lead plaintiff of the purported class." Id. The court must then consider any such motion and "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." Id. §§ 77z-1(a)(3)(B)(I); 78u-4(a)(3)(B)(I).

Although several motions for appointment as lead plaintiff have been filed in this action, nearly all movants have either withdrawn their motions or notified the court that they no longer believe they possess a sufficient interest in the outcome of the litigation to serve as lead plaintiff. The court therefore need concern itself only with two competing motions, the proponents of which--Douglas Kurz on one side and IAM National Pension Fund and Central States, Southeast and Southwest Areas Pension Fund (collectively, the "Pension Funds") on the other--each pursue their respective claims to the title of lead plaintiff. As explained fully below, after careful consideration of the

parties' written submissions, the court appoints Kurz as lead plaintiff, and approves his choice of lead counsel.

**<u>Applicable standard</u>**

The PSLRA creates "a presumption that the most adequate plaintiff" to represent the interests of class members "is the person or group of persons" that (1) has filed either the complaint or a motion for appointment as lead plaintiff; (2) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." <u>Id.</u> §§ 77z-1(a)(3)(B)(iii)(I); 78u-4(a)(3)(B)(iii)(I). Consistent with Rule 23(a), however, the presumption may be overcome by "proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." <u>Id.</u> §§ 77z-1(a)(3)(B)(iii)(II); 78u-4(a)(3)(B)(iii)(II).

**<u>Analysis</u>**

The primary point of contention between Kurz and the Pension Funds is which of them "has the largest financial interest in the relief sought by the class." The Pension Funds claim to have

3

suffered a combined loss of roughly $10.5 million dollars due to their investments in GTAT common stock--$6.3 million in losses by IAM National and $4.2 million in losses by Central States.  Kurz, for his part, claims a total loss of over $14.5 million.

The Pension Funds argue that the court should not accept Kurz's figure, which, in their telling, is "vastly overstated." While they suffered all their losses on investments in common stock, they point out only a portion of Kurz's losses--about $7.4 million--are attributable to his investments in common stock.

Nearly $5 million of Kurz's claimed losses, the Pension Funds note, are attributable to his trading in GTAT put options, which, their expert asserts in an unsworn declaration, "were much more complex, riskier, illiquid, and difficult to understand than the other securities at issue in this matter."  Given Kurz's risky and unusual trading strategy, that same expert opines, "[i]t would be difficult, if not impossible, to determine how much--if any--of Mr. Kurz's alleged losses" from his trades in those options "would be recoverable in this matter."  So, the expert concludes, and the Pension Funds argue, the court should not include any of Kurz's alleged losses on put options when calculating his financial interest.  Nor, the Pension Funds argue, should the court include in Kurz's financial interest the roughly $1 million in losses suffered by various trusts for which

Kurz serves as trustee, since he has sought to be appointed lead plaintiff only in his individual capacity, and not in his capacity as trustee.  Cf. Weisz v. Calpine Corp., No. 4:02-cv-1200, 2002 WL 32818827, *7 (N.D. Cal. Aug. 19, 2002) (declining to appoint individual as lead plaintiff where "the vast majority" of his claimed losses were incurred by trusts of which he was trustee, and he had only sought appointment as lead plaintiff "in his individual capacity, not as 'trustee' of his family trusts").

The Pension Funds' objections notwithstanding, the court concludes that Kurz is the lead plaintiff candidate with the "largest financial interest in the relief sought by the class." Even if the court completely discounts Kurz's claimed losses by the roughly $6 million to which the Pension Funds object, those losses still amount to about $8.4 million, consisting of the aforementioned $7.4 million in losses on common stock and an additional $1 million in losses on call options (a figure the Pension Funds have not questioned).  That number is far in excess of the losses claimed by either of the Pension Funds individually---indeed, it is over $2 million greater than IAM National's loss of $6.3 million and double Central States' $4.2 million loss.  In other words, the only way the Pension Funds are able to surpass Kurz's financial interest in this litigation is

by completely discounting a substantial portion of Kurz's losses and then combining their own.

