EXECUTION

Adam M. Apton, Esq.
LEVI & KORSINSKY, LLP
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Co-Lead Plaintiffs and
Co-Lead Counsel for the Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE HUMANIGEN, INC. SECURITIES LITIGATION | Case No. 2:22cv-05258-WJM-AME **STIPULATION OF SETTLEMENT** |

This Stipulation of Settlement, dated September 22, 2023 (the "Stipulation"), is submitted pursuant to Rule 23 of the Federal Rules of Civil Procedure. Subject to the approval of the Court, this Stipulation is made and entered into by and among: (i) Co-Lead Plaintiffs Dr. Scott Greenbaum and Joshua Mailey and Plaintiff Alejandro Pieroni, individually and on behalf of the Settlement Class (defined below) (collectively, "Plaintiffs"); and (ii) Defendants Humanigen, Inc.

- 1 -

("Humanigen"), Cameron Durrant, and Dale Chappell (collectively, "Defendants," and together with Plaintiffs, the "Parties"), by and through their respective counsel in the above-captioned consolidated class action. The Stipulation is intended to fully, finally, and forever compromise, resolve, discharge, settle, and dismiss with prejudice the Released Claims, subject to the approval of the Court and the terms and conditions set forth in this Stipulation. All capitalized terms used in the Stipulation are defined terms.

## I.    THE LITIGATION

The Litigation is pending before the Honorable William J. Martini in the United States District Court for the District of New Jersey (the "Court"). The initial complaint in this action was filed on August 26, 2022, styled *Pieroni v. Humanigen, Inc., et al.*, No. 2:22-cv-05258-WJM-AME (D.N.J.). ECF No. 1. A second complaint was filed on October 17, 2022, styled *Greenbaum v. Humanigen, Inc., et al.*, No. 2:22-cv-06118-WJM-AME (D.N.J.).

On December 6, 2022, Dr. Greenbaum and Mr. Mailey submitted a stipulation and proposed order appointing themselves as co-lead plaintiffs and consolidating the *Pieroni* and *Greenbaum* actions. ECF No. 19.

On December 9, 2022, the Court so-ordered the stipulation and appointed Dr. Greenbaum and Mr. Mailey as Co-Lead Plaintiffs and consolidated the two actions into the above-captioned matter. ECF No. 20.

On December 22, 2022, the Parties submitted a stipulation setting a schedule for the filing of an amended complaint and Defendants' response thereto. ECF No. 23. On January 11, 2023, the Court granted the proposed stipulation. ECF No. 24. The Parties subsequently requested a short extension of the deadlines, which the Court granted. ECF Nos. 32, 33.

On March 27, 2023, Plaintiffs timely filed the operative complaint under the modified schedule. The operative complaint is titled the "Amended Complaint for Violations of the Federal Securities Laws" (the Amended Complaint"). ECF No. 36.

On May 19, 2023, the Parties submitted a stipulation and proposed order notifying the Court that they scheduled a private mediation session and requesting a modification of the schedule for Defendants' response to Plaintiffs' Amended Complaint. ECF No. 37. On May 23, 2023, the Court so-ordered the stipulation. ECF No. 38.

On May 23, 2023, the Parties participated in a full-day private mediation session. The Parties submitted briefs outlining their respective analyses of the claims and defenses in the litigation, and collectively submitted evidence in support of their respective positions. The mediation was conducted by Mr. Jed Melnick, Esq. ("Mr. Melnick"). The mediation session ended without a resolution.

On July 7, 2023, Defendants moved to dismiss Plaintiffs' Amended Complaint, pursuant to the modified case schedule.  ECF No. 40.

On August 3, 2023, following additional settlement negotiations, Mr. Melnick issued a "mediator's recommendation" to settle the action for $3,000,000, subject to certain terms and conditions.

On August 8, 2023, the Parties accepted Mr. Melnick's recommendation and agreed to move forward with documenting the tentative settlement with a term sheet.

On August 21, 2023, the Parties executed a confidential term sheet agreeing to settle this Litigation subject to approval by the Court.  This Stipulation (together with the Exhibits hereto) reflects the final and binding agreement between the Settling Parties.

## II.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied, and continue to deny, each and all of the claims and allegations of wrongdoing made by Plaintiffs in the Litigation and further maintain that they have meritorious defenses.  Defendants expressly have denied, and continue to deny, all charges of wrongdoing or liability against them arising out of the conduct, statements, acts or omissions alleged, or that could have been alleged in the Litigation.  Defendants also have denied, and continue to deny, any and all allegations of fault, liability, wrongdoing, or damages whatsoever.

As set forth below, neither the Settlement nor any of the terms of this Stipulation shall in any event be construed or deemed to be evidence of or constitute an admission, concession, or finding of any fault, liability, wrongdoing, or damage whatsoever or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants are entering into this Stipulation solely to eliminate the uncertainty, burden, and expense of further protracted litigation. Defendants have determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III. PLAINTIFFS' CLAIMS AND THE BENEFITS OF SETTLEMENT

Plaintiffs believe that the claims asserted in the Litigation have merit and that evidence could be obtained through discovery to support their claims. However, Plaintiffs and their counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and any appeals. Plaintiffs and their counsel also have taken into account the uncertain outcome and risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. Plaintiffs and their counsel also are mindful of the inherent problems of proof under and possible defenses to the securities law violations asserted in the Litigation. Plaintiffs and their counsel believe that the Settlement set forth in this Stipulation confers substantial benefits upon the Settlement Class. Based on their

evaluation, Plaintiffs and their counsel have determined that the Settlement set forth in this Stipulation is in the best interests of the Settlement Class.

