Adam M. Apton, Esq.
LEVI & KORSINSKY, LLP
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Co-Lead Plaintiffs and
Co-Lead Counsel for the Class*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE HUMANIGEN, INC. SECURITIES LITIGATION | Case No. 2:22-cv-05258-WJM-AME<br><br>**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ........................................................................ 1

II.  SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS . 3

    A.  Plaintiffs' Claims and Allegations ......................................... 3

    B.  Procedural History............................................................. 4

III.  THE PROPOSED TERMS OF SETTLEMENT............................. 6

    A.  The Class Definition......................................................... 6

    B.  Monetary Consideration and Plan of Allocation.................... 6

    C.  Release Provisions............................................................ 7

IV.  PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE .................................................................... 7

    A.  The Settlement Approval Process ...................................... 7

    B.  The Proposed Settlement Meets the Requirements for Preliminary Approval under Rule 23(e)(2). ........................... 9

V.  PROVISIONAL CERTIFICATION OF THE SETTLEMENT UNDER RULE 23 IS APPROPRIATE ................................................... 19

    A.  The Class Members Are So Numerous that Joinder Is Impracticable. .............................................................. 20

    B.  Common Questions of Law or Fact Exist .......................... 21

    C.  Plaintiffs' Claims are Typical of Those of the Class ............ 22

    D.  Plaintiffs Are Adequate Representatives of the Class .......... 22

    E.  The Requirements of Rule 23(b)(3) Are Also Satisfied ........ 23

VI.  THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE CONSTITUTIONALLY SOUND AND APPROPRIATE........................ 25

VII.  PROPOSED SCHEDULE........................................................ 26

VIII.  CONCLUSION................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

*Alves v. Main*,
  No. CIV.A. 01-789 DMC, 2012 WL 6043272 (D.N.J. Dec. 4, 2012) ....... 10, 14

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001) ............................................................12

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................... 20, 22, 23

*Blum v. Stenson*,
  465 U.S. 886 (1984) .......................................................................................16

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .............................................................................8

*Chavarria v. N.Y. Airport Serv., LLC*,
  875 F. Supp. 2d 164 (E.D.N.Y. 2012) .............................................................19

*In re Community Bank of Northern Virginia*,
  418 F.3d 277 (3d Cir. 2005) ...........................................................................23

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) .............................................................................20

*In re Datatec Sys., Inc. Sec. Litig.*,
  No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007) ...............18

*In re DVI Inc. Sec. Litig.*,
  249 F.R.D. 196 (E.D. Pa. 2008) .....................................................................21

*In re Gen. Instrument Sec. Litig.*,
  209 F. Supp. 2d 423 (E.D. Pa. 2001) ..............................................................19

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .............................................................................20

*Gen. Tel. Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982) .......................................................................................22

*Hefler v. Wells Fargo & Co.*,
No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292 (N.D. Cal. Sep. 4, 2018) ........................................................................................17

*In re Ins. Brokerage Antitrust Litig.*,
297 F.R.D. 136 (D.N.J. 2013)...........................................................16

*Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
No. 03- CV-4372 (DMC), 2009 WL 4730185 (D.N.J. 2009)...........................16

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ...............................................12

*Milliron v. T-Mobile USA, Inc.*,
No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009)...............................16

*Missouri v. Jenkins*,
491 U.S. 274 (1989)...........................................................................16

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010) ..............................................................20

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) ................................................................8

*In re Ocean Power Techs., Inc.*,
No. 3:14-CV-3799, 2016 U.S. Dist. LEXIS 158222 (D.N.J. Nov. 15, 2016)...19

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997)........................................................11

*Riedel v. Acqua Ancien Bath New York LLC*,
2016 WL 3144375 (S.D.N.Y May 19, 2016) ....................................11

*In re Schering-Plough Corp. ENHANCE ERISA Litig.*,
No. 08-1432 (DMC) (JAD), 2012 WL 1964451 (D.N.J. May 31, 2012) .........16

*In re Schering-Plough Corp. Sec. Litig.*,
No. 01 Civ. 0829, 2009 WL 5218066 (D.N.J. Dec. 31, 2009)................... 13, 26

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ..............................................................19

iv

*In re Veeco Instruments Inc. Sec. Litig.*,
 No. 05 MDL 0165, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)....................18

*In re ViroPharma Inc. Sec. Litig.*,
 No. 12-2714, 2016 U.S. Dist. LEXIS 8626 (E.D. Pa. Jan. 25, 2016) ..............24

*In re WorldCom, Inc. Sec. Litig.*,
 388 F. Supp. 2d 319 (S.D.N.Y. 2005) ...............................................................18

