Adam M. Apton, Esq.
LEVI & KORSINSKY, LLP
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171

*Attorneys for Co-Lead Plaintiffs and*
*Co-Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IN RE HUMANIGEN, INC. SECURITIES LITIGATION | Case No. 2:22-cv-05258-WJM-AME<br><br>**DECLARATION OF ADAM M. APTON AND BRENDA SZYDLO IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

We, ADAM M. APTON and BRENDA SZYDLO, declare under penalty of

perjury pursuant to 28 U.S.C. § 1746 as follows:

1.      I, Adam M. Apton, am a partner at the law firm of Levi & Korsinsky,

LLP ("Levi & Korsinsky"), attorneys for Co-Lead Plaintiffs Dr. Scott Greenbaum

and Joshua Mailey, individually and on behalf of all other persons similarly

situated ("Plaintiffs"), and Co-Lead Counsel for the Class along with Pomerantz

LLP ("Pomerantz"). I am admitted to practice before this Court and have personal

1

knowledge of the various matters set forth herein based on my day-to-day participation in the prosecution and settlement of this Litigation. I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement.[1]

2.      I, Brenda Szydlo, am a partner at the law firm of Pomerantz LLP, attorneys for Plaintiffs and Co-Lead Counsel for the Class along with Levi & Korsinsky. I am admitted *pro hac vice* to practice before this Court and have personal knowledge of the various matters set forth herein based on my day-to-day participation in the prosecution and settlement of this Litigation. I submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement.

## BACKGROUND

3.      Levi & Korsinsky and Pomerantz are nationally recognized firms for their expertise in securities litigation. The firms actively follow corporate disclosures and initiate investigations under circumstances that, in their attorneys' opinions, suggest potential wrongdoing or violations of the federal securities laws. That is precisely what happened here. On July 13, 2022, Humanigen, Inc. disclosed that its lead drug candidate at the time, lenzilumab, had failed to return positive results from

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement dated September 22, 2023 (the "Stipulation") (Dkt. No. 44).

a pivotal clinical trial being administered by the National Institute of Health. This news came on the heels of an earlier disclosure from the company concerning the U.S. Food and Drug Administration's ("FDA") decision to reject Humanigen's request for Emergency Use Authorization for lenzilumab.

4.      The stream of negative news from Humanigen contradicted positive statements made by its executives at or around the same time. Consequently, Levi & Korsinsky and Pomerantz commenced investigations into potential violations of the federal securities laws. These investigations were preliminary in nature and spanned several weeks. They included a review of Humanigen's public statements, filings with the U.S. Securities and Exchange Commission, public filings made with the FDA, and analyst reports relating to the company's development and testing of lenzilumab. The investigation also included analysis of Humanigen's stock price at various points during relevant times both before and after public statements concerning lenzilumab's clinical trials.

5.      On August 26, 2022, Plaintiff Alejandro Pieroni and his attorneys at Pomerantz filed the initial lawsuit in the above-captioned matter against Humanigen. Dkt. No. 1. The Complaint asserted violations of the Securities Exchange Act of 1934 and SEC Rule 10b-5 occurring between May 28, 2021 and July 12, 2022. As such, the lawsuit was subject to the provisions of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), including the procedures regarding the

appointment of a lead plaintiff and the various pleading requirements and standards.

6. On October 17, 2022, Lead Plaintiff Dr. Greenbaum filed a subsequent class-action complaint with his attorneys at Levi & Korsinsky. Dr. Greenbaum's complaint concerned the same subject matter, class and allegations, but included Humanigen's Chief Scientific Officer Dale Chappell as an additional named defendant and asserted violations under the federal securities laws ranging from May 16, 2020 through July 12, 2022.

7. On October 25, 2022, in accordance with the PSLRA, Levi & Korsinsky and Pomerantz filed timely motions for lead plaintiff on behalf of their respective proposed lead plaintiff clients, Dr. Greenbaum and Mr. Mailey. Dkt. Nos. 7, 9.

8. On December 6, 2022, after briefing the motions but before the Court issued a decision, Dr. Greenbaum and Mr. Mailey submitted a proposed stipulation resolving the motions and requesting that they be appointed as "Co-Lead Plaintiffs" and their attorneys at Levi & Korsinsky and Pomerantz appointed as "Co-Lead Counsel." Dkt. No. 19.

9. On December 9, 2022, the Court granted Dr. Greenbaum and Mr. Mailey's stipulation. In addition, the Court consolidated Dr. Greenbaum's lawsuit with and into Mr. Pieroni's lawsuit for all purposes pursuant to Federal Rule of Civil Procedure 42(a). Dkt. No. 20.

