Adam M. Apton
LEVI & KORSINSKY, LLP
33 Whitehall Street, 17th Floor
New York, New York 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: aapton@zlk.com

Brenda Szydlo (admitted *pro hac vice*)
POMERANTZ LLP
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: bszydlo@pomlaw.com

*Attorneys for Plaintiffs and
the Class*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| | Case No. 2:22-cv-05258-WJM-AME |
| IN RE HUMANIGEN, INC. SECURITIES LITIGATION | **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND COMPENSATORY AWARDS TO PLAINTIFFS** |

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................1

II.     ARGUMENT............................................................................................4

    A.     Lead Counsel Is Entitled to An Award of Attorneys' Fees ..................4

    B.     The Requested Attorneys' Fees Are Reasonable Under the
        Percentage-of-the-Fund Method ........................................................6

    C.     Other Factors Considered by the Courts in the Third Circuit Support
        That the Requested Fee is Fair and Reasonable................................10

        1.    The Size of the Common Fund Created and the Number of
             Persons Benefited Support Approval of the Fee Request.........11

        2.    The Absence of Objections to Date Supports Approval of the
             Fee Request ..............................................................................12

        3.    The Complexity and Duration of the Litigation Support
             Approval of the Fee Request.....................................................13

        4.    The Risk of Non-Payment Supports Approval of the Fee
             Request.....................................................................................15

        5.    The Time Devoted to This Case by Counsel Supports Approval
             of the Fee Request....................................................................17

        6.    The Requested Fee Is Within the Range of Fees Typically
             Awarded in Actions of This Nature .........................................19

        7.    The Lack of Any Government Investigation and the Fact that
             All Benefits of the Settlement Are Attributable to the Efforts of
             Lead Counsel Support Approval of the Fee Request................19

        8.    The Percentage Fee That Would Have Been Negotiated Had the
             Case Been Subject to a Private Contingent Fee Arrangement
             Supports Approval of the Fee Request .....................................20

        9.    The Skill and Efficiency of the Attorneys Involved Support the
             Fee Request..............................................................................21

    D.     Lead Counsel's Litigation Expenses Are Reasonable and Should Be
        Approved for Reimbursement.............................................................22

    E.     Plaintiffs Should Be Awarded Incentive Awards ..............................24

CONCLUSION ..............................................................................................26

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*Abrams v. Lightolier, Inc.*,
   50 F.3d 1204 (3d Cir. 1995) ..................................................................................23

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ...............................................................................17

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990)....................................................................................17

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)..................................................................................................5

*Blum v. Stenson*,
   465 U.S. 886 (1984)............................................................................................6, 20

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..................................................................................................4

*Bredbenner v. Liberty Travel, Inc.*,
   No. 09- 905 (MF), 2011 WL 1344745 (D.N.J. Apr. 8, 2011)............................24

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000) ...........................................................5, 7, 10, 19

*Hall v. AT & T Mobility LLC*,
   No. 07-5325, 2010 WL 4053547 (D.N.J. Oct. 13, 2010).............................21, 23

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)................................................................................................11

*In re AremisSoft Corp. Sec. Litig.*,
   210 F.R.D. 109 (D.N.J. 2002)..................................................................................9

*In re AT & T Corp., Sec. Litig.*,
   455 F.3d 160 (3d Cir. 2006) .......................................................................*passim*

*In re Cigna Corp. Sec. Litig.*,
   No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007).........................20, 25

ii

*In re Datatec Sys., Inc. Sec. Litig.*,
No. 04-CV-525, 2007 WL 4225828 (D.N.J. Nov. 28, 2007)..............................13

*In re Diet Drugs Prod. Liab. Litig.*,
582 F.3d 524 (3d Cir. 2009) ....................................................................5

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ....................................................................8

*In re Genta Sec. Litig.*,
No. 04-2123, 2008 WL 2229843 (D.N.J. May 28, 2008) ..................................13

*In re Humanigen, Inc.*,
No. 1:24-bk-10003, ECF No. 272 (Bankr. D. Del. May 16, 2024)....................22

*In re Ins. Brokerage Antitrust Litig.*,
297 F.R.D. 136 (D.N.J. 2013)..................................................................8

*In re Linerboard Antitrust Litig.*,
No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004),
*amended*, 2004 WL 1240775 (E.D. Pa. June 4, 2004) .......................................12

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
No. 08-CV-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010)............................15, 19

*In re Ocean Power Techs., Inc. Sec. Litig.*,
No. 3:14-CV-3799, 2016 WL 6778218 (D.N.J. Nov. 15, 2016)....................6, 20

*In re Par Pharm. Sec. Litig.*,
No. 06-3226, 2013 WL 3930091 (D.N.J. July 29, 2013)...............................5, 26

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003)............................................................18

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ....................................................*passim*

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001)..................................................................23

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
No. 08-1432, 2012 WL 1964451 (D.N.J. May 31, 2012) ............................9, 15

iii

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
No. 08-397, 2013 WL 5505744 (D.N.J. Oct. 1, 2013) ............................24, 25, 26

