## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE HUMANIGEN, INC. SECURITIES LITIGATION | Case No. 2:22-cv-05258 (WJM)<br><br>**OPINION FOR FINAL APPROVAL OF SETTLEMENT, CLASS CERTIFICATION, AWARD OF ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARDS** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Before the Court in this class action against Defendants Humanigen, Inc. ("Humanigen"), Dale Chappell, and Cameron Durrant (jointly "Defendants") are motions by Plaintiffs Alejandro Pieroni, Dr. Scott Greenbaum, and Joshua Mailey (collectively "Plaintiffs") for (1) final approval of a class action settlement, ECF Nos. 72, 74, and (2) award of attorneys' fees and expenses and service awards for the lead Plaintiffs, ECF Nos. 73, 74. For the reasons stated below, the motion for final approval is **GRANTED** and the settlement is finally **APPROVED**, and the motion for attorneys' fees, expenses and service awards is **GRANTED**.

I.    **BACKGROUND**

A.    **Facts and Procedural History**

Plaintiffs allege that between May 16, 2020, and July 12, 2022, Defendants made a series of false and/or materially misleading statements concerning the scientific bases underlying their efforts to develop their leading product candidate, lenzilumab, as a treatment for COVID. According to Plaintiffs' consolidated amended class action complaint ("CAC"), "[t]hroughout the Class Period, Defendants repeatedly promoted lenzilumab's prospects as a successful COVID treatment while, at the same time, raising over $300 million through public offerings that allowed Humanigen to avert insolvency." ECF No. 36 ¶ 6. Plaintiffs assert that lenzilumab's prospects of success were overstated, that Defendants failed to disclose material adverse nonpublic information concerning the scientific merits of repurposing lenzilumab as a COVID treatment as part of a scheme to

mislead investors into purchasing shares of Humanigen stock. According to Plaintiffs, subsequent developments undermined Defendants' projections of confidence in lenzilumab and caused Humanigen stock prices to plummet: these events included the FDA's rejection of Humanigen's Emergency Use Authorization application (47.25% drop in price per share) and the publication of results from a clinical trial that failed to demonstrate lenzilumab's efficacy as a COVID treatment (79.6% drop in price per share).

On August 26, 2022, Plaintiff Alejandro Pieroni filed a class action complaint against Defendants Humanigen and Durrant, along with Humanigen executive Timothy Morris,[1] for violations of the Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, and against Durrant and Morris for violations of Section 20(a) of the Exchange Act (the "Pieroni Action"). *See* ECF No. 1. On October 17, Plaintiff Greenbaum filed an additional action asserting the same claims arising from the same set of facts against the same Defendants, and adding Defendant Chappell as an additional individual defendant (the "Greenbaum Action"). *See Greenbaum v. Humanigen, Inc., et. al.*, No. 2:22-cv-06118-WJM-AME. On October 25, Plaintiff Greenbaum filed a motion to consolidate his action with the Pieroni Action, and for his appointment as lead plaintiff in the proposed consolidated class action. The same day, Plaintiff Mailey also filed a motion seeking consolidation of the actions and seeking his own assignment as lead plaintiff.[2] Greenbaum and Mailey then filed a joint stipulation agreeing to proceed as co-lead plaintiffs on December 5. ECF No. 18 (corrected at ECF No. 19). The Court approved the stipulation on December 9, 2022. ECF No. 20. Plaintiffs filed their CAC on March 27, 2023. ECF No. 36.

The CAC asserts that all defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and that Defendants Durrant and Chappell violated Section 20(a) of the Exchange Act. After an initially unsuccessful attempt to resolve the dispute through mediation, ECF Nos. 37–39, Defendants filed their Motion to Dismiss the CAC on July 7, ECF No. 40. On August 29, the parties notified the Court that they had reached a settlement-in-principle.

---

[1] Mr. Morris is not named as a defendant in the CAC, and is no longer a party to this action.

[2] A third class member, Meena Motwani, initially moved for consolidation and her own appointment as Lead Plaintiff, ECF No. 8, but abandoned her motion by failing to file any opposition to the other competing motions. *See Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*, No. 3:15-cv-7350 (FLW) (DEA), 2016 WL 3032684, at *3 (D.N.J. May 26, 2016) (motions "deemed abandoned" where movant did "not file[] any opposition").

### B. The Proposed Settlement

On September 22, Plaintiff filed a Stipulation of Settlement,[3] ECF No. 44, and a motion for preliminary approval of the same, ECF No. 45. The Stipulation of Settlement would establish a Settlement Fund in the amount of $3,000,000 to be held in an interest-bearing escrow account until used in the following manner:

(a) to pay all the costs and expenses reasonably and actually incurred in connection with providing Notice, Postcard Notice, and Summary Notice, locating Settlement Class Members, soliciting Class claims, assisting with the filing of claims, administering and distributing the Net Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms, and paying escrow fees and costs, if any;

(b) to pay the Taxes and Tax Expenses;

(c) to pay attorneys' fees and expenses of Plaintiffs' Counsel and reimbursement of Plaintiffs' expenses (the "Fee and Expense Award"), if and to the extent allowed by the Court; and

(d) to distribute the balance of the Net Settlement Fund to Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

Stipulation of Settlement ("Stipulation" or "Settlement") at 28-29, ECF No. 44. The Stipulation defines an Authorized Claimant as a Settlement Class Member whose claim has been allowed under the terms of the Stipulation, and in turn defines a Settlement Class Member as any Person[4] who purchased or acquired Humanigen securities between May 16, 2020 and July 12, 2022, except for

"(i) Defendants; (ii) the officers, directors, and affiliates of Humanigen, at all relevant times; (iii) Humanigen's employee retirement or benefit plan(s) and

---

[3] Unless otherwise indicated, capitalized terms shall have the same meaning as defined in the Stipulation.