Such aggregation of losses is not necessarily forbidden under the PSLRA.  Indeed, as already noted, the PSLRA directs the court to appoint as lead plaintiff a "member or members of the purported plaintiff class."  15 U.S.C. §§ 77z-1(a)(3)(B)(I); 78u-4(a)(3)(B)(I) (emphasis added).  It further provides that the court's selection is to be guided by a presumption that the appropriate lead plaintiff "is the person or group of persons" that meets the criteria above.  Id. §§ 77z-1(a)(3)(B)(iii)(I); 78u-4(a)(3)(B)(iii)(I) (emphasis added).  The emphasized language suggests, as multiple courts have recognized, that multiple parties may be appointed lead plaintiff.  See, e.g., In re Tyco Int'l, Ltd., 2000 DNH 182, 13-18 (Barbadoro, J.) (concluding that "the appointment of a group of three substantial shareholders as lead plaintiff is consistent with the language and purpose of the PSLRA").  Whether those parties may defeat competing motions for appointment as lead plaintiff by aggregating their losses is less straightforward:  "[s]ome courts refuse to permit aggregation or allow very limited aggregation; some courts allow aggregation only among previously related individuals; some courts permit all possible aggregation."  Friedman v. Quest Energy Partners LP, 261 F.R.D. 607, 613 (W.D. Okla. 2009).

"The case law is clear, however, that the trial court has the discretion to decide whether to allow a lead plaintiff group to aggregate." City of Roseville Emps.' Ret. Sys. v. Textron Inc., No. 09-cv-000367-ML, 2009 WL 4545161, *3 (D.R.I. Dec. 4, 2009). The court declines to permit the Pension Funds to do so here. In this regard, the court finds the court's observations in In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803 (N.D. Ohio 1999), to be particularly germane:

> Where more than one person is involved--whether it be in the context of a "group of persons" seeking to serve as lead plaintiff, or in the context of an attempt by various persons to become co-lead plaintiffs--there is an additional cost associated with intragroup communication and monitoring. The greater the number of persons comprising the group, the more difficult it is for those persons to communicate with each other, and to speak with a single, coherent voice when making decisions about the conduct of the litigation, or, more precisely, the conduct of the attorney or attorneys in prosecuting the litigation. . . .
>
> Without some cohesiveness within the group, or something to bind them together as a unit, there is no reason for the individual members of the group to speak and act with a uniform purpose. Aggregating claims simply for the purpose of creating the largest financial loss would do nothing to reduce the agency cost and collective action problems associated with the former regime.

Id. at 815-16; see also Crawford v. Onyx Software Corp., No. 01-cv-1346, 2002 WL 356760, *2 (W.D. Wash. Jan. 10, 2002) ("A loose group of investors whose relationship was forged only in an effort to win appointment as lead plaintiff has no real

7

cohesiveness, is less likely to be in control of the litigation, and is subject to all of the obstacles that normally make group action difficult."). The Pension Funds have submitted nothing to the court to demonstrate that their association with one another is based on anything more than a desire to win approval as lead plaintiff, so as to confirm that they will be able "to speak with a single, coherent voice" throughout the course of this case, and thus surmount the hurdles noted by the Telxon, Crawford, and similar courts.

For the foregoing reasons, the court concludes that Kurz is the person with the largest financial interest in the relief sought by the class. As already noted, his losses in common stock alone surpass those of either of the Pension Funds (or, for that matter, of any of the other movants who later withdrew their motions). When one adds his options losses--even on call options alone--to that figure, he is a good deal ahead of the rest of the field.

The court's inquiry cannot stop there, however; as noted above, the court must also consider whether Kurz satisfies the requirements of Federal Rule of Civil Procedure 23. The Pension Funds argue that he does not, pointing once again to Kurz's investments in put options. Quoting Andrada v. Atherogenics, Inc., No. 05-cv-1938, 2005 WL 912359, *5 (S.D.N.Y. Apr. 19,

8

2005), they argue that "factual issues specific to [Kurz] in determining the precise value of the options--e.g., the maturity, the volatility of the price of the [GTAT] stock, the level of short term interest rates, and the competitive structure of the market in which the options are traded--would likely threaten the focus of the litigation." As a result, they say, Kurz fails to satisfy Rule 23(a)(3)'s requirement that his claims and defenses be "typical of the claims or defenses of the class."

The Pension Funds' reliance on Andrada is misguided. As the court in that case explained, in declining to appoint the party with the largest financial interest in the litigation as lead plaintiff, its decision was based on the fact that the party in question "only purchased call options and not any of the underlying . . . common stock that most putative class members purchased," and, as a result, was "potentially subject to unique defenses irrelevant to regular stock purchasers in the class." Id. (emphasis in original). Here, however, Kurz did not purchase options only; he also purchased the same common stock purchased by most putative class members--indeed, as already mentioned, his losses on common stock alone are greater than those suffered by

9

any other individual movant in this action.  This case is not, therefore, analogous to Andrada.[2]