## IV.   TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation (together with the exhibits hereto) reflects the final and binding agreement between the Parties.

Based upon their investigation, prosecution, and mediation of the case, Plaintiffs and Lead Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate to the Settlement Class and in the best interests of all Settlement Class Members.  Based on Plaintiffs' direct oversight of the prosecution of this matter and with the advice of his counsel, Plaintiffs have agreed to settle and release the claims raised in the Action pursuant to the terms and provisions of this Stipulation, after considering, among other things: (a) the financial benefit that the Settlement Class will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiffs (for themselves and the Settlement Class Members) and Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with

EXECUTION

prejudice, and without costs, as to all Settling Parties, upon and subject to the terms and conditions of this Stipulation, as follows:

**1.   Definitions**

As used in this Stipulation the following terms have the meanings specified below.  In the event of any inconsistency between any definitions set forth below and any definition set forth in any other document related to the settlement set forth in this Stipulation, the definitions set forth below shall control.

1.1   "Authorized Claimant" means any Settlement Class Member whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.2   "Claims Administrator" means the firm retained by Plaintiffs and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer the Settlement Fund.

1.3   "Class Period" means the period from May 16, 2020, to July 12, 2022, both dates inclusive.

1.4   "Defendants" means Humanigen, Cameron Durrant, and Dale Chappell.

1.5   "Effective Date" means the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation have been met and have occurred.

1.6   "Escrow Agent" means Esquire Bank.

1.7    "Final" means, with respect to any order of the Court, including, without limitation, the Final Order and Judgment, that such order represents a final and binding determination of all issues within its scope and has not been reversed, vacated, or modified in any way and is no longer subject to appellate review, either because of disposition on appeal and conclusion of the appellate process or because of passage, without action, of time for seeking appellate review.  Without limitation, an order becomes Final when either: (a) no appeal has been filed and the time has passed for any notice of appeal to be timely filed; or (b) an appeal has been filed and either (i) the court of appeals has affirmed the judgment or dismissed that appeal and the time for any reconsideration or further appellate review has passed; or (ii) a higher court has granted further appellate review and that court has affirmed the underlying judgment or affirmed the court of appeals' decision affirming the judgment or dismissing the appeal.  For purposes of this paragraph, an "appeal" shall include appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving any petition for a writ of certiorari, or other writ that may be filed in connection with approval or disapproval of this settlement.  Any appeal or other proceeding pertaining to any order concerning the issue of attorneys' fees and expenses, the Plan of Allocation of the Settlement Fund, as hereinafter defined, or the procedures for determining Authorized Claimants' recognized claims shall not in any way delay or preclude the Final Order and Judgment from becoming Final.

1.8    "Final Order" means the Order Approving the Settlement and Order of Dismissal with Prejudice, substantially in the form attached hereto as Exhibit B.

1.9    "Immediate Family" means children, stepchildren, partners, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law.

1.10    "Individual Defendants" means Cameron Durrant and Dale Chappell.

1.11    "Insurer" means XL Specialty Insurance Company.

1.12    "Judgment" means the Order and Final Judgment to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.13    "Lead Counsel" means the law firms of Levi & Korsinsky, LLP and Pomerantz LLP.

1.14    "Litigation" means the action captioned *In re Humanigen, Inc. Securities Litigation*, No. 2:22-cv-05258-WJM-AME (D.N.J.), and includes all of the filings, actions, allegations, and assertions identified in Section I above.

1.15    "Net Settlement Fund" means the portion of the Settlement Fund that shall be distributed to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court, which shall consist of the Settlement Fund less: (i) any Court-awarded attorneys' fees and expenses; (ii) Notice and Administration Expenses; (iii) Taxes and Tax Expenses; and (iv) other Court-approved deductions.

1.16    "Officer" means any officer as that term is defined in the Securities Exchange Act of 1934 Rule 16a-1(f).

1.17    "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business, legal or other entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.18    "Plaintiffs" means Dr. Scott Greenbaum, Joshua Mailey, and Alejandro Pieroni, individually and on behalf of the Settlement Class.

1.19    "Plaintiffs' Counsel" means any attorney or firm who has appeared in the Litigation on behalf of Plaintiffs.

1.20    "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund whereby the Net Settlement Fund shall be distributed to Authorized Claimants.  Any Plan of Allocation is not part of this Stipulation and neither Defendants nor their Related Parties shall have any responsibility or liability with respect thereto.

1.21    "Proof of Claim and Release" means the Proof of Claim and Release form for submitting a claim, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit A-2, that a Settlement Class

Member must complete and submit should that Settlement Class Member seek to share in a distribution of the Net Settlement Fund.

1.22    "Related Parties" means each Defendants' respective past, present or future parents, subsidiaries, joint ventures and joint venturers, divisions and affiliates, and their respective present and former employees, members, partnerships and partners, principals, officers, directors, controlling shareholders, attorneys, advisors, financial advisors, investment banks, underwriters, accountants, auditors, and insurers and reinsurers; any entity in which a Defendant has a controlling interest, including without limitation the Black Horse Entities as defined in Paragraph 20 of the Amended Complaint (ECF No. 36); and the predecessors, successors, estates, immediate family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or personal representatives, assigns, and assignees of each of them, in their capacity as such.