**Statutes**

Fed. R. Civ. P. 23(a)(2) ...........................................................................................21

Fed. R. Civ. P. 23(b)(3)(D) .....................................................................................24

Fed. R. Civ. P. 23(e)...........................................................................................8, 20

**Other Authorities**

2 W. Rubenstein, Newberg on Class Actions (5th ed. 2012) ..................................21

Manual for Complex Litigation, Third (West ed. 1995) .................................. 10, 25

# I.    INTRODUCTION

Plaintiffs seek preliminary approval from the Court to settle this class action securities fraud lawsuit.[1] The Settlement, embodied in the Stipulation filed contemporaneously herewith, provides a cash recovery of $3,000,000 to the Class which is a favorable outcome in an otherwise unfavorable situation. Simply put, although Plaintiffs faced a number of significant obstacles in terms of their theory of liability and Humanigen's current financial state, Plaintiffs were still able to secure a settlement that restores a considerable amount of compensation back to the Class. But for this Settlement, the Class would not be receiving anything to offset the damages it sustained.

Pursuant to Federal Rule of Civil Procedure 23, approval of settlements in class action lawsuits is completed in two stages. First, the Court must assess whether the settlement appears likely to warrant final approval and, if so, order that notice be provided to potential class members. Second, having allowed notice to proceed, the Court must hold a hearing to evaluate any objections and decide whether the settlement should be confirmed. As explained herein, Plaintiffs meet the requirements for obtaining preliminary approval and, therefore, should be permitted

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement dated September 22, 2023 (the "Stipulation") (Dkt. No. 44).

to provide notice of the Settlement to the Class.

The proposed settlement easily meets the criteria for approval at this stage of the process, largely because the history of the litigation, the risks involved, and the recovery at hand weigh heavily in favor of the conclusion that the Settlement is fair, reasonable, and adequate. Plaintiffs conducted an extensive investigation into Humanigen's operations and, in particular, the clinical development of its lead drug candidate, lenzilumab. Based on the results of their research, Plaintiffs prepared and filed a consolidated complaint with detailed factual allegations supporting their claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Defendants disputed the viability of Plaintiffs' allegations and, following a full-day mediation session and subsequent negotiations conducted by Mr. Jed Melnick, Esq., the parties were able to clearly evaluate the strengths and weaknesses of their claims and defenses. Mr. Melnick ultimately issued a "mediator's recommendation" to settle the action for $3,000,000, which the parties accepted and then memorialized in the Stipulation.

The cash payment of $3,000,000 accounts for the significant legal and factual obstacles that Plaintiffs will face if the case continues. For example, Defendants were likely to challenge the allegation that any of their statements were false or materially misleading. Key to this defense is the reality that the National Institute of Health ("NIH") allowed lenziliumab to be tested as a COVID-19 treatment in its

2

ACTIV-5/BET-B trial. Thus, Defendants would have argued, and Plaintiffs would have needed to explain to a jury, why a prestigious institution like the NIH would have allowed patients to be treated with lenzilumab in the first place if the drug were truly dangerous to patients with COVID-19, as Plaintiffs alleged. Separate and apart from this issue, but equally if not more important, Humanigen's financial health is dire. According to its most recent filings with the SEC, Humanigen anticipates filing for bankruptcy in the near future. Thus, the proposed Settlement truly is the only avenue for damaged shareholders to receive any compensation for their losses.

Plaintiffs have carefully considered this Settlement and believe it to be in the best interests of the Class. Accordingly, they respectfully request that the Court grant preliminary approval so that the parties can proceed with providing notice and bringing this matter to a close, as discussed below in further detail.

## II.    SUMMARY OF LITIGATION AND SETTLEMENT NEGOTIATIONS

### A.    **Plaintiffs' Claims and Allegations**

This action arises from alleged misrepresentations contained in Humanigen's public filings, including press releases, conference call transcripts, and SEC filings. Plaintiffs alleged that Defendants violated the Securities Exchange Act of 1934 and SEC Rule 10b-5.

In particular, Plaintiffs alleged that Humanigen and its executive officers

misrepresented the appropriateness of using lenzilumab as a treatment for COVID-19 and concealed material adverse information concerning the drawbacks of using an anti-GM-CSF (like lenzilumab) to treat patients with lung dysfunction. Plaintiffs alleged in detail how and why GM-CSF is necessary for healthy and normal lung function. Thus, as alleged, by inhibiting or blocking GM-CSF, a drug like lenzilumab in fact posted acute risks and dangers to patients with pre-existing lung dysfunction, including patients with COVID-19.