10.     Levi & Korsinsky and Pomerantz continued their investigations following Dr. Greenbaum and Mr. Mailey's appointments as Co-Lead Plaintiffs. The purpose of this further investigation was to obtain additional factual support for the alleged securities fraud violations that would then be used to amend the initial complaint. Given the pleading standards for securities fraud violations, additional factual support for our allegations was critical in order to defeat an anticipated motion to dismiss.

11.     Our firms spent the next three months researching the alleged claims. As explained below, this entailed further review of Humanigen's public statements and relevant analyst reports. It also included review of public filings by other regulators, such as the FDA. We also consulted with an expert on issues pertaining to market efficiency, loss causation, and damages.

12.     On March 27, 2023, Plaintiffs filed their Amended Complaint for Violations of the Federal Securities Laws (the "Amended Complaint"). Dkt. No. 36. The Amended Complaint asserted the same Exchange Act and Rule 10b-5 violations that were assertedin the Complaint but included a significant amount of additional factual support. This additional factual support was the end result of an intensive investigation that had spanned the course of several months. It included the review and analysis of:

- public statements made by or on behalf of Humanigen prior to,

during and after the Class Period, *i.e.*, a period spanning from early-2020 to late-2022;

- Humanigen's quarterly reports, annual reports and press release filings with the SEC, which comprised thousands of pages of corporate financial and operational information;

- investment bank analyst reports providing discussions about Humanigen's clinical trial and drug develop operations;

- public statements made by regulators concerning Humanigen in particular as well as historical research and guidance concerning treatments for COVID-19; and

- various public communications by and between investors and Humanigen.

13. Levi & Korsinsky and Pomerantz, through third-party investigators, also conducted interviews with former employees of Humanigen to obtain information concerning the company's clinical development efforts bearing on whether the negative trial results were anticipated or the result of disagreements with guidance provided by the FDA.

14. The material obtained by Levi & Korsinsky and Pomerantz in the course of their investigation was expansive. It required many hours to digest, evaluate, and incorporate into the Amended Complaint. The product was a

comprehensive complaint that provided a complete factual analysis of all public information available at the time that supported claims of securities fraud. For the benefit of context, Levi & Korsinsky and Pomerantz's investigation yielded an Amended Complaint that was 103 pages long, almost four times longer than the Complaint initially filed on August 26, 2022.

15. In pertinent part, the Amended Complaint alleged that Humanigen and its executive officers misrepresented the appropriateness of using lenzilumab as a treatment for COVID-19 and concealed material adverse information concerning the drawbacks of using an anti-GM-CSF (like lenzilumab) to treat patients with lung dysfunction. The Amended Complaint explained in detail how and why GM-CSF or, as its formally known, "granulocyte-macrophage colony-stimulating factor" is necessary for healthy and normal lung function. Thus, as alleged, by inhibiting or blocking GM-CSF, a drug like lenzilumab in fact posted acute risks and dangers to patients with pre-existing lung dysfunction, including patients with COVID-19.

16. Following the filing of the Amended Complaint, Plaintiffs and Defendants scheduled a private mediation session and requested a modification of the case schedule in place at the time. The modification of the case schedule extended Defendants' time to respond to the Amended Complaint and provided the parties adequate time to schedule and participate in a private mediation session with Mr. Jed Melnick, Esq. On May 23, 2023, the Court granted the requested

modification. Dkt. No. 38.

17.    Mr. Melnick is a well-respected mediator with substantial experience in the field of securities litigation. Plaintiffs' counsel and defense counsel alike routinely use his services to mediate difficult cases. Mr. Melnick requires detailed briefing in advance of any mediation and this case was no exception. Plaintiffs and Defendants submitted detailed briefing in support of their respective positions. Plaintiffs submitted additional factual material to support their claims regarding the necessity of GM-CSF for healthy lung function and, in turn, the acute risks lenzilumab could present in patients with COVID-19.

18.    On May 23, 2023, Plaintiffs and Defendants participated in a full-day mediation session. The mediation session ended without a resolution.

19.    On July 7, 2023, Defendants, represented by the law firms of Polsinelli PC and Kleinberg Kaplan Wolff & Cohen PC, filed a motion to dismiss. Dkt. No. 40. Defendants argued in the motion that the Amended Complaint failed to meet the heavy pleading requirements under the PSLRA and, therefore, the case should be dismissed under Federal Rule of Civil Procedure 12(b)(6). In particular, Defendants argued that Plaintiffs failed to identify actionable false statements and plead sufficiently the element of scienter.

20.    On July 25, 2023, while Plaintiffs were preparing their response to Defendants' motion to dismiss, Humanigen filed a current report on Form 8-K with

the SEC. The report stated, in pertinent part, that Humanigen had failed to complete negotiations with a potential acquiror and had not been able to raise debt or equity financing in sufficient amounts to fund ongoing operations. The report also stated that Humanigen anticipated it would not be able to continue as a going concern and was therefore contemplating commencing a bankruptcy in the third quarter of 2023.