*In re Suprema Specialties, Inc. Sec. Litig.*,
No. 02-168, 2008 WL 906254 (D.N.J. Mar. 31, 2008) .......................................16

*In re Vicuron Pharms., Inc. Sec. Litig.*,
512 F. Supp. 2d 279 (E.D. Pa. 2007)..................................................................20

*In re Viropharma Inc. Sec. Litig.*,
No. 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ........................8, 11, 23

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985),
*aff'd*, 798 F.2d 35 (2d Cir. 1986)........................................................................15

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..................................................................7

*Karcich v. Stuart (In re Ikon Off. Sols., Inc. Sec. Litig.)*,
194 F.R.D. 166 (E.D. Pa. 2000)................................................................8, 18, 20

*Krell v. Prudential Ins. Co. of Am.*
*(In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions)*,
148 F.3d 283 (3d Cir. 1998) .....................................................................9, 10, 19

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
No. 03- CV-4372, 2009 WL 4730185 (D.N.J. Dec. 4, 2009) ........................8, 16

*Landy v. Amsterdam*,
815 F.2d 925 (3d Cir. 1987) ...............................................................................17

*Lewis v. Casnoff (In re Cendant Corp. Sec. Litig.)*,
404 F.3d 173 (3d Cir. 2005) .................................................................................7

*Li v. Aeterna Zentaris Inc.*,
No. 14-cv-07081, 2021 WL 2220565 (D.N.J. June 1, 2021) .............................26

*Missouri v. Jenkins ex rel. Agyei*,
491 U.S. 274 (1989)..........................................................................................6, 18

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ..........................................................................17

iv

*Schuler v. Meds. Co.*,
   No. CV 14-1149, 2016 WL 3457218 (D.N.J. June 24, 2016)...............................4

*Steele v. Welch (In re FAO Inc. Sec. Litig.)*,
   No. 03-942, 2005 WL 3801469 (E.D. Pa. May 20, 2005) ...................................8

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011) ..............................................................6, 7, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..........................................................................5

*Welch & Forbes, Inc. v. Cedant Corp.*
   *(In re Cendant Corp. PRIDES Litig.)*,
   243 F.3d 722 (3d Cir. 2001) ................................................................7

## Statutes

15 U.S.C. §77z-1.............................................................................24

15 U.S.C. §78u-4.........................................................................7, 25

## Other Authorities

Edward Flores & Svetlana Starykh,
   *Recent Trends In Securities Class Action Litigation: 2023 Full-*
   *Year Review*, NERA Econ. Consulting (Jan. 23, 2024),
   available at
   https://www.nera.com/content/dam/nera/publications/2024/PUB_2
   023_Full-Year_Sec_Trends_0123.pdf...................................................11

v

Co-Lead Plaintiffs Dr. Scott Greenbaum and Joshua Mailey, and Plaintiff Alejandro Pieroni (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs (the "Fee Motion").[1]

## I.    INTRODUCTION

Lead Counsel for Plaintiffs and the Settlement Class have successfully negotiated a Settlement in the amount of $3,000,000. The proposed Settlement represents a strong recovery for the Settlement Class considering the risks and costs attendant to further, protracted litigation and the fact that Humanigen Inc. ("Humanigen" or the "Company") recently filed for bankruptcy protection under Chapter 11 of the bankruptcy code. Accordingly, Lead Counsel requests an award of attorneys' fees in the amount of $750,000, *i.e.*, twenty-five percent of the Settlement Fund, plus interest.

As set forth in detail in the Declaration of Adam M. Apton and Brenda Szydlo in Support of Plaintiffs' Motion for Preliminary Approval of Settlement (the "Joint Declaration" or "Joint Decl.") (Dkt. No. 45-2), the Settlement was achieved through

---

[1] Unless otherwise stated or defined, all capitalized terms used herein have the meanings provided in the Stipulation of Settlement (the "Stipulation"), dated September 22, 2023 (Dkt. No. 44). All internal quotations and citations are omitted unless otherwise noted.

the skill, experience, and effective advocacy of Lead Counsel. In this Action, Lead Counsel: (i) conducted a comprehensive investigation which included interviews with former employees of Humanigen, detailed reviews of Humanigen's SEC filings, press releases, analyst reports, and other publicly available information; (ii) had consultations with experts on issues pertaining to the FDA and damages; (iii) researched the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (iv) prepared and filed the Complaint and the Amended Complaint; (v) engaged in arm's-length settlement negotiations, including a mediation session facilitated by a private mediator; and (vi) devoted the substantial time and resources needed to secure, prepare, and seek approval by the Court of the $3 million Settlement.

The parties have been litigating this Action for approximately two years. Throughout the Action, the stakes have been high, and the risks were substantial. The likelihood of succeeding, and then recovering, was highly uncertain. Lead Counsel nevertheless undertook this representation on a contingency basis, with no guarantee of success or recovery. Lead Counsel faced substantial risks including the Company's bankruptcy, establishing liability, defeating defenses, and ultimately proving the amount of damages. Plaintiffs and Lead Counsel succeeded, however, recovering $3 million for Settlement Class Members.