[4] A Person is defined as "an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business, legal or other entity and their spouses, heirs, predecessors, successors, representatives, or assignees." Stipulation ¶ 1.17.

their participants or beneficiaries to the extent they purchased or acquired Humanigen securities through any such plan(s); (iv) any entity in which Defendants have or had a controlling interest; (v) Immediate Family members of any excluded person; and (vi) the legal representatives, heirs, successors, or assigns of any excluded person or entity."

Stipulation ¶¶ 1.29, 1.30. To receive benefits, Settlement Class Members must timely submit a valid Claim Form. *See* ECF No. 44-2 at 4. Authorized Claimants will receive payments from the Settlement Fund in an amount calculated in accordance with Plaintiffs' Plan of Allocation. Stipulation ¶ 5.14. The Plan of Allocation determines an Authorized Claimant's payment amount based on several factors, including the timing and manner in which the securities were purchased or acquired, whether and when the Settlement Class Member sold their securities, and the number of shares purchased or acquired by the Settlement Class Member. *See* ECF No. 44-2. Plaintiffs appointed A.B. Data, Ltd., as Claims Administrator in accordance with the Stipulation. Any monies remaining in the Settlement Fund after initial distribution are to be redistributed to the Authorized Claimants and, in the event that a *de minimis* sum remains and cannot be practicably or economically redistributed, it will be donated to charity. *Id.* ¶ 5.14. The Settlement would also dismiss with prejudice claims in this litigation by Plaintiffs and all Settlement Class Members who have opted out. *Id.* at 23.

On November 8, 2023, this Court granted preliminary approval of the Settlement, ("Preliminary Approval Order") "as fair, reasonable, and adequate as to all Settlement Class Members, pending a final settlement and fairness hearing." Preliminary Approval Order ¶ 3, ECF No. 48. The Court also preliminarily certified the Class for settlement purposes only and approved the proposed Settlement notice documents and notice plan. *Id.* at ¶¶ 4-19. A hearing on the final approval of the Settlement (the "Fairness Hearing") was held on September 10, 2024.

## C. Notice

Between November 22, 2023 and July 26, 2024, the Claims Administrator distributed or caused to be distributed 78,625 Postcard Notices to identified Settlement Class Members. *See* Declaration of Ann Cavanaugh ("Cavanaugh Dec."), ECF No. 72-5. The Postcard Notice advises of the settlement website (www.HumanigenSecuritiesLitigation.com) ("Settlement Website") that provides detailed information concerning the Settlement, including access to downloadable copies of the Claim Form, Long Form Notice, Postcard Notice, Settlement Agreement, Preliminary Approval Order, the CAC in this Action, and additional Court Documents and allows Class

Members to submit a claim online. *Id.* ¶ 4. The Postcard Notice and website also include a toll-free number, 1-877-354-3785, which has recorded information, as well as contact email and P.O. Box addresses.

Settlement Class Members had until March 7, 2024 to submit a claim. Preliminary Approval Order ¶ 16, ECF No. 48; Supplemental Declaration of Ann Cavanaugh ("Suppl. Cavanaugh Dec."), ¶ ECF No. 74-1. The deadline for any objections to (or requests for exclusion from) the Settlement was August 6, 2024.[5] ECF No. 71. As of August 8, 2024, the Claims Administrator had received no objections to the Settlement, four requests for exclusion (on behalf of eight individual Settlement Class Members), and 24,594 Claims. Suppl. Cavanaugh Dec. ¶ 8. As of the same date, the Claims Administrator was in the process of validating all Claim Forms received. *Id.*

## II.   DISCUSSION

Plaintiffs' pending motions ask the Court to: (1) find that the notice of the Settlement given to potential Class Members was adequate; (2) approve the Settlement Agreement as fair, reasonable, and adequate; and (3) certify the Class under Rule 23 to effectuate the class settlement; (4) award attorneys' fees and expenses to Class Counsel; and 5) approve Service Awards in the amount of $7,500 to each of the Class Representatives distributed from the Settlement Fund. Each issue is addressed in turn.

### A. <u>Motion to Approve Settlement</u>

### 1. Adequacy of Notice

Before approving the settlement of a class action, the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires notice that

> clearly and concisely state[s] in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner

---

[5] *See* ECF No. 71 (resetting deadline for objections in light of resolution of Defendant Humanigen's bankruptcy proceedings).

for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

In addition, notice of the settlement must be the best that is "practicable under the circumstances." *Id.* The form and manner of the notice must satisfy the requirements of due process. *Shapiro v. Alliance MMA, Inc.*, No. 17-2583, 2018 WL 3158812, at \*7 (D.N.J. June 28, 2018).

Here, the notice provided to Class Members satisfies the requirements of Fed. R. Civ. P. 23 and due process. The notices were provided to Class Members by a third-party claims administration and describe: (1) the nature of the action and the bases for the claims, 2) the definition of the certified class, (3) the key terms of the Settlement, including the Settlement Amount, the process for each Class Member to receive a Settlement payment, and the release of claims against Defendants, (4) the binding nature of the Settlement on each Class Member, and (5) the rights of each Class Member to retain separate legal counsel, object to the Settlement, opt-out of the Class, or appear at the Fairness Hearing, as well as the deadlines by which to do so. *See* Stipulation (and Exhibits); Settlement Website. Such notice "contain[ed] sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights." *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013) ("*Baby Prods.*"). Members were notified in the best practicable manner under the circumstances. The requirements of Rule 23 and due process are satisfied.