In challenging Kurz's appointment as lead plaintiff, the Pension Funds also point out that Kurz purchased some GT stock after a partial disclosure on July 7, 2014, and argue that this may potentially subject him to the defense that he did not make his purchases in reliance on the defendants' allegedly false and misleading statements.  This is certainly not a remarkable legal proposition, as there are circumstances under which post-disclosure purchases may defeat a fraud on the market presumption, such as when a disproportionately large percentage of the investor's purchases are made after a curative disclosure, or when a disclosure is so 'forceful' that it becomes unreasonable to continue to be misled by any alleged misrepresentation.).  E.g., In re DVI Inc. Sec. Litig., 249 F.R.D. 196, 204 n.13 (E.D. Pa. 2008).  That is unpersuasive here,

---

[2]To the extent the Pension Funds suggest that Kurz's unusual trading patterns in put options also render him too atypical to serve as lead plaintiff, the court disagrees.  While his trading in put options may subject him to defenses that set him apart from other options purchasers, and thus preclude him from serving as a named plaintiff on behalf of those classes, that alone does not preclude him from serving as lead plaintiff here, where he is able to serve as a named plaintiff on behalf of at least one class of purchasers, as described above.  Cf. Hevesi v. Citigroup Inc., 366 F.3d 70, 82 (2d Cir. 2004) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action.").

however, as the supposed disclosure--concerning the volume with which GTAT's product was shipping--did not correct the prior, allegedly false statements or otherwise inform GTAT investors of the fraud.[3]  Cf. In re Tronox, Inc. Sec. Litig., 262 F.R.D. 338, 345-46 (S.D.N.Y. 2009) (partial disclosures that "neither make mention of fraud or government investigations; nor . . . sufficiently correct [the defendant's] prior false and misleading statements" did not make purchasers of securities "actually aware of the fraud" and thus did not render those who purchased shares after disclosures atypical).

By the same token, the court does not agree with the Pension Funds' insinuation that Kurz's frequent trading in stocks and options--which they deride as "in-and-out" or "day" trading--make him atypical of the class as a whole.  "[M]any courts have concluded that the fact that a candidate for lead plaintiff engaged in day-trading does not necessarily render that individual or entity atypical or inadequate at representing the class, reasoning where the public market of a quoted security is polluted by false information[,] all types of investors are injured."  In re Host America Corp. Sec. Litig., 236 F.R.D. 102,

---

[3]Indeed, the date of that disclosure bears no relationship to the class periods alleged in the complaint, which generally seek recovery on behalf of all persons who purchased GTAT securities up until September 10, 2014.

11

108 (D. Conn. 2006) (internal quotation marks omitted; citing cases).

Against this backdrop, the court concludes that Kurz has the largest financial interest in the relief sought here, and has made a preliminary showing that he satisfies the requirements of Rule 23. Accordingly, the court appoints him lead plaintiff. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I); 78u-4(a)(3)(B)(iii)(I).

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel." Id. §§ 77z-1(a)(3)(B)(v); 78u-4(a)(3)(B)(v). Kurz has moved the court to approve his selection of Bernstein Litowitz Berger and Grossmann LLP as lead counsel for the class, and Orr & Reno as local counsel. Based upon the résumés Kurz has submitted with his motion, which indicate that both firms have substantial experience prosecuting securities fraud class actions, and based upon this court's own familiarity with Orr & Reno, the court approves Kurz's selection of counsel.

For the foregoing reasons, the court GRANTS Douglas Kurz's motion for appointment as lead plaintiff,[4] and appoints Bernstein Litowitz Berger & Grossmann LLP and Orr & Reno as lead counsel.

---

[4]Document no. 35.

All other pending motions for appointment as lead plaintiff[2] are DENIED.


**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: May 20, 2015

cc:  Avi Josefson, Esq.
     Gerald Silk, Esq.
     John C. Browne, Esq.
     Jennifer A. Eber, Esq.
     Mark L. Mallory, Esq.
     Biron L. Bedard, Esq.
     Deborah R. Gross, Esq.
     Charles N. Nauen, Esq.
     Jason R. Crance, Esq.
     Karen H. Riebel, Esq.
     Kate M. Baxter-Kauf, Esq.
     Richard A. Lockridge, Esq.
     Jamie N. Hage, Esq.
     Brenda E. Keith, Esq.
     Michael Klunder, Esq.
     Richard A. Rosen, Esq.
     Edmund J. Boutin, Esq.
     Christopher D. Hawkins, Esq.
     John E. Lyons, Jr., Esq.
     Danielle S. Myers, Esq.
     John-Mark Turner, Esq.
     Robert M. Rothman, Esq.
     Samuel H. Rudman, Esq.
     Jeffrey C. Spear, Esq.

---

[2]Documents nos. 21, 23, 24, 25, 27, 28, 29, 31, 32, and 34.