1.23    "Released Claims" means Released Defendants' Claims and Released Plaintiffs' Claims (defined below).

1.24    "Released Defendants' Claims" means any and all claims and causes of action of every nature and description, whether known or Unknown Claims, asserted or unasserted, whether arising under federal, state, common or foreign law arising from the institution, prosecution, or settlement of the claims against Defendants, except claims to enforce the Settlement.

1.25   "Released Plaintiffs' Claims" means any and all claims and causes of action of every nature and description, whether known or Unknown Claims, asserted or unasserted, whether arising under federal, state, statutory, regulatory, common or foreign law  concerning, based on, arising out of, or in connection with : (i) the purchase or other acquisition or sale of Humanigen securities during the Class Period; and (ii) the allegations, transactions, acts, facts, matters, occurrences, disclosures, statements, filings, representations, omissions, or events that were or could have been alleged or asserted in the Litigation; and (iii) disclosures, public filings, registration statements, press releases, presentations, or other statements made by Defendants during the Class Period.

1.26   "Released Persons" means each and all of the Defendants and their Related Parties.

1.27   "Settlement" means the resolution of the Litigation in accordance with the terms and provisions of this Stipulation.

1.28   "Settlement Amount" means Three Million Dollars ($3,000,000.00) in cash to be paid by Humanigen or Humanigen's Insurer by wire transfer to the Escrow Agent pursuant to ¶ 2.1 of this Stipulation.

1.29   "Settlement Class" or "Class" means all Persons (defined below) who purchased or otherwise acquired Humanigen securities during the Class Period. Excluded from the Settlement Class are: (i) Defendants; (ii) the officers, directors,

and affiliates of Humanigen, at all relevant times; (iii) Humanigen's employee retirement or benefit plan(s) and their participants or beneficiaries to the extent they purchased or acquired Humanigen securities through any such plan(s); (iv) any entity in which Defendants have or had controlling interest; (v) Immediate Family members of any excluded person; and (vi) the legal representatives, heirs, successors, or assigns of any excluded person or entity.

1.30    "Settlement Class Member" or "Member of the Class" means a Person who falls within the definition of the Settlement Class as set forth in ¶ 1.29 above.

1.31    "Settlement Fund" means the Settlement Amount plus all interest and accretions thereto.

1.32    "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

1.33    "Settling Parties" means, collectively, Defendants and Plaintiffs, on behalf of themselves and the Settlement Class.

1.34 "Unknown Claims" means any and all Released Claims which Plaintiffs, Plaintiffs' Counsel,  any Settlement Class Members, Defendants, or Defendants' counsel do not know or suspect to exist in his, her, its, or their favor at the time of the release  which, if known by him, her, it, or them might have affected his, her, its, or their settlement with and release of the Settling Parties, or might have

affected his, her, its, or their decision(s) with respect to the Settlement. Unknown Claims include those Released Claims in which some or all of the facts comprising the claim may be suspected, or that may be undisclosed or hidden. With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Plaintiffs and the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived and relinquished the provisions, rights, and benefits conferred by or under California Civil Code § 1542, or any other law of the United States or any state or territory of the United States, or principle of common law that is similar, comparable, or equivalent to § 1542, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Plaintiffs acknowledge that they may hereafter discover facts in addition to or different from those which they or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims, but the Plaintiffs shall expressly settle and release, and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or

unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Settling Parties acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is a key element of the Settlement of which this release is a part.

    **2.**    **The Settlement**

        **a.**    **The Settlement Fund**

2.1    As consideration for the full settlement of the Released Plaintiffs' Claims against Defendants and in consideration of the releases in ¶¶ 1.23 and 1.24 above, all of which the Parties agree are good and valuable consideration, Humanigen will deposit or cause its Insurer to deposit the Settlement Amount  into an interest-bearing escrow account ("Escrow Account") controlled by the Escrow Agent on or before thirty (30) calendar days after the later of: (i) the entry of the Preliminary Approval Order, as defined in ¶3.1 herein; and  (ii) the receipt by Defendants of all information necessary to effectuate a transfer of funds, including, the bank name and ABA routing number, account name and number, and a signed

EXECUTION

W-9 reflecting the taxpayer identification number for the Settlement Fund; provided that, in the event that Humanigen has filed for bankruptcy protection or an insolvency proceeding has otherwise commenced against Humanigen prior to the payment of the Settlement Amount, payment of the Settlement Amount will not be due until thirty (30) calendar days after the Bankruptcy Court's approval of a Motion To Modify the Automatic Stay to authorize the payment of the Settlement Amount by the Insurer.

2.2    If the entire Settlement Amount is not timely deposited into the Escrow Account, Lead Counsel may terminate the Settlement but only if: (i) Lead Counsel has notified Defendants' counsel in writing of Lead Counsel's intention to terminate the Settlement, and (ii) the entire Settlement Amount is not transferred to the Escrow Account within five (5) business days after Lead Counsel has provided such written notice.