Plaintiffs alleged that they sustained damages when the truth concerning lenzilumab became publicly known by, first, the U.S. Food and Drug Administration denying Humanigen's request for Emergency Use Authorization for lenzilumab and then, second, the revelation that lenzilumab produced negative trial results in the NIH's ACTIV-5/BET-B clinical trial. Defendants have vigorously denied and continue to deny each and all of the claims asserted against them and deny that Plaintiffs or any other members of the Class were harmed or suffered any damages as a result of the conduct alleged in the action.

**B.    Procedural History**

Plaintiffs commenced this action with the filing of the initial complaints. *See* Declaration of Adam M. Apton and Brenda Szydlo (the "Joint Decl."), ¶¶5-6. These complaints were preceded by preliminary investigations conducted by Lead Counsel at Levi & Korsinsky, LLP and Pomerantz LLP. *Id*. at ¶4. Following the appointment

4

of lead plaintiffs, investigation continued and ultimately culminated in the filing of the Amended Complaint. *Id*. at ¶10. Importantly, Plaintiffs' investigation included an extensive review of Humanigen's public statements and relevant analyst reports as well as a review of public filings with the FDA and consultations with experts on issues pertaining to market efficiency, loss causation, and damages. *Id*. at ¶¶11-14.

Plaintiffs filed the Amended Complaint on March 27, 2023. *Id*. at ¶12. In pertinent part, the Amended Complaint alleged that Defendants misrepresented the appropriateness of using lenzilumab as a treatment for COVID-19 and concealed material adverse information concerning the drawbacks of using an anti-GM-CSF (like lenzilumab) to treat patients with lung dysfunction. *Id*. at ¶15. The Amended Complaint alleged that Defendants failed to disclose the risks of using lenzilumab to treat COVID-19 patients while at the same time claiming that the drug was viable based on unpublished foreign research. *Id*. at ¶¶15, 27.

Following the filing of the Amended Complaint, Plaintiffs and Defendants scheduled a mediation with Jed Melnick, Esq. *Id*. at ¶16. The parties prepared thorough mediation statements and ultimately held the mediation on May 23, 2023. *Id*. at ¶¶17-18. The mediation was unsuccessful initially but, following subsequent negotiations by and through Mr. Melnick, the parties ultimately agreed to a "mediator's recommendation" to settle the lawsuit for $3,000,000 and executed a term sheet tentatively agreeing to the Settlement. *Id*. at ¶¶21-22.

## III.    THE PROPOSED TERMS OF SETTLEMENT

### A.    <u>The Class Definition</u>

The Settlement Class is defined as all Persons who purchased or otherwise acquired Humanigen securities during the Class Period. Excluded from the Settlement Class are: (i) Defendants; (ii) the officers, directors, and affiliates of Humanigen, at all relevant times; (iii) Humanigen's employee retirement or benefit plan(s) and their participants or beneficiaries to the extent they purchased or acquired Humanigen securities through any such plan(s); (iv) any entity in which Defendants have or had controlling interest; (v) Immediate Family members of any excluded person; and (vi) the legal representatives, heirs, successors, or assigns of any excluded person or entity. Stipulation, ¶1.29.

### B.    <u>Monetary Consideration and Plan of Allocation</u>

Plaintiffs are securing a total benefit for the Class of $3,000,000 to be paid by or on behalf of Defendants. The Plan of Allocation is based on the Amended Complaint. It provides compensation to those Settlement Class Members that sustained losses in response to the decline in the price of Humanigen's securities that occurred on September 8, 2021 and July 12, 2022. All Class Members will receive the same distribution depending on the quantity and cost basis of the Humanigen securities held on these days. The Plan of Allocation will be applied uniformly to all Class Members that submit valid and timely claims. The Plan of Allocation is

described in full in the Notice. *See* Joint Decl. at ¶¶34-36; *see also* Stipulation at Exhibit A-1.

### C.    <u>Release Provisions</u>

In exchange for the monetary consideration described above, Plaintiffs are releasing Defendants and their Related Parties from all claims arising from their purchase of Humanigen securities. Specifically, the Stipulation defines the term "Released Plaintiffs' Claims" as follows:

> "Released Plaintiffs' Claims" means any and all claims and causes of action of every nature and description, whether known or Unknown Claims, asserted or unasserted, whether arising under federal, state, statutory, regulatory, common or foreign law  concerning, based on, arising out of, or in connection with : (i) the purchase or other acquisition or sale of Humanigen securities during the Class Period; and (ii) the allegations, transactions, acts, facts, matters, occurrences, disclosures, statements, filings, representations, omissions, or events that were or could have been alleged or asserted in the Litigation; and (iii) disclosures, public filings, registration statements, press releases, presentations, or other statements made by Defendants during the Class Period.