21.     On August 3, 2023, following further extensive settlement negotiations, Mr. Melnick issued a "mediator's recommendation" to settle the matter for $3,000,000. On August 8, 2023, Mr. Melnick confirmed that both parties agreed to his recommendation.

22.     On August 21, 2023, Plaintiffs and Defendants signed a confidential Settlement Term Sheet specifying the key terms of the proposed settlement. Shortly afterwards, on August 29, 2023, Plaintiffs notified the Court that the parties had reached a tentative settlement and requested that the case be administratively terminated for 60 days pursuant to District of New Jersey Local Rule 41.1(b). Dkt. No. 41. The Court granted the request, administratively terminating the deadlines for briefing on the pending motion to dismiss and allowing the parties to finalize and submit the proposed Settlement for approval. Dkt. No. 42.

### THE SETTLEMENT

23.     The Stipulation contains the full terms of the Settlement. Plaintiffs and Defendants have also negotiated a separate Supplemental Agreement that allows

Defendants to terminate the Settlementat their discretion if a certain portion of the Settlement Class requests to be excluded from the Settlement.

24.     The Settlement provides for a cash payment by or on behalf of Defendants of $3,000,000. In exchange for this payment, Plaintiffs will provide to Defendants a full release of all claims related to this action.

25.     The amount of the recovery supports the conclusion that the Settlement is fair, reasonable, and adequate. This is primarily because Plaintiffs' theory of liability presented unique risks that, even if overcome, were far from guaranteed to be successful in light of Humanigen's precarious financial situation.

26.     Cornerstone Research is a leading economics consulting firm. Every year it publishes a report on class action settlements in securities fraud lawsuits. Most recently, in its report titled *Securities Class Action Settlements—2022 Review and Analysis*, Cornerstone Research reported that the median settlement as a percentage of total class-wide damages in securities fraud cases with damages ranging from $500 million to $999 million in 2022 was 1.7%. Plaintiffs' class-wide damages in this case was approximately $514.9 million. Thus, the recovery here equals approximately 0.5% of total recoverable damages, which falls in line with the range of reasonableness in class action settlements of this nature, which by definition always include estimated percentages greater and lesser than some generically imputed "median." A true and accurate copy of the Cornerstone Research report is

attached hereto as Exhibit A.

27.    The amount of the monetary recovery supports granting approval of the Settlement when considering the liability risks faced by Plaintiffs. These risks include Plaintiffs' potential inability to prove that Defendants' statements were false and/or materially misleading. While academic literature supported the conclusion that GM-CSF was necessary for healthy lung function, there was a growing area of research suggesting that over-production of GM-CSF exacerbated lung dysfunction in certain patients. Thus, although Defendants initially premised their application of lenzilumab to COVID-19 patients on unpublished foreign research papers, additional published research may have ultimately supported their decision to repurpose the drug for use in treating COVID-19. This additional research could have been persuasive to a jury and especially harmful to Plaintiffs' theory of liability.

28.    In addition, Plaintiffs would have been forced to explain at some point in the litigation why the National Institute of Health approved the testing of lenzilumab in its ACTIV-5/BET-B trial. The fact that the National Institute of Health deemed it appropriate to treat patients with lenzilumab (even if only in the clinical trial setting) would have weighed heavily against Plaintiffs theory of liability at trial. Defendants would have relied on this when arguing that Plaintiffs' interpretation of the academic literature was incorrect.

11

29. Plaintiffs also faced potential challenges in terms of proving scienter. Although motive is not required to establish liability, Plaintiffs decided to rely on significant insider sales by a group of entities affiliated with Humanigen's Chief Scientific Officer Dale Chappell. These entities, referred to in the Amended Complaint as the Black Horse Entities, were at one time Humanigen's largest shareholder and continually sold stock throughout the Class Period. These sales totaled approximately $68.7 million but only a portion of the proceeds were received by Mr. Chappell. Thus, without a sufficient individual financial incentive to commit fraud, Plaintiffs faced potential dismissal under the case law for failing to properly establish motive.

30. An additional risk faced by Plaintiffs related to their ability to certify a class for the entire alleged Class Period. At the start of the Class Period, Humanigen's stock was traded over-the-counter and was not followed by many analysts. Thus, Defendants likely would have argued that Humanigen's stock during this period was not trading in an "efficient market" and, therefore, Plaintiffs could not rely on the "fraud-on-the-market" presumption of reliance. Had Defendants made this argument, Plaintiffs were at risk of their Class Period being confined to only the period of time within which Humanigen traded on the NASDAQ (*i.e.*, after September 18, 2020).