To achieve this result, Lead Counsel incurred substantial out-of-pocket expenses during the course of the litigation amounting to $76,521.44. The majority of these expenses were attributable to experts, investigator, and mediation fees incurred during the course of litigation. These fees were necessary and reasonable for the purposes of litigation. Accordingly, Plaintiffs and Lead Counsel seek an award for the reimbursement of litigation expenses in the amount of $75,000, plus interest.

Lead Counsel, on behalf of Plaintiffs, also seek compensatory awards to reimburse Plaintiffs for the time and expense they invested in this Action while representing the Class. In connection with Plaintiffs acting as class representatives in this Action, (i) Co-Lead Plaintiff Dr. Scott Greenbaum spent over 40 hours; (ii) Co-Lead Plaintiff Joshua Mailey spent over 45 hours; and (iii) Plaintiff Alejandro Pieroni spent over 160 hours, all for the benefit of the Settlement Class. At all times, Plaintiffs fulfilled their fiduciary duties with respect to serving and protecting the interests of the Class. Plaintiffs' involvement in the Action benefited Lead Counsel and the Class at large. Thus, Plaintiffs' request for compensatory awards totaling $22,500 (or $7,500 each) should be granted.

Finally, the fact that Notice has been disseminated to more than 78,500 potential Settlement Class Members, and such Notice informed the Class of the relief requested by way of this motion, further evidences the reasonableness of Plaintiffs'

requests. *See* Declaration of Ann Cavanaugh Regarding Settlement Class Notice and Report on Objections and Requests for Exclusion Received, dated July 26, 2024 (the "Cavanaugh Decl.") ¶10, attached to the Supp. Joint Decl. as Ex. 3 filed herewith.[2] Neither Lead Counsel nor the Claims Administrator has received any objections to any aspect of the Settlement. *Id.* ¶15. Additionally, the Claims Administrator has received only four requests for exclusion covering eight individual investors (*id.* ¶14), which strongly suggests that the Class is supportive of the Settlement and the relief requested herein.

For the reasons set forth below, Plaintiffs and Lead Counsel respectfully request that the Fee Motion be granted.

## II.   ARGUMENT

### A.   Lead Counsel Is Entitled to An Award of Attorneys' Fees

The Supreme Court and Circuit Courts across the country have long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Courts within the Third Circuit have consistently adhered to this rule. *See Schuler v.*

---

[2] "Supp. Joint Decl." or "Supplemental Joint Declaration" refers to the Supplemental Declaration of Adam M. Apton and Brenda Szydlo in Support of Plaintiffs' Motion for (1) Final Approval of Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs, dated July 30, 2024.

*Meds. Co.*, No. CV 14-1149, 2016 WL 3457218, at \*8 (D.N.J. June 24, 2016) ("Under the common fund doctrine, 'a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees.'") (quoting *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009)); *In re Par Pharm. Sec. Litig.*, No. 06-3226, 2013 WL 3930091, at \*9 (D.N.J. July 29, 2013).

Courts have emphasized that the award of attorneys' fees from a common fund serves to encourage skilled counsel to represent classes of persons who otherwise may not be able to retain counsel to represent them in complex and risky litigation. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (nothing that the goal of percentage fee awards is to "ensur[e] that competent counsel continue[s] to be willing to undertake risky, complex, and novel litigation"). Indeed, the Supreme Court has repeatedly recognized that private securities actions, such as the instant Action, are "an essential supplement to criminal prosecutions and civil enforcement actions," brought by the U.S. Securities and Exchange Commission ("SEC"). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide an "effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action").

**B.    The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method**

The Supreme Court has long recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *See Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 903 n.* (1984) (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."). In the Third Circuit, the percentage-of-recovery method is "generally favored" in cases involving a settlement that creates a common fund. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 330 (3d Cir. 2011) (favoring percentage of recovery method "because it allows courts to award fees from the [common] fund in a manner that rewards counsel for success and penalizes it for failure"); *In re AT & T Corp., Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) ("*AT&T*"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). The percentage-of-recovery method is almost universally preferred in common fund cases because it most closely aligns the interests of counsel and the class. *See Rite Aid*, 396 F.3d at 300; *In re Ocean Power Techs., Inc. Sec. Litig.*, No. 3:14-CV-3799, 2016 WL 6778218, at *24 (D.N.J. Nov. 15, 2016).

6

The Third Circuit has "several times reaffirmed that application of a percentage-of-recovery method is appropriate in common-fund cases." *Welch & Forbes, Inc. v. Cedant Corp. (In re Cendant Corp. PRIDES Litig.)*, 243 F.3d 722, 734 (3d Cir. 2001) (citing *Gunter*, 223 F.3d at 195 n.1). Although the Third Circuit recommends that the percentage award be "cross-check[ed]" against the lodestar method to ensure its reasonableness, (*Sullivan*, 667 F.3d at 330), "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *AT&T*, 455 F.3d at 164.