### 2. *Girsh* and *Prudential* Considerations of Settlement

Fed. R. Civ. P. Rule 23(e) requires court approval of any proposed settlement of a class action. A court may, in its discretion, approve a proposed class action settlement "only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* ("*Prudential*"), 148 F.3d 283, 299, 316 (3d Cir.1998). The law encourages and favors the settlement of civil actions in federal court, particularly in complex class actions where the settlement is the result of arm's-length negotiations between experienced counsel after meaningful discovery. *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* ("*General Motors*"), 55 F.3d 768, 784 (3d Cir.1995); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("*Warfarin*"). However, notwithstanding the general presumption in favor of a settlement in the class action context, the Court also "acts as a fiduciary who must serve as a guardian of the rights of absent class members." *General Motors*, 55 F.3d at 785 (citations and quotations omitted).

6

The Third Circuit has identified nine factors for evaluating a class action settlement: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson,* 531 F.2d 153, 157 (3d Cir.1975).

Beyond these nine *Girsh* factors, additional factors the Court may consider when appropriate and relevant, include: the maturity of the underlying substantive issues; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable. *Prudential,* 148 F.3d at 323. An additional inquiry to test the reasonableness of a settlement is whether the settlement provides a "direct benefit" to members of the class. *See Baby Prods,* 708 F.3d at 174. "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Am. Family Enters.,* 256 B.R. 377, 418 (D.N.J. 2000) (quotations omitted). Instead, the Court "must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh.*" *In re Valeant Pharms. Int'l Inc. Sec. Litig.,* No. 15-07658, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020) ("*Valeant*"). The Court addresses each *Girsh* factor, and, where appropriate, *Prudential* factor, in turn.[6]

### i.    The complexity, expense and likely duration of the litigation

Analysis of the first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Nat'l Football League Players Concussion Injury Litig.,* 821 F.3d 410, 437 (3d Cir. 2016) ("*NFL Players Litig.*"). Here, the costs, complexity

---

[6] Rule 23(e)(2) was amended in 2018 to include a list of factors for courts to consider in evaluating a proposed settlement of a class action. The Third Circuit has, however, continued to apply the *Girsh* and *Prudential* factors. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.,* 934 F.3d 316, 329 (3d Cir. 2019). Accordingly, this Court likewise focuses its analysis on the appropriate *Girsh* and *Prudential* factors.

and likely duration of this case strongly favor settlement. This action is quite complex, involving difficult questions related both to securities law and biopharmaceutical research. *See Whitely v. Zynerba Pharma., Inc.*, Civil Action No. 19-4959, 2021 WL 4206696 (Sept. 16, 2021) (first *Girsh* factor weighs in favor of settlement where "case raised significant and complex factual and legal questions regarding Defendants' purported omissions and/or misrepresentations in SEC filings regarding a pharmaceutical product in development"); *Seidman v. American Mobile Systems*, 965 F.Supp. 612, 619 (E.D. PA. 1997) (securities fraud class action "[u]nquestionably ... would be complex and expensive."). The parties have also yet to engage in discovery, which would undoubtedly require significant further time and expense, particularly in light of the expert witnesses each party would likely seek to designate and/or depose.   Continued litigation would likely require the resolution of class certification challenges, discovery-related motions, and summary judgment motions, all before reaching the pre-trial phase. If and when the case reached a final judgment on the merits, any such judgment would likely be subject to a lengthy and expensive appeals process. The Settlement eliminates the costs and risks associated with further litigation and provides for Settlement Class Members to receive prompt compensation. The first *Girsh* factor weighs strongly in favor of settlement.

### ii.     The reaction of the class to the settlement

"The second *Girsh* factor 'attempts to gauge whether members of the class support the settlement.'" *Warfarin*, 391 F.3d at 536 (quoting *Prudential*, 148 F.3d at 318). The absence of any objections by Class Members and the small number of requests for exclusion relative to the apparent size of the Class strongly weigh in favor of approval of the Settlement. *See e.g., NFL Players Litig.*, 821 F.3d at 438; *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *21 (D.N.J. Sept. 10, 2013) (collecting cases).

As of August 8, 2024, no Settlement Class members objected to the Settlement and only eight requested exclusion from the Settlement (representing an infinitesimally small exclusion rate). *See* Suppl. Cavanaugh Decl. ¶¶ 6-7. As such, the Settlement Class reaction has been overwhelmingly positive. *See e.g., Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir. 1990) (finding 29 objectors out of a class of 281 "strongly favors settlement"). Support for the settlement is further bolstered by the fact that 24,594 Claims were submitted prior to the submission deadline in March 2024.   This factor weighs strongly in favor of approval of the Settlement.

### iii. The stage of the proceedings and the amount of discovery completed

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to the settlement. Through this lens, courts can determine whether class counsel had an adequate appreciation of the merits of this case before negotiating." *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (quotations omitted). "The fact that a case has not proceeded through discovery does not necessarily weigh against settlement approval." *P. Van Hove BVBA v. Universal Travel Grp., Inc.*, No. 11-2164, 2017 WL 2734714, at *7 (D.N.J. June 26, 2017). "Even settlements reached at a very early stage and prior to formal discovery are appropriate where there is no evidence of collusion and the settlement represents substantial concessions by both parties." *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 482 (D.N.J. 2012).