2.3    Other than the obligation of Humanigen to pay or cause its Insurer to pay the Settlement Amount into the Settlement Fund set forth in ¶ 2.1 herein, Defendants shall have no obligation to make any other payment into the Settlement Fund pursuant to this Stipulation, and shall have no responsibility, obligation, or liability with respect to the Escrow Account or the monies maintained in the Escrow Account or the administration of the Settlement, including, without limitation, any

responsibility or liability related to any fees, taxes, investment decisions, maintenance, supervision or distribution of any portion of the Settlement Amount.

### b.    The Escrow Agent

2.4    The Settlement Fund shall be used as provided in ¶ 5.6 below.

2.5    The Escrow Agent shall invest the Settlement Amount deposited pursuant to ¶ 2.1 hereof in short term United States Agency or Treasury Securities or other instruments backed by the Full Faith and Credit of the United States Government or an Agency thereof, or fully insured by the United States Government or an Agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund, and the Released Persons shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of the Escrow Agent, or any transactions executed by the Escrow Agent.

2.6    The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the prior written agreement of Defendants' counsel.

2.7    Subject to further order(s) and/or directions as may be made by the Court, or as provided in this Stipulation, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Stipulation. The Released

Persons shall have no responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

2.8    All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.9    Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may use up to Two Hundred Fifty Thousand Dollars ($250,000.00) from the Settlement Fund, without further approval and/or order of the Court, for reasonable costs and expenses actually incurred in connection with providing notice of the Settlement to the Class, locating Settlement Class Members, soliciting claims, assisting with the submission of claims, processing Proof of Claim and Release forms, administering the Settlement, and paying escrow fees and costs, if any ("Notice and Administration Expenses").  After the Effective Date, all such Notice and Administration Expenses shall be paid from the Settlement Fund subject to prior approval of the Court.  The Released Persons shall have no responsibility for or liability whatsoever with respect to the Notice and Administration Expenses, nor shall they have any responsibility or liability whatsoever for any claims with respect thereto.

### c.    Taxes

2.10    (a)    The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1.  The Settling Parties and the Escrow Agent further agree that the Settlement Fund shall be established pursuant to the Court's subject matter jurisdiction within the meaning of Treas. Reg. §1.468B-1(c)(1).  In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 2.10, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)    For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" (as defined in Treas. Reg. § 1.468B-2(k)(3)) shall be the Escrow Agent.  The Escrow Agent shall timely and properly file all informational and other federal, state, or local tax returns necessary or advisable with respect to the earnings on the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)).  Such returns (as well as the elections described in ¶ 2.10(a) hereof) shall be

- 19 -

consistent with this ¶ 2.10 and in all events shall reflect that all Taxes (including any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶ 2.10(c) hereof.

(c)    All (i) Taxes (including any estimated Taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Persons or their counsel with respect to any income earned by the Settlement Fund for any period, after the deposit of the Settlement Amount, during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this ¶ 2.10 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶ 2.10) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events the Released Persons and their counsel shall have no liability or responsibility whatsoever for the Taxes or the Tax Expenses.  The Escrow Agent, through the Settlement Fund, shall indemnify and hold each of the Released Persons and their counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification).  Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely

paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)); neither the Released Persons nor their counsel are responsible nor shall they have any liability for any Taxes or Tax Expenses.  The Settling Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶ 2.10.

### d.    Termination of Settlement

2.11    In the event that this Stipulation is not approved or the Settlement is not approved, or is terminated, canceled, or the Effective Date otherwise fails to occur for any reason, including, without limitation, in the event the Judgment is reversed or vacated or materially altered following any appeal taken therefrom, or is successfully collaterally attacked, the Settlement Fund (including accrued interest) less Notice and Administration Expenses up to Two Hundred and Fifty Thousand Dollars ($250,000.00) and Taxes or Tax Expenses paid, incurred, or due and owing pursuant to ¶¶ 2.9 and 2.10 hereof in connection with the Settlement provided for herein, shall be refunded to Humanigen or its Insurer who paid the Settlement within

ten (10) calendar days, or such other time as agreed to by Humanigen or its Insurer in accordance with ¶ 7.4 herein.

### 3. Preliminary Approval Order and Settlement Hearing

3.1 Within ten (10) calendar days after execution of this Stipulation, Lead Counsel shall submit this Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Preliminary Approval Order"), substantially in the form of Exhibit A attached hereto, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation and approval for publication of a settlement notice (the "Notice") and summary notice ("Summary Notice"), substantially in the forms of Exhibits A-1 and A-3 attached hereto, and the mailing of a postcard notice (the "Postcard Notice"), substantially in the form of Exhibit A-4 attached hereto. The Notice shall include the general terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application, as defined in ¶ 6.1 hereof, and the date of the Settlement Hearing as defined below.

3.2 Humanigen shall provide to Lead Counsel or the Claims Administrator certain transfer records reflecting ownership or acquisition of Humanigen common stock within ten (10) business days of the date of entry of the Preliminary Approval Order. It shall be solely Lead Counsel's responsibility to disseminate the Notice, Postcard Notice, and Summary Notice to the Settlement Class in accordance with

this Stipulation and as ordered by the Court. Settlement Class Members shall have no recourse as to the Released Persons with respect to any claims they may have that arise from any failure of the notice process.

3.3    Lead Counsel shall request that, after notice is given and not earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State officials are provided with notice pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 *et seq.* ("CAFA") as set forth in ¶ 3.4 below, the Court hold a hearing (the "Settlement Hearing") and approve the Settlement of the Litigation as set forth herein.