Stipulation at ¶1.25.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

### A.    <u>The Settlement Approval Process</u>

Rule 23(e) provides a two-step process for approving class action settlements. First, if a proposed settlement would bind class members, then the court should evaluate the proposed settlement to determine whether giving notice to class

members would be justified. FED. R. CIV. P. 23(e)(1). Second, once notice is given, the court should only approve the proposed settlement upon a finding that it is fair, reasonable, and adequate. FED. R. CIV. P. 23(e)(2).

Under Rule 23(e)(1), notice to class members should be directed if, based upon the parties' showing, it appears likely that the court will be able to approve the settlement under Rule 23(e)(2) and certify the class for the purposes of settlement. In the context of determining whether approval is likely to occur, Rule 23(e)(2) instructs the court to consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." "An initial 'presumption of fairness for the settlement is established if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n. 18 (3d Cir. 2001); *see also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016).

**B.**     **The Proposed Settlement Meets the Requirements for Preliminary Approval under Rule 23(e)(2).**

**1.**     **Plaintiffs and Lead Counsel Adequately Represented the Class.**

This was a difficult case to litigate. Factually, Plaintiffs were faced with the immediate issue of obtaining evidence to substantiate their theory of liability without the benefit of discovery and the reality that any favorable documents were non-public and under the control of Defendants. To overcome this obstacle, Plaintiffs engaged in a comprehensive investigation to support their claims against Defendants. Joint Decl. at ¶¶11-14. These efforts ultimately resulted in the filing of the Amended Complaint that led to the scheduling of the mediation with Jed Melnick, Esq. *Id.* at ¶¶16-18.

The mediation process that ensued was lengthy and involved in-depth discussion and analysis of the parties' respective claims and defenses. *Id.* at ¶17. It was not immediately successful. Instead, Defendants proceeded with the filing of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The motion argued that Plaintiffs failed to adequately allege falsity and scienter. *Id.* at ¶19. With the benefit of seeing Defendants' arguments and understanding that Humanigen's financial strength was deteriorating, Plaintiffs resumed settlement negotiations with Mr. Melnick. *Id.* at ¶20. These negotiations ultimately ended with Mr. Melnick's

recommendation to settle the case for $3,000,000. *Id*. at ¶21.

Plaintiffs' efforts during the investigation and pleading stage followed by their negotiations during the mediation demonstrate that Plaintiffs and Lead Counsel adequately represented the Class. This factor weighs in favor of granting preliminary approval and directing notice under Rule 23(e).

### 2.    The Proposal Was Negotiated at Arm's Length.

The parties reached the proposed Settlement through mediation and only by way of a "mediator's recommendation." These negotiations only took place and were finalized after Lead Counsel conducted a substantial review of the file and were able to present Plaintiffs' arguments in support of their theory of liability and damages. The history and context of these negotiations strongly supports the conclusion that the parties negotiated at arm's length. *See also* Manual for Complex Litigation, Third, § 30.42 (West 1995)) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."). This fact further supports the motion for preliminary approval and directing notice to the Class. *See*, *e.g.*, *Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ("courts in this Circuit traditionally 'attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.'"); *In re Prudential Ins. Co. of Am.*

10

*Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997) *aff'd*, 148 F.3d 283 (3d Cir. 1998) ("[T]he Court credits the judgment of Plaintiffs' Counsel, all of whom are active, respected, and accomplished in this type of litigation."); *see also Riedel v. Acqua Ancien Bath New York LLC*, 14 Civ. 7238 (JCF), 2016 WL 3144375, at *7 (S.D.N.Y May 19, 2016) (document exchange reflects ability of counsel to evaluate strengths and weaknesses of claims).

### 3.    The Relief Provided for the Class Is Adequate.

Rule 23(e) identifies four factors for the court to consider when determining whether the relief provided under a proposed settlement is adequate: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). The proposed Settlement meets these criteria and is therefore adequate.

#### (a)    The costs, risks, and delay of trial and appeal.

A settlement is favored where "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions and ultimately a complicated, lengthy trial." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004). Courts have noted that "[s]ecurities fraud class actions are notably complex, lengthy, and expensive cases

11

to litigate." *In re Par Pharm. Sec. Litig.*, No. 06 Civ 3226, 2013 WL 3930091, at *4 (D.N.J. July 29, 2013). As discussed below, Plaintiffs would have had to overcome numerous hurdles to achieve a litigated verdict against Defendants. Even assuming that the claims survived motions to dismiss and summary judgment, a jury trial would have required a substantial amount of factual and expert testimony. *See*, *e.g.*, *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants."). Whatever the outcome at trial, it was likely that an appeal would have been taken. All of the foregoing would have posed considerable expense to the parties, and would have delayed any potential recovery, if one was even achieved.