31. Humanigen's present financial position raises additional obstacles for

12

Plaintiffs that further warrant approval of the Settlement. As mentioned previously, on July 25, 2023, Humanigen reported it was contemplating commencing a bankruptcy in the third quarter of 2023. Since then, Humanigen's financial situation has grown worse. On August 14, 2023, it reported that it was unable to timely file its quarterly report on Form 10-Q for the period ended June 30, 2023, and reiterated its plans to file for bankruptcy before the end of the quarter. As of March 31, 2023, the date of its last reported balance sheet, Humanigen had cash and cash equivalents of just over $3 million.

32. In addition to the risks discussed above, Plaintiffs faced a litany of routine obstacles if they continued with the litigation. For example, Defendants could have appealed Plaintiffs' class certification (assuming the Court would have granted it) or successfully excluded expert testimony at trial under *Daubert*, leaving Plaintiffs unable to establish liability or damages in front of a jury. Alternatively, even if Plaintiffs succeededon every issue at trial, Defendants could have appealed the final judgment. These uncertainties, as well as others, all stand in support of approving the Settlement.

## **PRELIMINARY APPROVAL**

33. If approved, Plaintiffs will proceed with the notice program described in the Stipulation. The proposed claims administrator, A.B. Data, Ltd. ("A.B. Data"), will mail copies of the Postcard Notice to all potential Class Members and post the

13

Notice online. A.B. Data will also publish the Summary Notice once over a national newswire service. In addition, A.B. Data will also create and maintain a website devoted to the administration of this action, which will contain the aforementioned documents and other relevant court filings, and field telephone calls from potential claimants during normal business hours. In connection with the foregoing, Plaintiff has filed herewith the Declaration of Eric Schachter on behalf of A.B. Data which provides further detail about the administration process.

34. The Notice contains the Plan of Allocation for this action. The Plan of Allocation compensates all Settlement Class Members in a uniform manner. Depending on the number of Humanigen shares held at particular points during the Class Period, Class Members will receive certain amounts of compensation. The compensation received corresponds to the decline in the price of Humanigen stock in response to announcements concerning lenzilumab clinical trial results.

35. Specifically, the Plan of Allocation accounts for the declines in the price of Humanigen stock that occurred on September 8, 2021 and July 12, 2022. As explained in the Amended Complaint, on each of these days the market reacted to negative news about Humanigen and lenzilumab. The first date, September 8, 2021, relates to the announcement that the FDA had rejected Humanigen's request for Emergency Use Authorization for lenzilumab. The second date, July 12, 2022, relates to Humanigen's disclosure that lenzilumab failed to show statistical

significance on the primary endpoint of the ACTIV-5/BET-B study being conducted by the National Institute of Health.

36.    The Plan of Allocation provides class members with a recoverable loss equal to the amount of the market decline on each of these days and for whichever day(s) the class member(s) held Humanigen stock or options. Each class member will then receive a distribution from the Settlement Fund equal to his or her pro rata share of the total recoverable losses from all class members. The full terms of the Plan of Allocation are contained in the Notice.

37.    The payment to Class Members will (if the Settlement is approved) return compensation to shareholders that have been damaged. In our opinion, this is a fair, reasonable, and adequate result for the Settlement Class and represents the best possible outcome shareholders could attain in this otherwise unfortunate situation. Plaintiffs also support the Settlement and believe that it should be approved.

38.    In exchange for our efforts, Lead Counsel intends to seek an award of attorneys' fees in an amount equal to or less than one-third of the Settlement Fund ($1,000,000). This amount is intended to compensate Lead Counsel for our attorneys' fees and the risk that Lead Counsel accepted when we initially accepted this case on a contingency basis. This percentage comports with Third Circuit precedent on this issue.

39.     Lead Counsel also intends to request reimbursement for our out-of-pocket expenses up to $75,000 which include court filing fees, legal research fees, expert fees and other customarily reimbursed expenses.

40.     When Lead Counsel files its motion for an award of attorneys' fees and reimbursement of expenses, the motion will be supported by supplemental information from Lead Counsel. This supplemental information will include time and expense information, including a description of the work performed by Lead Counsel, the hours expended by Lead Counsel, and the hourly rates typically billed by Lead Counsel. It will also include a detailed description of the expenses incurred during the course of the litigation.

41.     Attached hereto as Exhibit B is a true and accurate copy of the firm resume for Levi & Korsinsky, LLP.

42.     Attached hereto as Exhibit C is a true and accurate copy of the firm resume for Pomerantz LLP.

[Signatures on following page]

16

We declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of September 2023.


_____
Adam M. Apton


_____
Brenda Szydlo