Additionally, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which governs this Action, specifies that "[t]otal attorneys' fees and expenses awarded . . . shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class," thus also supporting the use of the percentage-of-recovery method. 15 U.S.C. §78u-4(a)(6). Courts have concluded that, in using this language, Congress expressed a preference for the percentage method, rather than the lodestar method, in determining attorneys' fees in securities class actions. *See Lewis v. Casnoff (In re Cendant Corp. Sec. Litig.)*, 404 F.3d 173, 188 n.7 (3d Cir. 2005); *Rite Aid*, 396 F.3d at 300; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354-55 (S.D.N.Y. 2005).

Here, the requested fee is reasonable under the percentage-of-recovery method. Although there is no general rule, courts in the Third Circuit have observed

7

that fee awards generally range from 19% to 45% of the settlement fund. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995); *see also Karcich v. Stuart (In re Ikon Off. Sols., Inc. Sec. Litig.)*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent."). But "[c]ourts within the Third Circuit often award fees of 25% to 33% of the recovery." *See In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013); *see also La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03- CV-4372, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009).

A review of attorneys' fees awarded in class actions in the Third Circuit supports the reasonableness of Lead Counsel's requested fee. *See In re Viropharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *17-18 (E.D. Pa. Jan. 25, 2016) (awarding attorneys' fees of 30% on $8 million recovery); *Steele v. Welch (In re FAO Inc. Sec. Litig.)*, No. 03-942, 2005 WL 3801469, at *1-2 (E.D. Pa. May 20, 2005) (awarding attorneys' fees in two related cases of 30% and 33% on recovery of $2.25 million and $1.75 million, respectively); *Ins. Brokerage Antitrust Litig.*, 297 F.R.D. at 154-56 (awarding attorneys' fees of 33% on $10.5 million settlement).

The Third Circuit recommends that district courts use counsel's lodestar as a "cross check" to determine whether the fee that would be awarded under the percentage approach is reasonable, as well as to avoid a windfall to counsel. *See*

8

*Sullivan*, 667 F.3d at 330; *AT&T*, 455 F.3d at 164.[3] Here, Lead Counsel devoted 1,378.04 hours to the prosecution and resolution of this Action. *See* Supp. Joint Decl. ¶17. Lead Counsel's lodestar – which is derived by multiplying the hours spent on the litigation by each firm's current hourly rates for attorneys and paralegals – is $1,060,767. *Id.* Accordingly, whereas courts typically award "multipliers" to firms handling cases under contingency fee agreements to compensate them for the risk they assumed, no such multiplier is being requested here.[4]

Accordingly, the attorneys' fee requested here is reasonable and would not provide Lead Counsel with a windfall.

---

[3] Under the full "lodestar method," a court multiplies the number of hours each timekeeper spent on the case by the hourly rate, then adjusts that lodestar figure by applying a multiplier to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorneys' work. The multiplier is intended to "account for the contingent nature or risk involved in a particular case and the quality" of the work. *Rite Aid*, 396 F.3d at 305-06.

[4] Lodestar multipliers are often used in common fund cases. *See Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions)*, 148 F.3d 283, 341 (3d Cir. 1998); *see* also *AT&T*, 455 F.3d at 173 (approving a 1.28 multiplier and noting the Third Circuit's prior "approv[al] of a lodestar multiplier of 2.99 in . . . a case [that] was neither legally nor factually complex."); *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-1432, 2012 WL 1964451, at * 8 (D.N.J. May 31, 2012) ("*Schering-Plough I*") (awarding 1.6 multiplier); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (awarding 4.3 multiplier).

**C.      Other Factors Considered by the Courts in the Third Circuit Support That the Requested Fee is Fair and Reasonable**

The Third Circuit has set forth the following criteria for courts to consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter*, 223 F.3d at 195 n.1. The Third Circuit has also suggested three other factors that may be relevant to the Court's inquiry: (1) "the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations"; (2) "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement at the time counsel was retained"; and (3) "any innovative terms of settlement." *AT&T*, 455 F.3d at 165 (citing *Prudential*, 148 F. 3d at 338-40).

The fee award factors "need not be applied in a formulaic way because each case is different, and in certain cases, one factor may outweigh the rest." *AT&T*, 455 F.3d at 165 (citing *Rite Aid*, 396 F.3d at 301). Indeed, in cases involving large settlement awards, district courts may give some of the *Gunter* factors less weight and emphasize (1) the complexity and duration of the case and (2) awards in similar

cases. *Rite Aid*, 396 F.3d at 301. An analysis of relevant factors further confirms that the fee requested here is fair and reasonable and should be approved.

### 1.    The Size of the Common Fund Created and the Number of Persons Benefited Support Approval of the Fee Request

The result achieved is one of the primary factors to be considered in assessing the propriety of an attorneys' fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"); *Viropharma*, 2016 WL 312108, at *16.

Here, Lead Counsel secured a Settlement that provides for a substantial and certain payment of $3,000,000. The Settlement comports with historical settlement data in similarly sized cases. In 2023, the median settlement as a percentage of total class-wide damages in securities fraud cases with damages ranging from $400 million to $599 million was 1.6%, according to NERA Economic Consulting.[5] Class-wide damages in this case were approximately $514.9 million (Joint Decl. ¶26), making the $3 million recovery equal to approximately 0.58% of total recoverable damages.  Measured against this yardstick, the Settlement is a favorable recovery considering the procedural posture of the case, Defendants' arguments,

---

[5] Edward Flores & Svetlana Starykh, *Recent Trends In Securities Class Action Litigation: 2023 Full-Year Review*, NERA Econ. Consulting, at 25 (Jan. 23, 2024), available at https://www.nera.com/content/dam/nera/publications/2024/PUB_2023_Full-Year_Sec_Trends_0123.pdf.