In this case, while the parties reached the Settlement prior to engaging in formal discovery, Plaintiffs engaged in a preliminary investigation of the case, conducted legal research into the merits of the case (and likelihood of protracted litigation), engaged expert witnesses, interviewed fact witnesses, exchanged mediation briefs, and participated in mediation. The Court finds that the parties had an adequate appreciation of the merits of the case even without formal discovery. Accordingly, while the early stage of case development here does not weigh in favor of settlement, neither does it weigh against. *Cf. Weiss v. Mercedes–Benz of N. Am.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (approving a settlement even though case was still in the early stages of discovery). This factor is neutral.

### iv. The risks of establishing liability and damages

The fourth and fifth *Girsh* factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefit of an immediate settlement." *Warfarin*, 391 F.3d at 537. In other words, the Court must consider "what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *General Motors*, 55 F.3d at 814. The Court weighs the value of an immediate guaranteed settlement against the challenges that remain in proceeding with litigation. Even if the class is certified, which Defendants would likely oppose, and Plaintiffs survive any dispositive motions, there is no guarantee that Plaintiffs would be successful in proving liability and damages. To illustrate just one hurdle that Plaintiffs would need to overcome in establishing liability: Plaintiffs' theory of liability depends on their ability to persuade a jury that Defendants' statements about the scientific support for the efficacy of lenzilumab as a treatment for COVID were false or misleading

and, to the extent the statements are alleged to be misleading by reason of material omission, that Defendants were obligated to disclose the omitted facts in order to render their statements not misleading. *See Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 264 (2024) ("Rule [10b-5] prohibits omitting material facts necessary to make the statement made ... not misleading."). This would require proof of the statements' falsity, Defendants' knowledge thereof, and the materiality of information omitted from their statements—none of which is a guarantee.

Nor is establishing loss causation an easy task: Plaintiffs would need to prove not only that share prices were artificially inflated by Defendants' statements, but that those misstatements caused Humanigen's stock prices to fall. *See Dura Pharma., Inc. v. Broudo*, 544 U.S. 336, 347 ("'artificially inflated purchase price' is not itself a relevant economic loss."). As Plaintiffs acknowledge, proving loss causation would likely require a "battle of the experts," the jury's response to which would be unpredictable. *See In re Viropharma Inc. Sec. Litig.*, Civil Action No. 12-2714, 2016 WL 312108, at *13 (E.D. PA. Jan. 25, 2016) (quoting *In re Corel Corp. Inc. Sec. Litig.*, 293 F.Supp. 2d 484, 492 (E.D. Pa. 2003). Plaintiffs certainly may have been able to succeed in establishing liability and damages at trial, but to attempt to do so would undoubtedly carry significant risk. *See in re Schering-Plough/Merg Merger Litig.*, No. 09-cv-1099, 2010 WL 1257722, at *10 ("A trial on the merits always entails considerable risk."). Even assuming a favorable trial outcome, the possibility of an appeal would further delay relief for the Class Members. Accordingly, in light of the real and extensive risks involved in Plaintiffs' case, these two factors weigh in favor of approving the Settlement.

### v.    The risks of maintaining the class action through the trial

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *Warfarin*, 391 F.3d at 537 (citations omitted). Plaintiffs have not yet been certified as a class (other than their preliminary certification for settlement purposes, ECF No. 48). To proceed with this litigation, they "would still need to undertake the somewhat complex and expensive task of certifying the putative class," subject to Defendants' oppositions and, if need be, appeals. ECF No. 72-1 at 26. Furthermore, even if the Court were to certify a litigation class, the certification would not be set in stone. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *Prudential*, 148 F.3d at 321 ("Under Rule 23, a district court may decertify or modify a class at any time during the

litigation if it proves to be unmanageable."). Hence, since the class has yet to be certified and given the risks, this factor favors approving the Settlement.

### vi.    The ability of the defendants to withstand a greater judgment

The seventh *Girsh* factor considers whether Defendants could withstand a significantly higher judgment amount. Even if Defendants could withstand a much greater judgment, this fact would not be dispositive. *See Warfarin*, 391 F.3d at 538 ("[The] fact that [Defendant] could afford to pay more does not mean that it is obligated to pay any more than what the ... class members are entitled to under the theories of liability that existed at the time the settlement was reached"). And where Defendants' ability to pay would be jeopardized by a much greater judgment, this factor weighs in favor of approval of approval. *See Prudential*, 962 F.Supp. at 540 ("The settlement is fair, reasonable, and adequate in light of Prudential's inability to withstand a much greater judgment"). Here, Humanigen has already filed for bankruptcy and the settlement amount has been approved by the Bankruptcy Court. The fact of Humanigen's bankruptcy underscores the risks that Plaintiffs would face if they tried to secure a substantially higher judgment (i.e., the risk of recovering nothing at all). This factor is weighs in favor of approving the Settlement.

### vii.   The range of reasonableness of the settlement fund in light of the best possible recovery and all attendant risks of litigation

The eighth and ninth *Girsh* factors analyze "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* Here, the value of the settlement is low compared to the recovery Plaintiffs sought, while the risks attendant to litigating a securities class action against a company already in bankruptcy are significant. The Settlement Fund amounts to only about 0.58% of the damages alleged, but there is a significant risk that proceeding with litigation would result in an even lower or non-existent recovery *even if* Plaintiffs were successful on the merits in light of Defendants' anticipated difficulties paying the damages. In light of the risks of proceeding with litigation discussed above, and the certainty of the benefits provided by the Settlement, these factors weigh slightly in favor of approving the Settlement.