3.4    At the Settlement Hearing, the Settling Parties shall jointly request entry of the Final Order and Judgment, in the form attached hereto as Exhibit B:

(a)    finally approving the Settlement as fair, reasonable and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing consummation pursuant to its terms;

(b)    directing that the Litigation be dismissed without costs and expenses, except as set forth in this Stipulation, and with prejudice, and releasing the Released Claims;

(c)    permanently barring and enjoining the institution and prosecution, by Plaintiffs and/or the Settlement Class Members, of any other action against the Released Persons in any court asserting the Released Claims;

EXECUTION

(d)     reserving jurisdiction over the Litigation, including all future proceedings concerning the administration, consummation, and enforcement of this Stipulation;

(e)     finding that the Litigation was prosecuted and defended on a good faith basis in accordance with the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 11 of the Federal Rules of Civil Procedure;

(f)     finding, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delaying and directing entry of a final judgment; and

(g)     containing such other and further provisions consistent with the terms of this Stipulation to which the Settling Parties expressly consent in writing.

3.5     At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

3.6     Defendants shall no later than ten (10) calendar days following the filing of this Stipulation with the Court serve upon the appropriate State official of each State in which a Settlement Class Member resides and the Attorney General of the United States a notice of the proposed Settlement in compliance with the requirements of CAFA.  Defendants are solely responsible for the costs of the CAFA notice and administering the CAFA notice.

EXECUTION

4.      **Releases**

4.1     Upon the Effective Date, as defined in ¶ 1.5 hereof, Plaintiffs and each of the other Settlement Class Members, whether or not such Settlement Class Member executes and delivers the Proof of Claim and Release form, and whether or not such Settlement Class Member shares or seeks to share in the Settlement Fund, for themselves and for any Person claiming now or in the future through or on behalf of them, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived, released, relinquished, discharged and dismissed Defendants and their Related Parties from each and every one of the Released Plaintiffs' Claims.

4.2     Any Proof of Claim and Release that is executed by Settlement Class Members shall be substantially in the form contained in Exhibit A-2 attached hereto.

4.3     Upon the Effective Date, Plaintiffs, all Settlement Class Members and anyone claiming now or in the future through or on behalf of any of them, will be forever barred and enjoined from commencing, instituting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Plaintiffs' Claims against any of the Released Persons.

4.4     Upon the Effective Date, each of the Defendants shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally,

and forever released, relinquished, and discharged Plaintiffs, each of the Settlement

Class Members, and Lead Counsel from the Released Defendants' Claims.  This

release shall not apply to any person or entity who or which submits a request for

exclusion from the Settlement Class that is accepted by the Court.

### 5.    Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund

5.1    As part of the Preliminary Approval Order, Plaintiffs shall seek

appointment of a Claims Administrator.

5.2    The Claims Administrator, subject to such supervision and direction of

Lead Counsel and the Court as may be necessary or as circumstances may require,

shall administer and calculate the claims submitted by Settlement Class Members

and shall oversee distribution of the Net Settlement Fund to Authorized Claimants

pursuant to the Plan of Allocation.  Other than Humanigen's obligation to provide

certain records as provided in ¶ 3.2 above, none of the Defendants, nor their Related

Parties, shall have any responsibility, authority or liability whatsoever for the

selection of the Claims Administrator, the Plan of Allocation, the administration of

the Settlement, the claims process, or disbursement of the Net Settlement Fund, and

shall have no liability whatsoever to any Person or entity, including, but not limited

to, Plaintiffs, any other Settlement Class Members, or Lead Counsel in connection

with the foregoing.  Defendants shall cooperate in the administration of the

Settlement to the extent reasonably necessary to effectuate its terms.

EXECUTION

5.3    In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail the Postcard Notice to those members of the Settlement Class as may be identified through reasonable effort.  Lead Counsel shall also cause the Claims Administrator to: (a) post downloadable copies of the Notice and Proof of Claim and Release Form online at a website maintained for the purpose of providing information to the Settlement Class; and (b) have the Summary Notice and Postcard Notice published and mailed, respectively, in accordance with the terms of the Preliminary Approval Order to be entered by the Court.

5.4    Defendants will take no position with respect to the Plan of Allocation. The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court.  Plaintiffs and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Litigation.  Defendants shall not object in any way to the Plan of Allocation or any other plan of allocation in this Litigation.  Neither Defendants, nor any of Defendants' Related Parties, shall have any liability, obligation, or responsibility whatsoever for the application of the Court-approved plan of allocation.

5.5    Any Settlement Class Member who does not timely submit a valid Proof of Claim and Release Form will not be entitled to receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Stipulation and Settlement, including the terms of the Judgment to be entered in the Litigation and the releases provided for herein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Defendants or Defendants' Related Parties with respect to the Released Plaintiffs' Claims in the event that the Effective Date occurs with respect to the Settlement.

5.6    The Settlement Fund shall be applied as follows:

(a)    to pay all the costs and expenses reasonably and actually incurred in connection with providing Notice, Postcard Notice, and Summary Notice, locating Settlement Class Members, soliciting Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms, and paying escrow fees and costs, if any;

(b)    to pay the Taxes and Tax Expenses;

(c)    to pay attorneys' fees and expenses of Plaintiffs' Counsel and reimbursement of Plaintiffs' expenses (the "Fee and Expense Award"), if and to the extent allowed by the Court; and

(d)    to distribute the balance of the Net Settlement Fund to Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

5.7    After the Effective Date, and in accordance with the terms of this Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following provisions of this Stipulation.