Plaintiffs secured a cash payment of $3,000,000. While this result is below the median recovery for similar cases (*see* Joint Decl. at ¶26), the Settlement is nonetheless fair, reasonable, and adequate given the obstacles Plaintiffs faced (*id*. at ¶27). These risks included the following:

- Plaintiffs' potential inability to prove that Defendants' statements were false and/or materially misleading, given that additional published research may have ultimately supported Defendants' decision to repurpose the drug for use in treating COVID-19. *Id*. at ¶27.

- Plaintiffs would have been forced to explain at some point in the litigation why the NIH approved the testing of lenzilumab in its ACTIV-5/BET-B trial. *Id*. at ¶28.

- Although motive is not required to establish liability, Plaintiffs decided to rely on insider sales by a group of entities affiliated with Humanigen's Chief Scientific Officer Dale Chappell. However, only a portion of the proceeds from these sales may have actually been received by Chappell, potentially leaving Plaintiffs without a discrete individual financial benefit to point to. *Id*. at ¶29.

- Plaintiffs faced additional risks concerning class certification and, in particular, their ability to rely on the "fraud-on-the-market" presumption of reliance for the period before Humanigen traded on the NASDAQ. *Id*. at ¶30.

- Humanigen's present financial position is dire, leaving Plaintiffs with potential collectability problems if the Settlement is not approved. *Id*. at ¶31.

These risks are, of course, in addition to the general risks inherent in all litigation, such as appeals or the unpredictability of juries. Thus, Plaintiffs believe that this is a favorable outcome for the class as it secures an immediate benefit in light of the expected difficulties in proving liability based on the discovery reviewed to date. The "fact that [defendants] could afford to pay more does not mean that [they are] obligated to pay any more than what the [] class members are entitled to under the theories of liability that existed at the time the settlement was reached." *Warfarin*, 391 F.3d at 538; see *also In re Schering-Plough Corp. Sec. Litig.*, No. 01 Civ. 0829, 2009 WL 5218066, at *5 (D.N.J. Dec. 31, 2009) ("pushing for more in the face of risks and delay would not be in the interests of the class"). Given the real and

13

substantial risk that Plaintiffs would not prevail on the merits, the recovery at bar is fair and reasonable to the Class. *See Alves,* 2012 WL 6043272, at *21 (finding settlement approval was warranted as the recovery provides immediate benefits and "continued litigation involves considerable risk that the Plaintiffs would lose the merits of the case").

> (b) The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.

Plaintiffs retained A.B. Data, Ltd. ("A.B. Data") to serve as the Claims Administrator. A.B. Data has been in the claims administration business for forty years. *See* Declaration of Eric Schachter dated September 21, 2023 ("Schachter Decl."), Exhibit A. In total, it has been involved in a number of significant settlements responsible for disbursing millions of dollars to shareholder claimants. *Id.* at ¶3.

A.B. Data distributes funds in accordance with the following process. Notice is provided to potential class member by mailing notice to a company's shareholders of record, including recipients consisting of brokers and various investment advisors as a standard operating procedure. *Id.* at ¶4. These recipients manage accounts on behalf of thousands of retail investors who then forward the notice to potential class members. *Id.* at ¶¶5-6. A.B. Data also provides notice via an electronic press release

through a service. *Id*. at ¶8.

Class members then respond to the notice by submitting completed claim forms. The Claims Administrator receives these claims forms either by mail or electronically and, once the claims deadline passes, begins to vet each claim. The Claims Administrator reviews the claims to make sure they are authorized, *i.e.*, validly submitted in accordance with the class definition, completed correctly, properly signed, and include all necessary supporting documentation. Claimants who submit deficient claims are then notified and given an opportunity to cure the deficiency. *Id*. at ¶¶9-11. Once the claims have been vetted, the Claims Administrator will calculate the *pro rata* distribution from the settlement fund and distribute the funds via check after court approval. Payees are usually given between 90 and 180 days to negotiate the checks. Payees who do not negotiate their checks in that period of time are given an additional opportunity to receive their distribution, either in the form of a new check or by wire if feasible. *Id*. at ¶13.

A.B. Data (as well as almost all securities claims administrators) routinely follows the aforementioned process. *Id*. at ¶14. A.B. Data will be able to administer the settlement fund in this case without issue.