11

Humanigen's precarious financial situation which led to the Company filing for bankruptcy on January 3, 2024 (*see* Dkt. No. 53), and the risk that continued litigation might result in a vastly smaller recovery or no recovery at all. *See* Joint Decl. ¶¶26-32.

The Settlement will also benefit a significant amount of Humanigen investors. To date, the Claims Administrator has mailed over 78,500 Postcard Notices to potential Settlement Class Members and their nominees. *See* Supp. Joint Decl. Ex. 3 (Cavanaugh Decl.) ¶10. Accordingly, the deadline for submitting Claim Forms was March 7, 2024, and a large number of Settlement Class Members can be expected to benefit from the Settlement Fund. *See In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *5 (E.D. Pa. June 2, 2004) (size of benefitted population "is best estimated by the number of entities that were sent the notice describing the [settlement]"), *amended*, 2004 WL 1240775 (E.D. Pa. June 4, 2004).

### 2.     The Absence of Objections to Date Supports Approval of the Fee Request

The Postcard Notice, which was sent to more than 78,500 potential Settlement Class Members and their nominees, and the Summary Notice which was disseminated over the *PR Newswire*, provided a summary of the terms of the Settlement and stated that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed one-third of the Settlement Fund (or $1,000,000). *See* Dkt. No. 44-5 (Postcard Notice); Supp. Joint Decl. Ex. 3 (Cavanaugh Decl.) ¶11.

12

The Postcard Notice and Notice also advised Settlement Class Members that they could object to the Settlement, the requested attorneys' fees and litigation expenses, and/or Plaintiffs' incentive awards, and explained the procedure for doing so. *See* Dkt. No. 44-5 (Postcard Notice); *see also* Dkt. No. 44-2 (Notice) at 21-22. The February 8, 2024 deadline for filing objections and exclusion requests has passed and, to date, no objections have been received and only four requests for exclusion covering eight individuals have been submitted. *See* Supp. Joint Decl. Ex. 3 (Cavanaugh Decl.) ¶¶14-15.

### 3.    The Complexity and Duration of the Litigation Support Approval of the Fee Request

Securities actions are regularly acknowledged to be particularly complex and expensive litigation, usually requiring expert testimony on multiple issues, including loss causation and damages. *See In re Genta Sec. Litig.*, No. 04-2123, 2008 WL 2229843, at *3 (D.N.J. May 28, 2008) ("This [securities fraud] action involves complex legal and factual issues, and pursuing them would be costly and expensive."); *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525, 2007 WL 4225828, at *3 (D.N.J. Nov. 28, 2007) ("[R]esolution of [accounting and damages issues] would likely require extensive and conceptually difficult expert economic analysis. . . . Trial on [scienter and loss causation] issues would [be] lengthy and costly to the parties.").

13

This Action alleged violations of the Securities Exchange Act of 1934 ("Exchange Act"), raising a panoply of difficult legal and factual issues that required creativity and sophisticated analysis. At all times, the litigation was hard fought by all parties, and Lead Counsel's investigation required careful review and analysis of voluminous public records. Plaintiffs believe that the case has merit, and that evidence exists to establish Defendants' liability. However, this is a case with a complex fact pattern. Plaintiffs recognize that Defendants have denied the allegations in the Amended Complaint and, in fact, moved to dismiss the Action in its entirety. *See* Dkt. No. 40. In view of these factors, Plaintiffs and the Settlement Class face the very real risk that they could recover far less than the Settlement Amount—or even nothing—without the Settlement. In all events, protracted and highly complex further litigation without a reasonably predictable outcome would ensue if this Action were not resolved at this time. Had this litigation continued, Plaintiffs, through Lead Counsel, would have faced a litany of routine obstacles, requiring a significant amount of additional time and expense. *See* Joint Decl. ¶32. For example, Defendants could have appealed Plaintiffs' class certification (assuming the Court would have granted it) or successfully excluded expert testimony at trial, leaving Plaintiffs unable to establish liability or damages in front of a jury. *Id.* These uncertainties, as well as others, all stand in support of approving the requested attorneys' fees and expenses.

14

Moreover, even if the jury returned a favorable verdict after trial, it is likely that any verdict would be the subject of numerous post-trial motions and a complex multi-year appellate process. *Id.* Indeed, in complex securities cases, even a victory at the trial stage does not guarantee a successful outcome. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747-48 (S.D.N.Y. 1985) ("Even a victory at trial is not a guarantee of ultimate success. . . . An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself."), *aff'd*, 798 F.2d 35 (2d Cir. 1986). The fact that Defendants could appeal a final judgment in favor of Plaintiffs supports approval of the Fee Motion. *See* Joint Decl. ¶32.