###### viii.    The *Prudential* Factors

In addition to the *Girsh* factors, the relevant *Prudential* factors favor approving the Settlement. As to the *Prudential* factor that relates to the maturity of the underlying issues, the Parties did engage in discovery, but (as discussed above) the parties participated in significant factfinding, engaged expert witnesses, participated in mediation, and engaged in long-term arms-length negotiations which ultimately led to the Settlement. The *Prudential* factors that relate to the existence of other classes and subclasses are irrelevant here as the Settlement Class encompasses all Persons who purchased Humanigen stock during the Class Period (except as limited by the Stipulation). Class Members have had ample opportunity to object or opt-out of the Settlement and were provided clear instructions on how to do so. *See* Cavanaugh Decl. (and Exhibits). The procedure for processing individual claims under the Settlement is fair and reasonable, providing for Settlement Class Members to submit claims online or via a paper claim form. *See* Suppl. Cavanaugh Decl. ¶¶ 4, 6, 7. As explained in more detail below, the attorneys' fees requested are also fair and reasonable. Finally, the Settlement also offers "direct benefits" to the settlement class given that all Settlement Class Members are eligible to receive compensation from the Settlement Fund upon verification by the Class Administrator. The Court approves the Settlement finding it to be fair, reasonable, and adequate.

### B.  <u>Class Certification</u>

In order to approve a class settlement agreement as fair under Fed. R. Civ. P. 23(c), the Court must additionally determine that the requirements for class certification under Rules 23(a) and (b) are also met. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009). Each Rule 23 requirement must be established by a preponderance of the evidence. *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015). While the class certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim," the court considers merits questions only to the extent they are relevant to performing the "rigorous analysis" required to determine whether the Rule 23 prerequisites are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

### 1.  Rule 23(a) Factors

Rule 23(a) provides that the class may be certified if: (1) the class is so numerous that joinder is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy"). *In re Constar Int'l*

*Inc. Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009) (quoting Fed. R. Civ. P. 23(a)). As discussed below, the Rule 23(a) requirements for class certification are satisfied.

### i.    Numerosity

Numerosity is satisfied when joinder of all putative class members is impracticable. Fed. R. Civ. P. 23(a)(1). Where the number of potential plaintiffs exceed forty, the numerosity requirement is generally fulfilled. *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Here, Plaintiffs estimate that there are "hundreds or thousands" of Settlement Class Members, ECF No. 36 at 92, and 24,594 Claims have been received. Numerosity is therefore satisfied.

### ii.    Commonality

Commonality requires that the members of the class must assert a common contention that is capable of classwide resolution such that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 489–90 (3d Cir. 2018) (quoting *Dukes*, 564 U.S. at 350); *see also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012) (noting that the "commonality requirement 'does not require identical claims or facts among class member[s]" (citations omitted)).

In this case, the dispute involves common issues relating to the alleged securities fraud, the resulting harm to the Class, and the appropriate measure of Class damages. The proposed class is sufficiently cohesive that the Class may use the same evidence to make a *prima facie* showing of their claims and those claims are subject to class-wide proof. Commonality and predominance requirements in Rules 23(a)(2) and 23(b)(3), respectively, are thus satisfied.

### iii.    Typicality

"The concepts of commonality and typicality are broadly defined and tend to merge." *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citation omitted). "The typicality inquiry centers on whether the interest of the named plaintiffs align with the interests of the absent members." *Stewart*, 275 F.3d at 227 (citation omitted). Thus, the typicality requirement ensures "that the class representatives are sufficiently similar to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the [absent]

class members, and if it is based on the same legal theory." *Stewart*, 275 F.3d at 227–28 (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992)). For the typicality inquiry, a court thus compares "the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class." *Marcus*, 687 F.3d at 598.

Plaintiffs' claims here are typical because both Plaintiffs and Class Members were injured by the same common course of conduct by Defendants— the alleged issuance of false or misleading statements to artificially inflate Humanigen's stock price to the benefit of Defendants and ultimate harm of Plaintiffs. Plaintiffs also plead causes of action common to all Settlement Class Members. Furthermore, Plaintiffs are not "subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation." *In re Schering Plough Corp.*, 589 F.3d at 599. Thus, Plaintiffs stand in the same position as the putative Class Members. Plaintiffs meet the requirements of typicality.

### iv.    Adequacy

Adequacy "encompasses two distinct inquiries designed to protect the interests of absentee class members." *Prudential*, 148 F.3d at 312. "First, [it] tests the qualifications of the counsel to represent the class." *Id.* "Second, it 'serves to uncover the conflicts of interest between named parties and the class they seek to represent.'" *Id.* (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Both Class Counsel have extensive experience in complex securities litigation and class action proceedings. *See* ECF No. 45-2. Moreover, the Settlement was reached after arm's length negotiations and mediation. Class Counsel are well versed in the applicable legal issues and are qualified to represent the Class. Regarding the second prong, there is no conflict of interest between the named parties and the Class. *Amchem*, 521 U.S. 591, 625–26. Plaintiffs, having suffered the same injury as the Class Members (although varying in degree), possess the same interest and will adequately represent the interests of the Class. Accordingly, the adequacy requirement is met.