5.8    Within one hundred-twenty (120) days after the mailing of the Postcard Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release form, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release form.

5.9    Except as otherwise ordered by the Court, all Settlement Class Members who fail to timely submit a valid Proof of Claim and Release form within such period shall be forever barred from receiving any payments pursuant to this Stipulation and the Settlement set forth herein, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment, and will be barred from bringing any action against the Released

Persons concerning the Released Claims. Notwithstanding the foregoing, Lead Counsel shall have the discretion to accept late-submitted claims for processing by the Claims Administrator so long as the distribution of the Settlement Fund to Authorized Claimants is not materially delayed thereby. No Person shall have any claim against Plaintiffs, their counsel, the Released Persons, the Claims Administrator or any Settlement Class Member by reason of the exercise or non-exercise of such discretion.

5.10 Each Proof of Claim and Release shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine, in accordance with this Stipulation and the approved Plan of Allocation, the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to ¶ 5.12 below.

5.11 Proof of Claim and Release forms that do not meet the submission requirements may be rejected. Prior to rejecting a Proof of Claim and Release in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Proof of Claim and Release submitted. The Claims Administrator, under the supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in

such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of ¶ 5.12 below.

5.12   If any claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in ¶ 5.3 above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Lead Counsel shall thereafter present the claimant's request for review to the Court.

5.13   Each claimant who declines to be excluded from the Settlement Class shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, including, but not limited to, all releases provided for herein and in the Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Settlement Class Member and the validity and amount of the claimant's claim.  In connection with processing the

Proofs of Claim and Release, no discovery shall be allowed on the merits of the Litigation or the Settlement.

5.14    The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with the Plan of Allocation set forth in the Notice and approved by the Court.  Any such Plan of Allocation is not part of this Stipulation.   No funds from the Net Settlement Fund shall be distributed to Authorized Claimants until the Effective Date.  If there is any balance remaining in the Net Settlement Fund after a reasonable period of time after the date of the initial distribution of the Net Settlement Fund, Lead Counsel shall, if feasible and economical, reallocate (which reallocation may occur on multiple occasions) such balance among Authorized Claimants in an equitable and economical fashion.  Any *de minimis* balance that still remains in the Net Settlement Fund after such reallocation(s) and payments, which is not feasible or economical to reallocate, shall be donated to any appropriate non-sectarian, non-profit charitable organization(s) serving the public interest selected by Lead Counsel and approved by the Court.

5.15    Defendants and their Related Parties shall have no responsibility for  or liability whatsoever with respect to the investment or distribution of the Settlement Fund or Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.  No Person shall have any

claim of any kind against the Defendants, their Related Parties, or counsel for Defendants with respect to the matters set forth in ¶¶ 5.1-5.18 hereof; and the Settlement Class Members, Plaintiffs, and Lead Counsel hereby fully, finally and forever release the Defendants and their Related Parties from any and all liability and claims arising from or with respect to the administration, investment, or distribution of the Settlement Fund.

5.16   No Person shall have any claim against Defendants or their Related Parties, Defendants' counsel, Plaintiffs, Plaintiffs' Counsel or the Claims Administrator, or any other Person designated by Lead Counsel based on determinations or distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.17   It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund, including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment approving this Stipulation and the Settlement set

forth herein, or any other orders entered pursuant to the Stipulation. The time to appeal from approval of the settlement shall commence upon the Court's entry of the Judgment regardless of whether a Plan of Allocation has been approved.

5.18    All Persons who fall within the definition of Settlement Class Members (who do not exclude themselves) shall be subject to and bound by the provisions of this Stipulation, the releases contained herein, the Judgment with respect to all Released Claims, regardless of whether such Persons seek or obtain by any means, including, without limitation, by submitting a Proof of Claim and Release or any similar document, any distribution from the Settlement Fund or Net Settlement Fund.

**6.    Lead Counsel's Attorneys' Fees and Expenses**

6.1    Lead Counsel may submit an application or applications (the "Fee and Expense Application") from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) expenses incurred in connection with prosecuting the Litigation; plus (c) any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid) as may be awarded by the Court. Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

6.2    Any fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes

the Judgment and an order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto or to the Settlement, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof. Lead Counsel may thereafter allocate the attorneys' fees among Plaintiffs' Counsel in a manner in which they in good faith believe reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.

6.3    In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or this Stipulation is canceled or terminated for any other reason, and such reversal, modification, cancellation or termination becomes Final and not subject to review, and in the event that the Fee and Expense Award has been paid to any extent, then Lead Counsel, including their partners and/or shareholders, and such other Plaintiffs' Counsel, including their law firms, partners, and/or shareholders, and Plaintiffs who have received any portion of the Fee and Expense Award shall, within five (5) business days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction, refund to the Settlement Fund all such fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned on the Settlement Fund in an amount consistent with such reversal, modification, cancellation or termination. Any refunds required pursuant to ¶ 6.3 shall be the several obligation of Lead Counsel, including their partners and/or

shareholders, and former partners and/or shareholders who received a distribution of any portion of the Fee and Expense Award, Plaintiffs' Counsel, including their law firms, partners, and/or shareholders, and Plaintiffs that received fees or expenses to make appropriate refunds or repayments to the Settlement Fund.