        (c)    <u>The proposed award of attorney's fees, including timing of payment.</u>

Lead Counsel intends to seek an award of attorneys' fees equal to or less than

one-third of the Settlement Fund. The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 903-04 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). Accordingly, the requested fee will be equal to the percentage fee awards granted in many other comparable securities class actions within the Third Circuit.[2]

Lead Counsel respectfully submits that at this stage of the approval proceedings, the fact that the intended fee request will be in line with Third Circuit precedent supports Plaintiffs' request for preliminary approval. When Lead Counsel

---

[2] *See, e.g., See In re Ins. Brokerage Antitrust Litig.,* 297 F.R.D. 136, 155 (D.N.J. 2013) ("Courts within the Third Circuit often award fees of 25% to 33% of the recovery."); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.,* No. 03- CV-4372 (DMC), 2009 WL 4730185, at *8 (D.N.J. 2009) (same); *Milliron v. T-Mobile USA, Inc*., No. 08-4149, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) (awarding 33% of settlement); *In re Schering-Plough Corp. ENHANCE ERISA Litig.*, No. 08-1432 (DMC) (JAD), 2012 WL 1964451, at *6-7 (D.N.J. May 31, 2012) (awarding 33.3% of settlement); *Ins. Brokerage Antitrust Litig.,* 297 F.R.D. at 154-56 (awarding 33% of settlement).

formally moves for an award of attorneys' fees, it will submit additional evidence in support of its request.

> (d)    Any agreement required to be identified under Rule 23(e)(3).

Aside from the Stipulation, the parties have entered into a Supplemental Agreement that, as described in the Stipulation, provides Defendants with the right to terminate the Settlement if a certain number of damaged shares exceeds a threshold. *See* Stipulation at ¶7.3. The Supplemental Agreement is "confidential" as is customarily the case. *See Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 150292, at *23 (N.D. Cal. Sep. 4, 2018) (allowing confidential filing of supplemental agreement in order to "'avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement.'").

### 4.    The Settlement Treats Class Members Equitably.

The Settlement does, in fact, treat Class Members equitably. This is because the proposed Plan of Allocation treats all claimants uniformly. "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted). As described in the Notice (Stipulation, Exhibit A-1), the Plan of Allocation has a rational basis and was

formulated by Lead Counsel ensuring its fairness and reliability. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 0165, 2007 WL 4115809, at *13 (S.D.N.Y. Nov. 7, 2007); *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007) (granting final approval of settlement as "The Plan of Allocation is rational and consistent with Lead Plaintiffs' theory of the case."). Under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Amount, with that share to be determined by the ratio that the claimant's allowed claim bears to the total allowed claims of all claimants. *See* Joint Decl. at ¶¶34-36. The Plan of Allocation is based upon the Amended Complaint's premise that Settlement Class Members sustained damages by purchasing Humanigen securities at artificially inflated prices and seeks to compensate them in accordance with the devaluation that occurred when the alleged corrective disclosures entered the public sphere. *Id*. The Plan of Allocation relies on the corrective disclosures listed in the Amended Complaint, which is common in securities class actions. *Datatec Sys.,* 2007 WL 4225828, at *5.

The Plan of Allocation is substantially similar to other plans of allocation that have been approved and successfully implemented in other securities class action settlements, including within this Circuit. *See In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 U.S. Dist. LEXIS 158222, at *73 (D.N.J. Nov. 15, 2016) ("pro rata distributions are consistently upheld, and there is no requirement that a plan of

allocation 'differentiat[e] within a class based on the strength or weakness of the theories of recovery'") (quoting *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 328 (3d Cir. 2011)); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares of [company] stock" as "even handed"). In assessing a proposed plan of allocation, the Court may give great weight to the opinion of informed counsel. *See, e.g.*, *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 175 (E.D.N.Y. 2012) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel. That is, 'as a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.'"). Accordingly, given Lead Counsel's opinion concerning the Plan of Allocation, this factor weighs in favor of granting preliminary approval.

## V.    PROVISIONAL CERTIFICATION OF THE SETTLEMENT UNDER RULE 23 IS APPROPRIATE

As instructed by Rule 23(e), notice to class members should be directed if it appears likely that the court will be able to certify the class for the purposes of settlement. FED. R. CIV. P. 23(e). Conditional certification of a class for settlement purposes is allowable under Rule 23. *In re Gen. Motors Corp. Pick-Up Truck Fuel*

*Tank Prod. Liab. Litig.*, 55 F.3d 768, 794 (3d Cir. 1995). Before a class may be certified, the following requirements of Rule 23(a) must be satisfied: (a) the class is so numerous that joinder of all class members is impracticable; (b) there are questions of law or fact common to the class; (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (d) the representative parties will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23. For the reasons stated below, certification would be appropriate and, therefore, the Court should proceed with authorizing notice.