Considering the magnitude, expense, and complexity of this securities Action – especially when compared to the significant and certain recovery achieved by the Settlement – Lead Counsel's fee request is reasonable.

### 4. The Risk of Non-Payment Supports Approval of the Fee Request

Lead Counsel undertook this Action on an entirely contingent fee basis, assuming a substantial risk that the litigation would yield no or potentially little recovery and leave Lead Counsel uncompensated for their investment of time and expenses. Courts have consistently recognized this risk as an important factor favoring the award of attorneys' fees. *See Schering-Plough I*, 2012 WL 1964451, at *7 ("Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval."); *In re Merck & Co., Inc.*

15

*Vytorin ERISA Litig.*, No. 08-CV-285, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) (finding "[t]he risk of little to no recovery weighs in favor of an award of attorneys' fees" where counsel accepted the action on a contingent-fee basis); *Sealed Air*, 2009 WL 4730185, at *8 (similar); *In re Suprema Specialties, Inc. Sec. Litig.*, No. 02-168, 2008 WL 906254, at *11 (D.N.J. Mar. 31, 2008) (similar).

In undertaking this responsibility, Lead Counsel was obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, and that funds were available to compensate staff and to cover the considerable costs that a case such as this requires. With an average lag time of several years for cases of this type to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Lead Counsel received no compensation during the 2 years of litigation and advanced or incurred approximately $76,521.44 in expenses (which is more than Lead Counsel is requesting for reimbursement) in prosecuting this Action for the benefit of the Settlement Class.

The risk of no recovery in complex cases of this type is real. Indeed, even if Plaintiffs had prevailed at trial on both liability and damages, no judgment would have been secure until after the rulings on the inevitable post-judgment motions and appeals became final – a process that would likely take years. Lead Counsel know from experience that despite the most vigorous and skillful efforts, a firm's success

16

in contingent litigation is not assured, and there are many class actions in which plaintiffs' counsel expended tens of thousands of hours and millions in expenses and received nothing for their efforts.[6] Indeed, even judgments initially affirmed on appeal by an appellate panel do not assure recovery. *See Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after 11 years of litigation and following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims were dismissed by an *en banc* decision and plaintiffs recovered nothing).

Because the attorneys' fee in this matter was entirely contingent, the only certainty was that there would be no fee without a successful result, and such a result would be realized only after considerable effort. This strongly favors approval of the requested fee.

### 5. The Time Devoted to This Case by Counsel Supports Approval of the Fee Request

Lead Counsel devoted 1,378.04 hours to the prosecution and resolution of this Action. *See* Supp. Joint Decl. ¶17. Since the initiation of the Action, Lead Counsel has vigorously pursued the claims, conducting a thorough investigation relating to the claims, defenses, and underlying events that are the subject of this litigation. This

---

[6] For illustrative examples, *see Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversal of jury verdict of $81 million against accounting firm after a 19-day trial); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict following two decades of litigation).

17

process included reviewing and analyzing Humanigen's SEC filings, press releases, news articles, analyst reports and other publicly available information issued by or concerning the Company and Defendants. *See* Supp. Joint Decl. ¶5. Lead Counsel also (i) interviewed former Humanigen employees; (ii) had consultations with experts on issues pertaining to the FDA and damages; (iii) researched the applicable law with respect to the claims asserted in the Action and the potential defenses thereto; (iv) prepared and filed the Complaint and the Amended Complaint; (v) participated in thorough settlement negotiations, including a mediation session facilitated by a private mediator; and (vi) devoted the substantial time and resources needed to secure, prepare, and seek approval by the Court of the $3 million Settlement. *Id.*

As noted above, Lead Counsel expended 1,378.04 hours investigating, prosecuting, and resolving this Action, resulting in a "lodestar" amount of $1,060,767 at Lead Counsel's regular and current billing rates. *See* Supp. Joint Decl. ¶17.[7] Lead Counsel's efforts for the benefit of the Settlement Class will continue if the Court approves the Settlement. *Id.* ¶20. Indeed, Lead Counsel will continue to work through the settlement administration process, assisting Settlement Class

---

[7] Current rather than historical hourly rates were used, as permitted by the Supreme Court and other courts in this Circuit, to help compensate for inflation and the loss of use of funds. *See Jenkins*, 491 U.S. at 283-84; *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 517 n.10 (W.D. Pa. 2003); *Ikon*, 194 F.R.D. at 195.

Members, and the distribution process, without seeking any additional compensation. *Id.*

Thus, Lead Counsel respectfully submits that this *Gunter* factor weighs in favor of approving the requested attorneys' fees.

### 6.   The Requested Fee Is Within the Range of Fees Typically Awarded in Actions of This Nature

The requested fee of 25% of the Settlement Fund or $750,000, plus interest, is within the range of fees awarded in comparable cases when considered on a percentage of the fund basis. *In re Merck & Co., Inc.*, 2010 WL 547613, at *11 ("[R]eview of 289 settlements demonstrates average attorney's fees percentage of 31.71% with a median value that turns out to be one-third."). Accordingly, this factor strongly supports approval of the requested fee.