### 2.    Rule 23(b)(3) Factors

Next, in addition to Rule 23(a), class certification requires that a plaintiff also meet one of the requirements set forth in Rule 23(b). Plaintiffs here specifically seek certification of a settlement class under Rule 23(b)(3), *see* ECF No. 36 ¶ 220, which permits certification only if (1) questions of law or fact common to class members predominate over individual questions ("predominance"), and (2) a class action is the superior method for fairly and efficiently adjudicating the controversy ("superiority"), Fed. R. Civ. P. 23(b)(3). Factors relevant to a finding of predominance and superiority include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). As set forth below, the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

### i.    Predominance

Predominance requires the court to evaluate whether "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. Rule 23(b)(3). The inquiry, while similar to the considerations under Rule 23(a)'s commonality requirement, is a "far more demanding" standard that requires the Court to determine if the proposed class is sufficiently cohesive that members of the class may use the same evidence to make a *prima facie* showing of their claims and those claims are subject to class-wide proof. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016); *Danvers Motor Co. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) ("where an action is to proceed under Rule 23(b)(3), the commonality requirement 'is subsumed by the predominance requirement." (internal quotations and citation omitted)). "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298; *see also Warfarin*, 391 F.3d at 528 (finding predominance in "broad-based" campaign to deceive providers and patients regarding a generic equivalent).

The Court must examine through the prism of Rule 23(b)(3) the elements of Plaintiffs' claim and ask whether proof of the essential elements require individual treatment. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 266 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)); *see also Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 370-71 (3d Cir. 2015). The mere existence of individual questions does not preclude a finding of predominance, nor does the possibility that some individualized inquiry as to damages may be required. *Neale*, 794 F.3d at 371. Rather, the Court engages in a qualitative examination of both common and individual issues. *Id.* (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013)).

Here, Defendants' alleged false and misleading *public* statements and their impact

on Humanigen's stock price provided the basis for liability as to all potential Class Members. Common proofs required to demonstrate this violation predominate over individualized inquiries. No individual inquiry will be necessary regarding Defendants' liability to each Class Member. Predominance is satisfied.

### ii.    Superiority

Finally, to establish superiority, a plaintiff must demonstrate that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry requires the Court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Danvers Motor Co.*, 543 F.3d at 149 (citation omitted).

In this case, many of the putative Class Members are individuals for whom pursing a costly individual action for relatively minor damages is not a realistic or efficient alternative. No Class Member has brought a separate claim, which would likely be consolidated into this action anyway. Litigating these claims separately would further unduly burden the judicial system. *Warfarin*, 391 F.3d at 534. Fairness and efficiency accordingly weigh in favor of a finding that a class action is the superior method of adjudicating these claims. Hence, a class action is the superior method of adjudication in this matter.

### C.    Motion for Attorneys' Fees

Class Counsel request an attorneys' fees award of $750,000.00 (25% of the Fund), costs and expenses in the amount of $75,000.00, and service awards of $7,500 per Class Representative ($22,500 total) to be paid out of the Settlement Fund.[7]

---

[7] As the Settlement Fund is currently held in an interest-bearing escrow account, each of Class Counsel's requests for fees and expenses includes a request for interest accrued on the same. *See* ECF No. 73-1 at 1. Class Counsel does not specify whether they seek prejudgment interest dating back to the establishment of the Settlement Fund, or postjudgment interest dating from the issuance of this decision. For the avoidance of doubt, Class Counsel is entitled to postjudgment interest at the rate accrued by the Settlement Fund. They are not entitled to prejudgment interest, particularly in light of the fact that their lodestar calculations are based on their current hourly billing rates. ECF Nos. 72-3 ¶ 3, 72-4 ¶ 3; *see also In re Safety Components*, 166 F. Supp. At 109 n.13 ("Because current hourly rates have been employed to account for any delay in payment experienced by Plaintiffs' Counsel, an award of prejudgment interest is inappropriate.").

### 1. Attorney's Fees for Class Counsel

Pursuant to Rule 23(h), the Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Although the decision to award attorneys' fees and expenses is within the Court's discretion, the Court must carefully review the negotiated award to ensure that it is fair, reasonable, and adequate. *Little-King*, 2013 WL 4874349, at *18; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("*Rite Aid*"). "Two considerations must play central roles in the assessment of a fee award under Rule 23(h): 1) how the amount awarded stacks up against the benefit given to the class, using either the amounts paid or the sums promised; and 2) whether side agreements between class counsel and the defendant suggest an unreasonable attorney's fee award." *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 718–19 (3d Cir. 2023) (footnote omitted). There is no evidence of any side agreements in this case.

In evaluating an award of attorneys' fees, courts typically apply one of two methodologies: (1) the lodestar method in which the number of hours worked by Class Counsel is multiplied by a reasonable hourly billing rate for such services; or (2) the percentage-of-recovery method in which Class Counsel is awarded a certain percentage of the Settlement Amount. *In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Where, as here, the Settlement provides for the payment of attorneys' fees from the same source as the pool of settlement funds available to Class Members, the arrangement "is, for practical purposes, a constructive common fund" that is best analyzed using the percentage-of-recovery methodology. *See Dewy v. Volkswagen AG*, 558 F. App'x 191, 197 (3d Cir. 2014); *see also General Motors*, 55 F.3d at 820-21.

#### i.    Percentage of Recovery Analysis

The Third Circuit has identified a number of factors for the Court to consider in determining whether a fee award is reasonable under the percentage-of-recovery analysis: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). In addition to these seven factors, a court may evaluate these three additional factors: (8) the value of benefits attributable to efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have

been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement. *In re Diet Drugs (Phentermine/Flenfuramine/Dexflenfuramine) Prods. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009).