6.4    The procedure for and the allowance or disallowance by the Court of any applications by any Plaintiffs' Counsel for attorneys' fees and expenses to be paid out of the Settlement Fund is not part of the Settlement set forth in this Stipulation, and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation, and any order or proceeding relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving this Stipulation and the Settlement of the Litigation set forth therein.

6.5    Any fees and/or expenses awarded by the Court shall be paid solely from the Settlement Fund. Defendants and their Related Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees and/or expenses (including Taxes) to Plaintiffs' Counsel, or any other counsel or Person who receives payment from the Net Settlement Fund.

6.6    Defendants and their Related Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Plaintiffs' Counsel and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation, and the Defendants and their related parties take no position with regard to such matters.

6.7    The Released Persons shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses (including Taxes) incurred by or on behalf of any Settlement Class Member, whether or not paid from the Escrow Account.

## 7.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination

7.1    The Effective Date of the Settlement shall be the date when all of the following shall have occurred and is conditioned on the occurrence of all of the following events:

(a)    the Court has entered the Preliminary Approval Order, as required by ¶ 3.1 hereof;

(b)    the Settlement Amount has been deposited into the Escrow Account;

(c)    Defendants have not exercised their option to terminate the Stipulation pursuant to ¶ 7.3 hereof;

(d)     In the event that Humanigen files for bankruptcy protection or an insolvency proceeding is otherwise commenced against Humanigen prior to the Final Order and Judgment becoming Final, the Bankruptcy Court's approval of a Bankruptcy Rule 9019 Motion approving the Settlement and granting Humanigen's Insurer relief from the automatic stay to make payments from the applicable policy;

(e)     The Court has approved the Settlement described herein, following notice to the Settlement Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure;

(f)     the Court has entered the Final Order and Judgment, substantially in the form of Exhibit B attached hereto, and

(g)     the Final Order and Judgment has become Final, as defined in ¶ 1.7 hereof.

7.2     Upon the Effective Date, except as described in Sections 7.4 and 7.5 below, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If all of the conditions specified in ¶ 7.1 hereof are not met, then the Settlement shall be canceled and terminated subject to ¶¶ 7.4 and 7.5 hereof unless Lead Counsel and counsel for the Defendants mutually agree in writing to proceed with the Settlement.

7.3     Defendants shall have the right to terminate the Settlement and render it null and void in the event that Settlement Class Members who purchased or

otherwise acquired more than a certain percentage of Humanigen common stock subject to this Settlement exclude themselves from the Settlement Class, as set forth in a separate agreement (the "Supplemental Agreement") executed between Plaintiffs and Defendants, by and through their counsel.  The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein, to the extent necessary, or as otherwise provided in the Supplemental Agreement), unless and until the Court otherwise directs or a dispute arises between the Settling Parties concerning its interpretation or application.  If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, the Settling Parties will seek to have the Supplemental Agreement submitted to the Court *in camera* or filed under seal.

7.4     In the event the Effective Date does not occur or this Stipulation shall terminate, or be canceled, or otherwise fail to become effective for any reason, including, without limitation, in the event that the Settlement as described herein is not approved by the Court or the Final Order or Judgment is reversed or vacated following any appeal taken therefrom, then:

(a)     within ten (10) business days after written notification of such event is sent by counsel for the Defendants or Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest) and all payments disbursed, less

reasonable expenses which have been properly disbursed pursuant to Section 2 hereof or are determined to be properly chargeable to the Settlement Fund, up to the amount provided in ¶ 2.9, shall be refunded, reimbursed, and repaid by the Escrow Agent to Humanigen or Humanigen's paying Insurer pursuant to written instructions by Defendants' counsel.  If such amounts are not timely paid by the Escrow Agent, then interest shall accrue at the rate of 5% per annum, until such amounts are paid;

(b)    the Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund, pursuant to written instructions from Defendants' counsel;

(c)    the Settling Parties shall be restored to their respective positions in the Litigation as of August 21, 2023;

(d)    the terms and provisions of the Stipulation, with the exception of ¶¶ 2.5-2.8, 2.10, 6.7, and 8.3-8.19 hereof, shall have no further force and effect with respect to the Settling Parties, and neither the existence nor the terms of this Stipulation (nor any negotiations preceding this Stipulation nor any acts performed pursuant to, or in furtherance of, this Stipulation) shall be used in this Litigation or in any other proceeding for any purpose (other than to enforce the terms remaining in effect); and

(e)     any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses, and interest awarded by the Court to any of Plaintiffs' counsel shall constitute grounds for cancellation or termination of the Stipulation.

7.5     If the Court does not enter the Final Order and Judgment in the form of Exhibit B hereto, or if the Court enters the Final Order and Judgment and appellate review is sought and, on such review, the Final Order or Judgment is vacated, modified, or reversed, then this Stipulation and the Settlement incorporated herein shall be cancelled and terminated, unless all parties who are adversely affected thereby, in their sole discretion within thirty days from the date of the mailing of such ruling to such parties, provide written notice to all other parties hereto of their intent to proceed with the Settlement under the terms of the Final Order and Judgment as modified by the Court or on appeal.  Such notice may be provided on behalf of Plaintiffs and the Settlement Class Members by Lead Counsel.  No Settling Party shall have any obligation whatsoever to proceed under any terms other than in the form provided and agreed to herein; provided, however, that no order of the Court concerning any fee and expense application, or any modification or reversal

on appeal of such order, shall constitute grounds for cancellation or termination of this Stipulation by any Settling Party.