### A.    The Class Members Are So Numerous that Joinder Is Impracticable.

Rule 23(a)(1) requires that a class action must be advanced on behalf of a number of individuals so large that the joinder of all members is impractical. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). "[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). While the precise number of Class Members is unknown, the number certainly exceeds any number considered practical for joinder. As alleged, Humanigen's common stock was actively traded on OTC and the NASDAQ markets. During the Class Period, Plaintiffs' damages expert estimated 63.6 million damaged shares. Indeed, courts routinely hold that Rule 23(a)'s numerosity requirement is satisfied under similar facts. *See In re DVI Inc. Sec. Litig.*,

249 F.R.D. 196, 200 (E.D. Pa. 2008*), aff'd sub nom. In re DVI, Inc. Sec. Litig.,* 639 F.3d 623 (3d Cir. 2011) (finding numerosity where stock traded on NYSE).

### B.    <u>Common Questions of Law or Fact Exist</u>

In order to maintain a class action, there must be "questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2) (emphasis added). Rule 23(a)(2) merely requires that a plaintiff demonstrate common questions of law or fact that are susceptible to class-wide proof. 2 W. Rubenstein, Newberg on Class Actions § 4:50, 196-97 (5th ed. 2012). Identicality of all facts and legal questions is not necessary – commonality will be demonstrated where the named plaintiff demonstrates just one common question. *Id*. (citations omitted).

This case presents numerous common questions of both law and fact for Settlement purposes, which include: (i) whether the federal securities laws were violated by Defendants' acts; (ii) whether Defendants made material misrepresentations and omissions concerning lenzilumab; (iii) whether Defendants acted with the requisite state of mind in misrepresenting or failing to disclose material facts; (iv) whether the corrective disclosures of the prior misrepresentations and omissions caused artificial inflation of the market price of Humanigen's securities, and if so, how much; and whether the Settlement Class Members have sustained damages and, if so, the appropriate measure thereof.

### C.    <u>Plaintiffs' Claims are Typical of Those of the Class</u>

Rule 23(a)(3) requires that the claims of the named plaintiff are typical of the class's claims. The heart of the inquiry is whether the representative's claims and the class claims are interrelated so that class treatment is economical. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982). Here, Plaintiffs' claims are similar to the claims of the other Settlement Class Members for Settlement purposes. Defendants' alleged course of conduct uniformly affected all Settlement Class Members, as they each allegedly suffered economic injury when the truth about the company's misstatements was revealed. Thus, the typicality requirement of Rule 23(a)(3) is met.

### D.    <u>Plaintiffs Are Adequate Representatives of the Class</u>

The purpose of the adequacy requirement is to "uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). The adequacy inquiry also tests the qualifications of counsel to represent a class. *See Viropharma*, 2016 WL 312108, at *7.

There are no apparent conflicts of interest between Plaintiffs and the absent Class Members for Settlement purposes. Indeed, Plaintiffs have been committed to the vigorous prosecution of this action from the outset and have reached a resolution that they believe is in the best interests of the Class. Plaintiffs have shown that they

are more than adequate representatives by, among other things, aiding with the development of the theory of liability laid out in the Amended Complaint and participating in the mediation process. *See* Declarations of Dr. Scott Greenbaum, Joshua Mailey, and Alejandro Pieroni (filed herewith).

### E.    The Requirements of Rule 23(b)(3) Are Also Satisfied

The class must satisfy the requirements of Rule 23(b)(1), (2), or (3). In this case, Plaintiffs and Defendants have agreed to request conditional certification under Rule 23(b)(3), "the customary vehicle for damage actions." *In re Community Bank of Northern Virginia*, 418 F.3d 277, 302 (3d Cir. 2005). Rule 23(b)(3) requires that Plaintiffs show that common questions of law and fact predominate over individual inquiries, and that resolution of the dispute via a class action is a superior method of adjudication. Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). This case meets these requirements.

#### 1.    Common Legal and Factual Question Predominate

"Predominance is a test readily met in certain cases alleging . . . securities fraud . . . ." *Amchem*, 521 U.S. at 625. In this securities action, Defendants' alleged liability arises from its conduct with respect to statements made about lenzilumab. Whether Defendants' publicly disseminated releases and statements during the Class

Period omitted and/or misrepresented material facts and Defendants' scienter predominate over any individual issue that theoretically might arise for Settlement purposes. *See Viropharma*, 2016 WL 312108, at *7 (finding common questions "dominate the Class, including whether Defendants' statements to the investing public during the Class Period caused the price of ViroPharma's securities during the Class Period to artificially inflate.").