### 7.   The Lack of Any Government Investigation and the Fact that All Benefits of the Settlement Are Attributable to the Efforts of Lead Counsel Support Approval of the Fee Request

The Third Circuit has advised district courts to examine whether class counsel benefited from a governmental investigation or enforcement actions concerning the alleged wrongdoing, because this can indicate whether counsel should be given full credit for obtaining the value of the settlement fund for the class. *See Prudential*, 148 F.3d at 338. Here, there was no parallel government action, making the contingent risk even higher. This fact supports the reasonableness of the requested

19

fee award. *See AT&T*, 455 F.3d at 173; *In re Cigna Corp. Sec. Litig.*, No. 02-8088, 2007 WL 2071898, at \*6 (E.D. Pa. July 13, 2007); *In re Vicuron Pharms., Inc. Sec. Litig.*, 512 F. Supp. 2d 279, 287 (E.D. Pa. 2007). Accordingly, the entire value of the Settlement achieved is attributable to the efforts undertaken by Lead Counsel in this Action.

### 8. The Percentage Fee That Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement Supports Approval of the Fee Request

The Third Circuit has also suggested that the requested fee be compared to "the percentage fee that would have been negotiated had the case been subject to a private [non-class] contingent fee agreement." *AT&T*, 455 F.3d at 165. The requested fee is consistent with typical attorneys' fees in non-class cases. *See Ocean Power*, 2016 WL 6778218, at \*29. If this were an individual action, the customary contingent fee would likely range between 30 and 40 percent of the recovery. *See id.*; *see also Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery."); *Blum*, 465 U.S. at 903 n.\* (Brennan, J., concurring) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."). Lead Counsel's requested fee of 25% of Settlement Fund or $750,000, plus interest, is fully consistent with these private standards.

### 9.   The Skill and Efficiency of the Attorneys Involved Support the Fee Request

The skill and efficiency of counsel is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Hall v. AT & T Mobility LLC*, No. 07-5325, 2010 WL 4053547, at *19 (D.N.J. Oct. 13, 2010).

It required considerable skill to achieve the proposed Settlement for the benefit of the Settlement Class. Lead Counsel was required to contend with difficult issues of falsity, materiality, scienter, damages and loss causation. Additionally, Humanigen's bankruptcy also posed significant obstacles to Lead Counsel and the Class. *See* Supp. Joint Decl. ¶10. On January 3, 2024, Humanigen filed a chapter 11 bankruptcy petition seeking relief under Title 11, United States Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). *See* Dkt. No. 50 (Suggestion of Bankruptcy). Pursuant to the Stipulation filed prior to Humanigen's bankruptcy petition, the Company's insurer funded the $3 million proposed Settlement which is currently held in an escrow account controlled by Lead Counsel. *See* Dkt. No. 52; Supp. Joint Decl. ¶10. However, the terms of the Settlement required approval from the Bankruptcy Court and such approval is obtained through the filing of a Bankruptcy Rule 9019 motion with the Bankruptcy

21

Court. *See* Dkt. No. 65. On May 16, 2024, Humanigen filed a Rule 9019 Motion styled *Debtor's Motion for an Order (I) Approving the Stipulation of Settlement and (II) Modifying the Automatic Stay as Necessary in Connection Therewith* ("Motion for Approval"). *See In re Humanigen, Inc.*, No. 1:24-bk-10003, ECF No. 272 (Bankr. D. Del. May 16, 2024). On June 10, 2024, the Bankruptcy Court granted Humanigen's Motion for Approval under Rule 9019. *Id.* at ECF No. 290. Thus, Lead Counsel's ability to achieve the proposed Settlement truly provides the only avenue for damaged shareholders to receive any compensation for their losses from the Company. Supp. Joint Decl. ¶10.

With respect to "the experience and expertise" of Lead Counsel, as set forth in the firms' resumes, Lead Counsel are highly experienced and skilled firms in the securities litigation field, and each firm has a long and successful track record in litigating securities cases throughout the country. *See* Dkt. No. 45-4 (Levi & Korsinsky, LLP Firm Resume); *see also* Dkt. No. 45-5 (Pomerantz LLP Firm Resume).

### D. Lead Counsel's Litigation Expenses Are Reasonable and Should Be Approved for Reimbursement

Lead Counsel is also requesting reimbursement of $75,000, plus interest, for expenses incurred in connection with the prosecution of this litigation. *See* Dkt. No. 44-5 (Postcard Notice) (noting that Lead Counsel stated it would request "expenses up to $75,000 for litigating the case and negotiating the Settlement"). The

22

Supplemental Joint Declaration attests to the amount and accuracy of the $76,521.44 in expenses incurred by Lead Counsel. Supp. Joint Decl. ¶26. The Declaration of Adam M. Apton On Behalf of Levi & Korsinsky, LLP Concerning Attorneys' Fees and Expenses (¶5) and the Declaration of Brenda Szydlo On Behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses (¶5), which are attached to the Supp. Joint Decl. as Exs. 1 and 2, respectively, also provide charts depicting the firms' litigation expenses by category. These expenses largely consist of expert, investigator, and mediation fees. To date, there have been no objections to Lead Counsel's request for reimbursement of expenses. *See* Supp. Joint Decl. Ex. 3 (Cavanaugh Decl.) ¶15.