The first factor supports the requested award because the $3,000,000 settlement benefits tens of thousands of investors. The second and fifth factors overlap considerably with those already considered by the Court in approving the Settlement as fair, reasonable, and adequate. The Court has already noted the absence of any objections to the Settlement, notice of which included specific information about the fees requested by Class Counsel. *See* Settlement website; *see also Valeant*, 2020 WL 3166456, at *12. Similarly, the Court has already analyzed the risk of nonpayment by noting the various risks, including the risk of an unsuccessful trial or appeal, and the effect of Humanigen's bankruptcy, that would render Plaintiffs and their contingency-fee based counsel unable to recover anything at all. *See supra*, II.A.2.iv.; *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-285, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) ("*Merck*"). Accordingly, as with the Settlement, each of these factors weighs in favor of approving the request for an award of attorneys' fees and expenses.

The third factor also supports approving the requested fee award. This factor measures the "quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Valeant*, 2020 WL 3166456, at *12 (quotations omitted). As already noted, the $3,000,000 Settlement is immediate and substantially benefits the Class particularly in light of the length of this case, the complex issues involved, and the zealous advocacy of counsel on both sides.

As to the fourth factor, the Court has already recognized the complexity of this case, which supports the proposed fee award. Indeed, the case is doubly complex given the inherent complexity baked into securities class action litigation layered atop the complex scientific subject matter of the alleged false statements. *Cf. Kanefsky v. Honeywell Int'l Inc.*, No. 18-cv-15536, 2022 WL 1320827, at *4 (D.N.J. May 3, 2022) (securities class action was made "even more complex" where it involved "thorny issues" regarding the accounting for the accounting of asbestos liabilities given the facts underlying the lawsuit). As to the duration of the litigation, this action has been pending for just over two years. As such, a fee award amounting to 25% the Settlement Fund is reasonable. *See, e.g., Del. Cnty. Emps. Ret. Sys. v. AdaptHealth Corp.*, ___ F.Supp. 3d ___, 2024 WL 3360661, at *6

(E.D. Pa. 2024) (finding that two-year duration of litigation weighs in favor of 25% fee award). Accordingly, the fourth factor weighs in favor of approving the settlement.

The sixth factor considers the time spent by Class Counsel in the litigation. Here, Class Counsel spent a combined 1,378 hours on this case, including on preparing filings, mediation, negotiations, document review, interviews, expert retention, and research. The time spent by Class Counsel to achieve the settlement appears to have been necessary and reasonable. *Cf. Mirakay v. Dakota Growers Pasta Co., Inc.*, No. 13-CV-4429 JAP, 2014 WL 5358987, at *13 (D.N.J. Oct. 20, 2014) (2,016.7 hours of work justified fee award of $2,900,000). This factor favors approving the requested award.

In evaluating the reasonableness of a requested fee award, the seventh factor requires the Court to compare the requested award to those approved in similar cases. In common fund cases such as this one in which the percentage-of-recovery methodology is used, fee awards have ranged between 19% to 45% of the settlement fund. *See General Motors*, 55 F.3d at 822. Here, the requested fee award of $750,000 represents 25% of the Settlement Fund and is within the reasonable range of awards approved by the Third Circuit. Indeed, many courts in the Third Circuit that "have considered 25% to be the 'benchmark' figure for attorney fee awards in class action lawsuits, with adjustments up or down for significant case-specific factors." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 262 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004); *see also In re Viropharma Inc. Sec. Litig.*, No. 12-2714, 2016 WL 312108, at *17-18 (E.D. Pa. Jan. 25, 2016) (awarding attorneys' fees of 30% in securities class action settlement and identifying 25% as the median fee amount in similarly sized securities class action settlements). This factor weighs in favor of awarding the requested award of 25%.

The eighth factor weighs in favor of approving the requested award for attorneys' fees. The claims in this case were independent of any investigative reports or enforcement actions by any governmental entity. Thus, the value of the Settlement achieved is directly attributable to the efforts of Class Counsel and supports the reasonableness of the requested fee award. *See Valeant*, 2020 WL 3166456, at *14.

The requested award of fees and expenses relative to the size of the recovery and constructive common fund is also below the rate of contingent fees that are routinely negotiated in the private marketplace. *Merck*, 2010 WL 547613, at *12 (citing cases recognizing attorneys routinely contract for contingent fees between 30-40%). As such, the ninth factor also supports approval of the requested award.

As to the final factor, the Plan of Allocation provides for a carefully tailored apportionment of the Settlement Funds to Authorized Claimants whereby Settlement Class Members' recovery is calculated based on relevant factors designed to scale the degree of relief in accordance with the degree of harm experienced by the Class Member. This approach is tailored to individual Settlement Class Members' Claims while being sufficiently formulaic to avoid unnecessary impediments to efficiency or to produce arbitrary results. This factor weighs in favor of approving the requested award of fees.

Weighing the above factors, the Court finds that a 25% fee is reasonable under the percentage-of-recovery analysis. The attorneys' fees awarded shall be $750,000, plus postjudgment interest.