### 8. Miscellaneous Provisions

8.1    The Settling Parties: (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation.

8.2    The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.    The Settlement compromises all claims that were or are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Judgment will contain a finding that, during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any

contention made in any public forum regarding the Litigation, including that the Litigation was brought or defended in bad faith or without a reasonable basis.

8.3    Neither the Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, any allegation made in the Litigation, or of any wrongdoing or liability of the Released Persons; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (c) is or may be deemed or used as an admission or evidence that any claims asserted by Lead Plaintiffs were not valid or that the amount recoverable was not greater than the Settlement Amount, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Neither this Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement shall be admissible in any proceeding for any purpose except that Defendants and/or their respective Related Parties may file this Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any

other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

8.4    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.

8.5    All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

8.6    This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.7    This Stipulation and the Exhibits attached hereto and the Supplemental Agreement constitute the entire agreement among the Settling Parties hereto as to the subject matter hereof and supersede any prior or contemporaneous written or oral agreements or understandings between the Settling Parties.  No representations, warranties, or inducements have been made to any party concerning this Stipulation or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  It is understood by the Settling Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Stipulation is entered into may turn out to be other than or different from the facts now known to each party or believed by such party to be true; each party therefore expressly assumes the risk of the facts or law turning out to be different,

and agrees that this Stipulation shall be in all respects effective and not subject to termination by reason of any such different facts or law.

8.8    Except as otherwise provided herein, each party shall bear his, her, or its own fees and costs.

8.9    Lead Counsel, on behalf of the Settlement Class, represents that it is expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to this Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to this Stipulation on behalf of the Settlement Class which they deem appropriate.

8.10   Each counsel or other Person executing this Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

8.11   This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court. Signatures sent by facsimile or in .pdf form via e-mail shall be deemed originals.

8.12   All notices, requests, demands, claims, and other communications hereunder shall be in writing and shall be deemed duly given (i) when delivered personally to the recipient, (ii) one (1) business day after being sent to the recipient by reputable overnight courier service (charges prepaid), or (iii) seven (7) business

days after being mailed to the recipient by certified or registered mail, return receipt requested and postage prepaid, and addressed to the intended recipient as set forth below:

> ### If to Plaintiffs or to Lead Counsel:

> Levi & Korsinsky, LLP
> Attn: Adam M. Apton
> 33 Whitehall Street, 17th Floor
> New York, New York 10004
> Telephone: (212) 363-7500
> Email: aapton@zlk.com

> Pomerantz LLP
> Attn: Jeremy A. Lieberman
> 600 Third Avenue, 20th Floor
> New York, New York 10016
> Telephone: (212) 661-1100
> Email: jalieberman@pomlaw.com

> ### If to Defendants' or Defendants' Counsel:

> Polsinelli
> Attn: Stacy Carpenter
> 1401 Lawrence Street, Suite 2300
> Denver, Colorado 80202

> Polsinelli
> Attn: Bryan Westhoff
> 150 N. Riverside Plaza, Suite 3000
> Chicago, Illinois 60606

8.13   This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties, including any corporation or other entity into or with which any party merges, consolidates, or reorganizes.

8.14    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation and matters related to the Settlement.

8.15    The waiver by one party of any breach of this Stipulation by any other party shall not be deemed a waiver by any other party or a waiver of any other prior or subsequent breach of this Stipulation.

8.16    Pending approval of the Court of this Stipulation and its Exhibits, all proceedings in this Litigation shall be stayed and all Members of the Settlement Class shall be barred and enjoined from prosecuting any of the Released Claims against any of the Released Persons.

8.17    This Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of New Jersey, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of New Jersey without giving effect to its choice-of-law principles.

8.18    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

8.19    This Stipulation shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been

EXECUTION

prepared by counsel for one of the Settling Parties, it being recognized that it is the result of arm's-length negotiations between the Settling Parties and the Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated September 22, 2023.

[Signatures on following pages]

EXECUTION

**LEVI & KORSINSKY LLP**

_____

Adam M. Apton
Devyn R. Glass
33 Whitehall Street, 17th Floor
New York, New York 10004
Telephone: (212) 363-7500
Fax: (212) 363-7171
aapton@zlk.com
dglass@zlk.com


**POMERANTZ LLP**

_____

Jeremy A. Lieberman
Brenda Szydlo
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
bszydlo@pomlaw.com

_Attorneys for Plaintiffs and
Lead Counsel for the Class_

EXECUTION

**POLSINELLI PC**

_____

Bryan Westhoff
150 N. Riverside, Suite 3000
Chicago, IL 60602
Telephone: (312) 819-1900
bwesthoff@polsinelli.com

*Attorneys for Defendants Humanigen, Inc.
and Cameron Durrant*

**KLEINBERG KAPLAN WOLFF &
COHEN PC**

_____

Marc Robert Rosen
500 Fifth Avenue,
New York, New York 10110
Telephone: 212.986.6000
Fax: 212.986.8866
mrosen@kkwc.com

*Attorneys for Defendant Dale Chappell*