  **2. A Class Action is the Superior Means to Adjudicate Plaintiffs' and Class Members' Claims**

  The second prong of Rule 23(b)(3) is essentially satisfied by the proposed Settlement itself. As explained in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no trial." 521 U.S. at 620 (citing FED. R. CIV. P. 23(b)(3)(D)). Thus, any manageability problems that may have existed here—and Plaintiffs know of none— are eliminated by the Settlement. *See In re ViroPharma Inc. Sec. Litig.*, No. 12-2714, 2016 U.S. Dist. LEXIS 8626, at *23 (E.D. Pa. Jan. 25, 2016) (finding class action superior as all class members were "complaining of the same behavior by Defendants" and "[t]he alternative would produce individual suits throughout the country, redundantly wasting judicial resources to litigate the same claims over and over).

## VI.   THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE CONSTITUTIONALLY SOUND AND APPROPRIATE

Preliminary approval of the proposed Settlement permits notice to be given to the Settlement Class Members of a hearing on final settlement approval, at which they and the settling parties may be heard with respect to final approval. *See Manual for Complex Litigation*, Third, § 23.14 (West ed. 1995). Here, the parties propose that notice be given by U.S. mail. *See* Stipulation at Exhibit A, ¶9. In addition, the Stipulation provides for publication of a summary notice, which will be published one time over a national business newswire. *See id*.

The proposed form of Notice (Exhibit A-1 to the Stipulation), provides the following details of the Stipulation to prospective Settlement Class Members in a fair, concise and neutral way: (1) the existence of and their rights with respect to the class action, including the requirement for timely opting out of the Class; and (2) the Settlement with Defendants and their rights with respect to the Settlement. The proposed form of Summary Notice (Exhibit A-3 to the Stipulation), provides essential information about the litigation and the Settlement, including an address for potential class members to write in order to obtain the full long form of notice. The proposed form of Postcard Notice (Exhibit A-4 to the Stipulation), provides information to Settlement Class Members in terms of where to obtain additional information about the Settlement and how to participate.

The means and forms of notice proposed here constitute valid and sufficient notice to the Class, the best notice practicable under the circumstances, and comply fully with the requirements of the Private Securities Litigation Reform Act of 1995, Rule 23 and due process. *See e.g.*, *Schering-Plough*, 2009 WL 5218066, at *1, 6 (finding that a settlement notice with a mailing to all class members who could be identified with reasonable effort and publication of a summary notice and over the *PR Newswire*, satisfied the requirements of Rule 23 and due process).

## VII.  PROPOSED SCHEDULE

Plaintiffs respectfully request the Court to schedule the dates set forth below and enter them in the [Proposed] Preliminary Approval Order, including:

| | |
|---|---|
| Last day to complete mailing of Postcard Notice (the "Notice Date"). | 14 days after entry of order granting preliminary approval. |
| Last day for filing and serving papers in support of final approval of the proposed Settlement and request for fees, reimbursement of expenses, and awards to Plaintiffs. | 42 days before Fairness Hearing (defined below). |
| Last day for Settlement Class Members to object to the proposed Settlement and request for fees, reimbursement of expenses, and awards to Plaintiffs. | At least 28 days before Fairness Hearing. |
| Last day for potential Settlement Class Members to request exclusion from the Class. | At least 28 days before Fairness Hearing. |
| Last day for filing and serving papers in response to objections to the proposed Settlement and request for fees, reimbursement of expenses, and awards to Plaintiffs. | At least 14 days before Fairness Hearing. |
| Fairness Hearing | Approximately 110 days after entry of order granting preliminary approval. |

## VIII.  CONCLUSION

The proposed Settlement is presumptively fair and presents no obvious deficiencies. Accordingly, the Court should grant preliminary approval of the proposed Settlement and enter an order substantially in the form of the accompanying [Proposed] Preliminary Approval Order.

Dated: September 22, 2023        **LEVI & KORSINSKY, LLP**

                                      s/ Adam M. Apton
                                      Adam M. Apton, Esq.
Devyn R. Glass
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
aapton@zlk.com
dglass@zlk.com

-and-

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Brenda Szydlo (*pro hac vice*)
Thomas H. Przybylowski
Dean P. Ferrogari (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
bszydlo@pomlaw.com
tprzybylowski@pomlaw.com
dferrogari@pomlaw.com

*Attorneys for Co-Lead Plaintiffs and
Co-Lead Counsel for the Class*

-and-

**SCHALL LAW FIRM**
Brian Schall
2049 Century Park East, Ste. 2460
Los Angeles, California 90067
Telephone: (310) 301-3335
Facsimile: (213) 519-5876
brian@schallfirm.com

*Additional Counsel to Lead Plaintiff
Joshua Mailey*

-and-

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel to Plaintiff Alejandro
Pieroni*