The appropriate analysis to apply when deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) ("Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action.") (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)); *ViroPharma*, 2016 WL 312108, at *18 (similar); *Hall*, 2010 WL 4053547, at *23 ("Courts have generally approved expenses arising from photocopying, use of the telephone and fax, postage, witness fees, and hiring of

consultants."). The categories of expenses for which Lead Counsel seeks reimbursement are the type of expenses routinely charged to hourly clients and, therefore, $75,000, plus interest, should be paid out of the common fund for the expenses incurred.

### E.    Plaintiffs Should Be Awarded Incentive Awards

The Third Circuit has "favor[ed] encouraging class representatives, by appropriate means, to create common funds and to enforce laws—even approving incentive awards to class representatives." *In re Schering-Plough Corp. Enhance Sec. Litig.*, No. 08-397, 2013 WL 5505744, at *37 (D.N.J. Oct. 1, 2013) ("*Schering-Plough II*"). The PSLRA makes clear that it does not limit "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. §77z-1(a)(4). In enacting this provision, "Congress explicitly acknowledged the importance of awarding appropriate reimbursement to class representatives." *Schering-Plough II*, 2013 WL 5505744, at *37; *see also Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011) ("The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws.").

24

Thus, courts provide awards under 15 U.S.C. §78u-4(a)(4) to compensate class representatives for their time and effort expended in representing the class.

Lead Counsel is requesting incentive awards for (i) Co-Lead Plaintiff Dr. Scott Greenbaum in the amount of $7,500; (ii) Co-Lead Plaintiff Joshua Mailey in the amount of $7,500; and Plaintiff Alejandro Pieroni in the amount of $7,500. Plaintiffs were actively involved in this litigation and (i) reviewed court filings in the Action and received periodic reports from Lead Counsel concerning the work being done; (ii) conferred with Lead Counsel with respect to the Settlement and mediation efforts; and (iii) researched and collected relevant trading documents. *See* Supp. Joint Decl. ¶31. Plaintiffs committed a substantial amount of time to the prosecution of this Action; specifically, upwards of 245 hours collectively. *See* Supp. Joint Decl., Ex. 4 (Supplemental Declaration of Dr. Scott Greenbaum) ¶5, Ex. 5 (Supplemental Declaration of Joshua Mailey) ¶5, Ex. 6 (Supplemental Declaration of Alejandro Pieroni) ¶5. Moreover, all three Plaintiffs undertook risks in pursuing these claims when they willingly took on the responsibility of prosecuting this Action on behalf of the Class.

The requested class representative awards are reasonable and are less than those awarded by other courts in this Circuit. *See In re CIGNA Corp. Sec. Litig.*, No. 02-8088, ECF No. 288 (E.D. Pa. July 13, 2007) (approving awards to four lead plaintiffs totaling more than $130,000); *Schering-Plough II*, 2013 WL 5505744, at

25

*37 (approving awards to four lead plaintiffs totaling more than $102,000); *id.* at *56-58 (in related matter, approving awards to four separate lead plaintiffs totaling more than $109,000); *Par Pharm.*, 2013 WL 3930091, at *11 (approving award to lead plaintiff of $18,000); *Li v. Aeterna Zentaris Inc.*, No. 14-cv-07081, 2021 WL 2220565, at *2 (D.N.J. June 1, 2021) (approving awards of $17,000 to each of the three lead plaintiffs). Here, the totality of the awards sought is significantly less than the $100,000 aggregate amount specified in the Postcard Notice. *See* Dkt. No. 44-5. Moreover, no objections to the requested incentive awards have been made. Supp. Joint Decl. Ex. 3 (Cavanaugh Decl.) ¶15. Thus, Plaintiffs respectfully request that the proposed awards be approved.

## CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests that the Court enter the [Proposed] Order Granting Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Compensatory Awards to Plaintiffs.

Dated: July 30, 2024        **LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*
Adam M. Apton
Devyn R. Glass
33 Whitehall Street, 17th Floor
New York, New York 10004
T: (212) 363-7500
F: (212) 363-7171
email: aapton@zlk.com
email: dglass@zlk.com

26

-and-

**POMERANTZ LLP**
*/s/ Brenda Szydlo*
Jeremy A. Lieberman (*pro hac vice*)
Brenda Szydlo (*pro hac vice*)
Thomas H. Przybylowski
Dean P. Ferrogari (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
bszydlo@pomlaw.com
tprzybylowski@pomlaw.com
dferrogari@pomlaw.com

*Attorneys for Plaintiffs and
the Class*

-and-

**SCHALL LAW FIRM**
Brian Schall
2049 Century Park East, Ste. 2460
Los Angeles, California 90067
Telephone: (310) 301-3335
Facsimile: (213) 519-5876
brian@schallfirm.com

*Additional Counsel to Lead Plaintiff
Joshua Mailey*

-and-

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600

27

New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel to Plaintiff*
*Alejandro Pieroni*

28