### ii.    Lodestar Cross-Check

Courts in this District are encouraged to "cross-check" the reasonableness of percentage fee awards against the lodestar method, though lodestar multipliers do not "trump the primary reliance on the percentage of common fund method." *See Rite Aid*, 396 F.3d at 305-07. Class Counsel submitted declarations summarizing the time spent on this litigation by attorneys and non-lawyer billing employees, along with their and their respective rates. *See* ECF Nos. 72-3, 72-4. These declarations reflect reasonable billing rates of $900-1,325 per hour for partners, $500-600 per hour for associates, and $325 per hour for non-attorney analysts and paralegals. *Id*. Applying these rates to the hours devoted to this litigation by the respective employees yields a total lodestar amount for Class Counsel of $1,060,767. ECF No. 72-1. This would yield a negative lodestar multiplier of 0.70. "[B]ecause the lodestar amount is more than the requested attorneys' fee award, the multiplier indicates that the award is reasonable on its face." *Haught v. Summit Resources, LLC*, No. 1:15-cv-0069, 2016 WL 1301011 (M.D. Pa. Apr. 4, 2016). The fee award of 1/3 of $750,000.00 is thus reasonable when cross-checked under the lodestar method and is approved.

### 2. Expenses

Class Counsel request reimbursement of $75,000 in litigation expenses. Class Counsel is "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001). Each Class Counsel firm submitted a declaration in support of its requests for fees and expenses, and each included a chart summarizing the expenses incurred by category, which together totaled $76,521.44, the bulk of which is attributable to expert fees, mediation fees, and expenses

incurred in connection with providing notice to Class Members. *See* ECF Nos. 72-3 ¶ 5, 72-4 ¶ 5. These expenses were limited to "the type of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund." *In re Ocean Power Techs., Inc.*, No. 14-3799, 2016 WL 6778218, at *29 (D.N.J. Nov. 15, 2016) (listing private investigator, photocopying, postage, filing fees, travel, mediation fees, and damages expert fees among routine fees for which Plaintiff should be reimbursed from the common fund); *see also Cendant*, 232 F. Supp 2d, at 344 (computer-assisted research), *Beltran v. Sos Ltd.*, No. CV 21-7454 (RBK/EAP), 2023 WL 319895, at *8 (D.N.J. Jan. 3, 2023), report and recommendation adopted, No. CV 21-7454 (RBK/EAP), 2023 WL 316294 (D.N.J. Jan. 19, 2023) (press releases and notice). Moreover, no objections have been filed to the expense request. Accordingly, Class Counsel's request for reimbursement of $75,000.00 in expenses, plus postjudgment interest, is approved.

### 3. Case Contributions to Representative Plaintiffs

Class Counsel seek an award of $7,500 for each of the three named Plaintiffs to be paid from the Settlement Fund (totaling $22,500). The PSLRA provides for "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4). The purpose of service payments is "to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation and to reward the public service of contributing to the enforcement of mandatory laws." *Sullivan*, 667 F.3d at 333 n. 65 (internal quotes and citation omitted). While awards that come out of funds allocated for attorneys' fees "need not be subject to intense scrutiny" because the public's interests are not directly affected, in contrast, where "payments come out of the common fund independent of attorneys' fees, the Court must carefully review the request for fairness to other class members." *Bredbenner v. Liberty Travel, Inc.*, No. 09-1248, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011) (citing *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005)). "[I]ncentive awards will not be freely distributed without a substantial basis to demonstrate that the individual provided services for the Class and incurred risks during the course of the litigation." *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 770 (E.D. Pa. 2016) (citing *Varacallo*, 226 F.R.D. at 258). "A rubber-stamped approval by the Court of an unjustified incentive award is fodder for abuse." *Id.* at 771.

"To determine whether a proposed incentive award is proper, some courts have considered factors such as (1) "the risk to the plaintiff in commencing litigation, both financially and otherwise"; (2) "the notoriety and/or personal difficulties encountered by

the representative plaintiff"; (3) "the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial"; (4) "the duration of the litigation"; and (5) "the plaintiff's personal benefit (or lack thereof) purely in her capacity as a member of the class." *Altnor*, F. Supp.3d at 770 (citing *McGee v. Ann's Choice, Inc.*, No. 12-2664, 2014 WL 2514582, at *3 (E.D. Pa. June 4, 2014)). Service awards are the appropriate means by which to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws." *Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011); *see also Altnor*, 197 F. Supp. At 772.

Each named plaintiff submitted a declaration in support of their attorneys' requests for service awards. *See* ECF Nos. 72-6 (Plaintiff Greenbaum), 72-7 (Plaintiff Mailey), 72-8 (Plaintiff Pieroni). According to these declarations, the named plaintiffs collectively devoted over 250 hours of work to this litigation and settlement. Class members were notified that service awards may, in the aggregate, comprise up to $100,000 of the Settlement Fund, and none objected. The aggregate service award of $22,500 (divided evenly between the three named plaintiffs) is reasonable compensation for their effort and for the risks they took in undertaking this litigation. The Court will approve the service award request of $7,500 apiece for Plaintiffs Pieroni, Greenbaum, and Mailey.

## III.      CONCLUSION

In sum, the Settlement, which has no objectors, is fair, reasonable, and adequate under Fed. R. Civ. P. 23(c), notice was adequate, and certification of the proposed Class is appropriate under Rules 23(a) and (b). Thus, Plaintiffs' unopposed motion to certify the Class and for final approval of the Class Action Settlement is **GRANTED**. Plaintiffs' request for attorneys' fees and expenses is also fair and reasonable, and accordingly, is also **GRANTED**. Class Counsels' request for a service fee award of $7,500 per named plaintiff is **GRANTED**. An appropriate Order follows.

DATE: September 11, 2024

WILLIAM J. MARTINI, U.S.D.J.